**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

------------------------------------------------------------------- x
                                                     :
DOME PATENT L.P.,                                    :
                                                     :
                              Plaintiff,             :
                                                     :
              - against -                            :         No. 07-1695 (PLF)
                                                     :
JON W. DUDAS,                                        :
Under Secretary of Commerce for Intellectual Property :
and Director of the United States Patent and Trademark :
Office,                                              :
                                                     :
                              Defendant.             :
                                                     :
------------------------------------------------------------------- x

**MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DENY OR STAY DISCOVERY**

JAMES W. DABNEY
STEPHEN S. RABINOWITZ
JOHN F. DUFFY
RANDY C. EISENSMITH
**FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP**
One New York Plaza
New York, New York 10004 - 1980
(212) 859 - 8000

Attorneys for Plaintiff
Dome Patent L.P.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... (ii)

FACTS ............................................................................................................................ 1

       Course of Proceedings ................................................................................... 5

SUMMARY OF ARGUMENT ................................................................................. 6

ARGUMENT ............................................................................................................... 7

    I.      THE DIRECTOR HAS FAILED TO PRESENT ANY PROPER OR
           LEGALLY COGNIZABLE BASIS FOR RELIEF UNDER RULE 26(c) ....... 7

    II.     THE DIRECTOR HAS FAILED TO ESTABLISH ANY BASIS FOR
           HOLDING THAT DOME HAS "WAIVED" ITS RIGHTS TO
           DISCOVERY IN THIS ACTION ................................................................... 10

    III.    THE DIRECTOR HAS MISCHARACTERIZED THE OUTCOME OF
           PREVIOUS LITIGATION INVOLVING THE PATENT AT ISSUE
           IN THE PRESENT SUIT ............................................................................... 18

CONCLUSION ............................................................................................................ 19

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

*Burlington Industrial, Inc. v. Quigg,*
    822 F.2d 1581 (Fed. Cir. 1987) ........................................................................12

*Conservolite v. Widmayer,*
    21 F.3d 1098 (Fed. Cir. 1994) ........................................................................17

*DeSeversky v. Brenner,*
    424 F.2d 857 (D.C. Cir. 1970) ...................................................................15, 16

*Doe v. Kidd,*
    501 F.3d 348 (4th Cir. 2007) ..........................................................................13

*Glenmede Trust Co. v. Thompson,*
    56 F.3d 476 (3d Cir. 1995) ...........................................................................9, 10

*Graham v. John Deere Co.,*
    383 U.S. 1 (1966) ..............................................................................................8

*Hoover Co. v. Coe,*
    325 U.S. 79 (1945) ..........................................................................................12

*Hyatt v. Dudas,* 2006 WL 4606037
    (D.D.C. Sept. 30, 2006) (Kennedy, J.) ............................................................15

*Jennings v. Family Management,*
    201 F.R.D. 272 (D.D.C. 2001) ........................................................................10

*Johnson v. Zerbst,*
    304 U.S. 458 (1938) ........................................................................................13

*Kirschke v. Lamar,*
    426 F.2d 870 (8th Cir. 1970) ..........................................................................16

*Truswal Syst. Corp. v. Hydro-Air Engineering, Inc.,*
    813 F.2d 1207 (Fed.Cir. 1987) ....................................................................8 n.1

*United States v. Johnson,*
    289 F.3d 1034 (7th Cir. 2002) ........................................................................13

## <u>TABLE OF AUTHORITIES</u> (Cont'd)

Page(s)

*Velsicol Chemical Corp. v. Monsanto Co.*,
  579 F.2d 1038 (7th Cir. 1978).....................................................................16, 17

*Winner International Royalty Corp. v. Wang*,
  202 F.3d 1340 (Fed. Cir. 2000) ..............................................................5, 13, 17

## FEDERAL STATUTES, RULES AND REGULATIONS

35 U.S.C. § 24 ..........................................................................................11, 16,

35 U.S.C. § 103..........................................................................................3, 4, 8

35 U.S.C. § 134............................................................................................11

35 U.S.C. § 141............................................................................................13

35 U.S.C. § 145.................................................................................... *passim*

35 U.S.C. §§ 301-307.....................................................................................2, 6

35 U.S.C. § 302............................................................................................10

35 U.S.C. § 303(a) .......................................................................................11

35 U.S.C. § 304............................................................................................11

35 U.S.C. § 305............................................................................................11

35 U.S.C. § 306.......................................................................................12, 14

Fed. R. Civ. P. 26(c)(1)................................................................................6, 19

Fed. R. Civ. P. 45(c)......................................................................................6, 9

37 C.F.R. § 1.303(a)......................................................................................12

37 C.F.R. § 41.2......................................................................................11, 16

Plaintiff Dome Patent L.P. ("Dome") respectfully submits this memorandum in opposition to defendant's motion for an Order, "pursuant to Rule 26(c)(1) of the Federal Rules of Civil Procedure, . . . to deny discovery, or in the alternative, to stay discovery pending resolution of defendant's dispositive motion."   Defendant's Motion to Stay Discovery filed January 11, 2008, at 1.  The defendant's motion is without merit and should be denied.

## FACTS

This is a civil action to obtain a patent under 35 U.S.C. § 145.  The plaintiff, Dome, is a California Limited Partnership, having its principal place of business in Larkspur, California.  Complaint ¶ 1.  The defendant, Jon W. Dudas (the "Director"), is Under Secretary of Commerce for Intellectual Property and the current Director of the United States Patent and Trademark Office ("USPTO").  The defendant Director is being sued in his official capacity. Complaint ¶ 2.

Dome is the owner of U.S. Patent No. 4,306,042, issued December 15, 1981, for an invention entitled "Method of Making a Contact Lens Material With Increased Oxygen Permeability" (the "Neefe Patent").  Complaint ¶ 4.  The Neefe Patent discloses and claims a method for making contact lens material that, at the time it was discovered, yielded contact lens material having both a high degree of wettability and greatly improved oxygen permeability as compared with contact lens materials produced by previously known methods.  Complaint ¶ 5.  Dome believes that the method disclosed and described in claim 1 of the Neefe Patent has been widely adopted and used by United States contact lens manufacturers, has supplanted and rendered obsolete previously known methods of making

contact lens materials, and has yielded substantial revenues to the contact lens manufacturers that adopted and used it.  Id.

On or about December 30, 1997, Dome commenced an action for infringement of the Neefe Patent (the "Infringement Action") against six (6) United States manufacturers of contact lens materials, namely, Permeable Technologies, Inc., Con-Cise Contact Lens, Inc., GT Laboratories, Inc., Optical Polymer Research, Inc., Stellar Contact Lens, Inc., and Polymer Technology.  Complaint ¶ 6.  On or about May 28, 1998, venue of the Infringement Action was transferred from the Eastern District of California to the Western District of New York where it was assigned Civil Action No. 6:98-cv-06247-DGL and remains pending. Complaint ¶ 7.

On or about August 27, 1998, counsel for one of the defendants in the Infringement Action, Optical Polymer Research, Inc. ("Optical"), filed a request with the USPTO for reexamination of the Neefe Patent under 35 U.S.C. §§ 301-307.  Complaint ¶ 8.  On or about September 11, 1998, Optical moved the Court in the Infringement Action for a stay of proceedings in the Infringement Action pending determination of its reexamination request. Complaint ¶ 9.  The motion was granted.  See Memorandum of Points and Authorities in Support of Defendant's Motion to Stay Discovery (hereinafter, "Def. Mem.") at 6 ("In 1998, at the request of the defendants, the case was stayed pending the resolution of the reexamination of the Dome patent by the USPTO").

On or about June 24, 1999, the then-Director of the USPTO issued an Order for reexamination of the Neefe Patent, Application No. 90/005,090, based on the request for reexamination that Optical had made on August 27, 1998.  Complaint ¶ 10.  On or about July 14, 1999, Optical moved the Court in the Infringement Action for a continued stay of

2

proceedings in the Infringement Action pending determination of the USPTO reexamination proceeding by the Director.  Complaint ¶ 11.  On or about October 5, 1999, over Dome's vigorous opposition (see Declaration of James W. Dabney, sworn to January 25, 2008 [hereinafter, "Dabney Decl."] ¶ 5 & Ex. 4), the Court hearing the Infringement Action ordered a stay of all proceedings in that action pending determination of the USPTO reexamination proceeding by the Director.  Id. ¶ 6 & Ex. 5. The Court also denied motions for Orders (a) dismissing Dome's complaint in the Infringement Action or (b) requiring that Dome make a "more definite statement" of its infringement claim.  Id. ¶¶ 3-4 & Exs. 2-3.

On or about May 23, 2002, an Examiner in the USPTO, acting on behalf of the then-Director, issued an Office Action that concluded that claims 2, 3, and 4 of the Neefe Patent were valid and recited patentable subject matter, but that claim 1 of the Neefe Patent recited a method that assertedly "would have been obvious at the time the invention was made to a person having ordinary skill in the art," 35 U.S.C. § 103(a), and so was assertedly invalid as a legal matter.  Complaint ¶ 13.  On or about July 12, 2002, Dome timely appealed the Examiner's rejection of claim 1 of the Neefe Patent to the USPTO Board of Patent Appeals and Interferences (the "Board").  Complaint ¶ 14.

In its appeal, Dome relied on an affidavit of Russell A. Neefe, the named inventor of the Neefe Patent, who testified that (a) the method of claim 1 of the Neefe Patent fulfilled a widely-recognized, long-felt, but unsolved need in the United States contact lens industry, (b) the method of claim 1 of the Neefe Patent yielded a contact lens material that was vastly superior to, and more valuable than, contact lens materials produced by prior art methods; (c) the method of claim 1 of the Neefe Patent was believed to have been widely adopted by United States contact lens manufacturers and to have supplanted prior art contact lens

manufacturing methods; and (d) the method of claim 1 of the Neefe Patent was believed to have enjoyed large scale commercial success.   Complaint ¶ 15.

Because of the stay granted in the Infringement Action, Dome was not in a position during the reexamination proceedings to submit evidence of actual sales, market share, growth in market share, replacing earlier units sold by others, or of dollar amounts of contact lens material made using the method of claim 1 of the Neefe Patent.  Complaint ¶ 16.  This evidence was not publicly available, and the stay of proceedings in the Infringement Action prevented Dome from seeking discovery of this evidence from the defendants in the Infringement Action or third-party contact lens manufacturers.  Id.  The stay of proceedings in the Infringement Action similarly precluded Dome from submitting evidence to the USPTO that the defendants in the Infringement Action and others copied and used Mr. Neefe's invention.  Id.

On July 31, 2007, the Board issued a decision that affirmed the Examiner's rejection of claim 1 of the Neefe Patent under 35 U.S.C. § 103(a).  Ex parte Russell A. Neefe, Appeal 2007-1366.  Dabney Decl. Ex. 10.  The Board's decision stated in part:  "Secondary considerations such as commercial success, long felt need, and copying by others, while relevant to the obviousness inquiry, must be proved with clear and convincing evidence."  Id., slip op. at 22.  The Board then held that Mr. Neefe's "declaration does not establish clear and convincing evidence of any secondary considerations of non-obviousness" and "does not establish secondary considerations by even a preponderance of the evidence."  Id. at 23.  The Board faulted Dome for, among other things, not having submitted "evidence of actual sales, market share, growth in market share, replacing earlier units sold by others[,] or of dollar

amounts" or "nexus between sales and the merits of the invention" or direct evidence of "copying." Id. at 22-23. Complaint ¶ 17.

**Course of Proceedings**

Dome commenced this action on September 24, 2007. Dome contends that "[t]he Board's conclusion that claim 1 of the Neefe Patent recites a method that 'would have been obvious at the time the invention was made to a person having ordinary skill in the art,' 35 U.S.C. § 103(a), is erroneous and should be reversed." Complaint ¶ 18. Under 35 U.S.C. § 145, the Court is authorized to receive live testimony (which can never be proffered in ex parte reexamination proceedings) and documentary evidence relevant to any issue previously raised to the Board, whether part of the administrative record or not. See, e.g., Winner Int'l Royalty Corp. v. Wang, 202 F.3d 1340, 1345-47, 1351-52 (Fed. Cir. 2000) (affirming district court decisions (i) to admit survey evidence bearing on commercial success of claimed invention, and (ii) to overturn Board decision rejecting claims as purportedly reciting subject matter that "would have been obvious" under § 103(a)).

On November 26, 2007, the defendant Director served his Answer to the Complaint. In addition to paragraphs admitting and denying factual allegations made by Dome (Answer at 3-7, ¶¶ 1-20), the Director's Answer pleads eight purported "Defense[s]" to this action (id. at 1-3). The Director asserts, among other things, that Dome purportedly has "waived the presentation of any new evidence that was not presented to the Board because of lack of diligence by the plaintiff" (id. at 2,"Fourth Defense"; emphasis added) and Dome purportedly "has waived its right to seek discovery in this action" (id. at 2, "Fifth Defense"; emphasis added), by reason of an alleged "failure" on Dome's part "to seek or to obtain discovery in the

case pending the United States District Court for the Western District of New York" (id.), that is, the Infringement Action.

Now, in the guise of a motion for a "Protective Order," Fed. R. Civ. P. 26(c)(1), the Director effectively asks the Court to grant summary judgment on the merits of the Director's purported affirmative defense of waiver (Fourth and Fifth Defenses), and on that basis, to issue a sweeping Order precluding Dome from seeking any discovery this action, on any topic, from any person, no matter how relevant and proper such discovery might be under Rule 26(b)(1) of the Federal Rules of Civil Procedure.

## SUMMARY OF ARGUMENT

The Director's motion is without merit and should be denied for two basic reasons. First, the Director has presented no proper or legally cognizable basis for the grant of a Protective Order under Rule 26(c)(1). The Director has made no showing that he, or the USPTO, would be subjected to "annoyance, embarrassment, oppression, or undue burden or expense," Fed. R. Civ. P. 26(c)(1), if Dome were permitted to seek discovery of relevant documents and information held by third parties to this action. The provisions of Rule 45(c) of the Federal Rules of Civil Procedures are fully adequate to protect third parties against any undue burden or expense that might attend compliance with subpoenas served in this action (Part I, infra).

Second, and contrary to the Director's assertion, Dome plainly has not "waived its right to take the discovery it seeks." Def. Mem. at 12. Dome's right to seek discovery in this civil action came into existence on September 24, 2007, when Dome timely commenced this civil action under 35 U.S.C. § 145. Civil actions under 35 U.S.C. § 145 constitute an integral part of the statutory scheme for reexamination of patents under 35 U.S.C. §§ 301-307.

Dome's so-called "failure" to seek reconsideration of a stay Order that was issued in the Infringement Action (i) over Dome's opposition, and (ii) for the very purpose of channeling the question of the validity of the Neefe Patent into this statutory reexamination proceeding, can by no stretch be constituted a "waiver" of any of Dome's rights in this action (Part II, <u>infra</u>). Even though the statutory and regulatory scheme provides for discovery only in the § 145 judicial process and not in the administrative reexamination process, the Director now contends that a party in administrative reexamination <u>must</u> attempt to circumvent the limits on discovery at the administrative level by using the discovery process of any pending infringement actions – even actions stayed by court order – to develop the administrative record. No authority – not a single case – supports that position, and this court should reject that position as inconsistent with the carefully constructed statutory and regulatory scheme that provides full-blown discovery only <u>after</u> the streamlined administrative process is complete.

## <u>ARGUMENT</u>

## I.     **THE DIRECTOR HAS FAILED TO PRESENT ANY PROPER OR <u>LEGALLY COGNIZABLE BASIS FOR RELIEF UNDER RULE 26(c).</u>**

Rule 26(c)(1) of the Federal Rules of Civil Procedure, headed "Protective Orders," provides in part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . . The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or

person from annoyance, embarrassment, oppression, or undue burden or expense . . . .

As is apparent from its title and text, Rule 26 authorizes a court to protect a party or person[1] from certain types of <u>effects</u> that would attend <u>compliance</u> with a discovery request, namely, "annoyance, embarrassment, oppression, or undue burden or expense." The Director here does not even pretend to seek protection against "annoyance, embarrassment, oppression, or undue burden or expense," and with good reason: Dome has not propounded any discovery requests to the Director or to any person in which the Director or the USPTO has any interest. On this basis alone, the Director's motion should be denied.

The Director's motion points to a small number of document subpoenas that Dome has served on third-party manufacturers of rigid gas permeable contact lenses or lens material. <u>See</u> Def. Mem. Ex. 11 (subpoenas to third parties ABB/Con-Cise Optical Group LLC and Bausch & Lomb, Incorporated). It is well settled that for purposes of 35 U.S.C. § 103, "[s]uch secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc. might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy." <u>Graham v. John Deere Co.</u>, 383 U.S. 1, 17-18 (1966). No claim is made, or could be made, that the third-party discovery sought by Dome is not

---

[1] "Nothing in the Rules . . . makes controlling a distinction between parties and nonparties in respect to the type of information sought." <u>Truswal Syst. Corp. v. Hydro-Air Engineering, Inc.</u>, 813 F.2d 1207, 1210 (Fed. Cir. 1987). "The administration of justice would not be aided . . . by a rule relieving all persons from giving particular evidence on the sole ground that they are not parties to the suit." <u>Id.</u> (reversing order denying third party discovery concerning patentability of claimed subject matter under § 103).

"relevant" to its claim in this case for purposes of Rule 26(b)(1).  Defendant's motion does not even cite Rule 26(b)(1).

Any third parties served with subpoenas in this action will have the right to object to requested discovery on any of the grounds identified in Rule 45(c)(3) of the Federal Rules of Civil Procedure.  Certain third parties have already lodged objections under Rule 45(c).  <u>See</u> Def. Mem. Ex. 12 (objections of Bausch & Lomb, Incorporated).  Dome has already attempted to respond to objections made by third parties in conformity with Fed. R. Civ. P. 45(c)(1).  To the extent that objections to third-party subpoenas cannot be resolved, Rule 45(c)(2) provides a mechanism for testing the merits of particular objections to discovery in districts where the subpoenas are returnable.

The Director has presented no reason, and there is no conceivable reason, why the objection procedure of Fed. R. Civ. P. 45(c)(2) is inadequate to protect third parties from annoyance, embarrassment, oppression, or undue burden or expense in the circumstances of this case.  Nor has the Director explained how or why he or the USPTO has standing to object to discovery that Dome has sought, or may hereafter seek, from third parties in which the Director and the USPTO have no interest.   The Director has served no objections to any of the subpoenas that Dome has served in this case to date – which is hardly surprising, for the Director has no pecuniary or other legitimate interest in whether private sector third parties do or do not disclose information relevant to the patentability of the subject matter described by claim 1 of the Neefe Patent.

"A party seeking a protective order over discovery materials must demonstrate that "good cause" exists for the protection of that material."  <u>Glenmede Trust Co. v. Thompson</u>, 56 F.3d 476, 483 (3d Cir. 1995).  "'Good cause' is established when it is specifically

demonstrated that disclosure will cause a <u>clearly defined and serious injury</u>." <u>Id.</u> (citation omitted) (emphasis added). To show good cause for entry of a protective order, Defendant "must articulate specific facts to support its request and cannot rely on speculative or conclusory statements." <u>Jennings v. Family Management</u>, 201 F.R.D. 272, 275 (D.D.C. 2001).

Here, the Director has completely and utterly failed to articulate any "clearly defined and serious injury" that would occur in the absence of the blanket denial of discovery sought by the Director. Moreover, to the extent that the Director's motion is based on objections that third parties have made, or may hereafter make, under Rule 45(c)(2) of the Federal Rules of Civil Procedure, the Director has no standing to litigate the merits of those existing or putative objections and he has, at all events, presented no evidence as could justify a finding that any of the existing or putative third-party objections are meritorious.

## II.    THE DIRECTOR HAS FAILED TO ESTABLISH ANY BASIS FOR HOLDING THAT DOME HAS "WAIVED" ITS RIGHTS TO DISCOVERY IN THIS ACTION.

Passing over all questions of standing, relevance, or impact cognizable under Rule 26(c), the Director argues that the Court should issue a sweeping Order precluding Dome from taking any discovery in this action, on any topic, from any person, because Dome purportedly "has <u>waived</u> its right to take the discovery it seeks." Def. Mem. at 12 (emphasis added). This contention is insupportable.

The present civil action under 35 U.S.C. § 145 is but one step in a comprehensive statutory scheme governing the reexamination of issued United States patents. 35 U.S.C. § 302 provides that "[a]ny person at any time may file a request for reexamination by the Office . . . ." Once such a request is made, the Director will then "determine whether a

substantial new question of patentability affecting any claim of the patent concerned is raised by the request . . . ." 35 U.S.C. § 303(a). "If, in a determination made under the provisions of subsection 303(a) of this title, the Director finds that a substantial new question of patentability affecting any claim of a patent is raised, the determination will include an order for reexamination of the patent for resolution of the question." 35 U.S.C. § 304. That is what happened in this case on June 24, 1999, when the then-Director ordered a reexamination of the Neefe Patent. Complaint ¶ 10. See Dabney Decl. ¶ 10 & Ex. 9.

Importantly, reexamination of issued patent claims is "conducted according to the procedures established for initial examination under the provisions of sections 132 and 133 of this title." 35 U.S.C. § 305. A patent owner in such a reexamination proceeding may submit a "statement" and narrowing claim amendments, 35 U.S.C. § 304, but has no right to subpoena witnesses or to offer live testimony to the Examiner conducting the reexamination. If an Examiner issues a final rejection of a claim in reexamination, the patent owner "may appeal from the final rejection of any claim by the primary examiner to the Board of Patent Appeals and Interferences, having once paid the fee for such appeal." 35 U.S.C. § 134. Here again, appeals from an Examiner's rejections in reexamination are expressly excluded from the list of "contested cases" in which third parties may be subpoenaed. See 37 C.F.R. § 41.2 ("Contested case means a Board proceeding other than an appeal under 35 U.S.C. § 134 . . . ."); 35 U.S.C. § 24 (district courts shall, on request, issue subpoenas for use in any "contested case" in the USPTO).

In the event that the Board of Patent Appeals and Interferences affirms an Examiner's rejection of a claim in reexamination, the Patent Act has long provided patent owners with two separate and distinct judicial remedies: (1) an "appeal" based on the administrative record

before the Board, and (2) a "civil action" in which the patent owner may introduce new evidence and seek <u>de</u> <u>novo</u> determination of factual issues.    See <u>Hoover Co. v. Coe</u>, 325 U.S. 79, 83 (1945) ("In the first the hearing is summary and solely on the record made in the Patent Office; in the other a formal trial is afforded as proof which may include evidence not presented in the Patent Office."); <u>Burlington Indus., Inc. v. Quigg</u>, 822 F.2d 1581, 1584 (Fed. Cir. 1987) (applying <u>Coe</u>).

35 U.S.C. § 306 provides:

The patent owner involved in a reexamination proceeding under this chapter may appeal under the provisions of section 134 of the title, and may seek court review under the provisions of sections 141 to 145 of this title, with respect to any decision adverse to the patentability of any original or proposed amended or new claim of the patent.

Rule 1.303(a) of the Rules of Practice before the USPTO, 37 C.F.R. § 1.303(a), provides:

Any applicant, or any owner of a patent involved in an *ex parte* reexamination proceeding filed before November 29, 1999, dissatisfied with the decision of the Board of Patent Appeals and Interferences, and any party to an interference dissatisfied with the decision of the Board of Patent Appeals and Interferences may, instead of appealing to the U.S. Court of Appeals for the Federal Circuit (§ 1.301), have remedy by civil action under 35 U.S.C. 145 or 146, as appropriate.

35 U.S.C. § 145, entitled "Civil action to obtain patent," provides:

An applicant dissatisfied with the decision of the Board of Patent Appeals and Interferences in an appeal under section 134(a) of this title may, unless appeal has been taken to the United States Court of Appeals for the Federal Circuit, have remedy by civil action against the Director in the United States District Court for the District of Columbia if commenced within such time after such decision, not less than sixty days, as the Director appoints.  The court may adjudge that such applicant is entitled to receive a patent for his invention, as specified in any of his claims involved in the decision of the Board of Patent Appeals and Interferences, as the facts in the case may appear and such adjudication shall authorize the Director to issue such patent on compliance

with the requirements of law.  All the expenses of the proceedings shall be paid by the applicant.

In accordance with the above-quoted provisions, Dome timely commenced this civil action on September 24, 2007, in lieu of taking a direct appeal to the Court of Appeals for the Federal Circuit under 35 U.S.C. § 141.  With the commencement of this action, Dome was vested, for the first time, with the ability to contest the Director's decision in reexamination with live testimony and evidence in the hands of third parties that were subject to compulsory discovery under Rules 26 and 45 of the Federal Rules of Civil Procedure.  See, e.g., Winner, 202 F.3d at 1345-47, 1351-52 (affirming district court decisions (i) to admit survey evidence bearing on commercial success of claimed invention, and (ii) to overturn Board decision rejecting claims as purportedly reciting subject matter that "would have been obvious" under § 103(a)).

The Supreme Court has defined waiver as "an intentional relinquishment or abandonment of a known right or privilege."  Johnson v. Zerbst, 304 U.S. 458, 464 (1938).  The Fourth Circuit has similarly stated that it "is well-settled that waiver is the voluntary and intentional relinquishment of a known right, and courts have been disinclined lightly to presume that valuable rights have been conceded in the absence of clear evidence to the contrary."  Doe v. Kidd, 501 F.3d 348, 354, (4th Cir. 2007) (quoting United States v. Stout, 415 F.2d 1190, 1192-1193 (4th Cir. 1969)).   Furthermore, waiver "represents 'the manifestation of an intentional choice . . . .'"  United States v. Johnson, 289 F.3d 1034, 1041 (7th Cir. 2002) (citation omitted).

As noted above, Dome's right to seek discovery in the present case did not even arise until September 24, 2007, when Dome timely commenced this action under 35 U.S.C. § 145.

No claim is made, or could be made, that Dome ever told the Director, orally or in writing, that it was "waiving" a critical part of its rights as a litigant under 35 U.S.C. § 145. Rather, the Director appears to argue that Dome somehow impliedly and prospectively "waived" its discovery rights in this civil action under 35 U.S.C. § 145, when Dome abided by a stay Order that was issued in the Infringement Action (i) over Dome's opposition, and (ii) for the very purpose of channeling the question of the validity of the Neefe Patent into a USPTO reexamination proceeding. The contention is without legal basis and makes no sense.

Contrary to the Director's apparent view, there was nothing whatever inconsistent or improper in Dome's (a) abiding by the stay Order in the Infringement Action, and (b) defending the Neefe Patent under and in accordance with the statutes and rules governing reexamination of issued patents. Within the USPTO, reexamination proceedings are supposed to be "conducted with special dispatch," 35 U.S.C. § 306, and no provision is made for discovery or live testimony. It is only after such abbreviated administrative proceedings are concluded that a patentee may commence a civil action under 35 U.S.C. § 145 and, as a litigant in such an action, seek discovery and offer live testimony in opposition to an adverse decision of the Director.

Far from seeking "to circumvent the stay order of the District Court in New York" (Def. Mem. at 2), Dome here seeks to <u>finish</u> the statutory reexamination proceeding that was started by a defendant in the Infringement Action and that the referenced "stay order" was issued to facilitate. In the statutory scheme for reexamination, this civil action under 35 U.S.C. § 145 provides Dome's <u>first</u> opportunity to seek compelled discovery and to offer live testimony on the question of patent validity in the reexamination proceeding. Dome could hardly have "waived" its rights to seek discovery in this civil action prior to September

24, 2007, for those rights did not even exist prior to that time. The Director has made no showing that, at any time after September 24, 2007, Dome made any "intentional choice" to waive, "voluntarily" or otherwise, the right of discovery provided to it by 35 U.S.C. § 145.

Contrary to the Director's suggestion (Def. Mem. at 10-11), the question before this Court is not whether Dome should be precluded from introducing, in this case, evidence that it had, but deliberately failed to submit to the USPTO prior to the Board's decision. To the contrary, the Director seeks to preclude Dome from seeking <u>discovery</u> of information that Dome <u>did</u> not and <u>does</u> not have, even now. The Director cites to no case, and Dome is aware of none, in which a patent owner has been held to "waive" its rights to seek discovery under 35 U.S.C. § 145 because, during the pendency of an <u>ex parte</u> reexamination proceeding, the patentee did not attempt to relitigate the merits of a motion for stay of proceedings in a prior pending infringement litigation – much less a stay order that was issued over the opposition of the patentee.

The Director cites to a number of cases that are readily distinguishable on their facts. For example, in <u>Hyatt v. Dudas</u>, 2006 WL 4606037 (D.D.C. Sept. 30, 2006) (Kennedy, J.), a patent applicant "withheld" information that admittedly was <u>known</u> to him, and was precluded from relying on his own declaration by which he sought to introduce the previously withheld information in a § 145 action without justification. <u>Id</u>. at *3. Here, in sharp contrast, Dome seeks <u>discovery</u> of evidence that is <u>not</u> currently known to it and was <u>not</u> "withheld" by Dome in any way.

Similarly, in <u>DeSeversky v. Brenner</u>, 424 F.2d 857 (D.C. Cir. 1970), a patent applicant attempted to rely on his own self descriptions of his alleged invention that had been omitted from his patent application and from the arguments he made to the USPTO. Like <u>Hyatt</u>, the

<u>DeSeversky</u> case was one in which the patent applicant had possession of, but failed to present, information later relied upon as grounds to support non-obviousness.   Nothing like such a situation is presented here.

In <u>Kirschke v. Lamar</u>, 426 F.2d 870 (8th Cir. 1970), a party to an interference proceeding was held to be precluded from relying on the testimony of two corroborating witnesses, where the witnesses' testimony "was within the knowledge of the plaintiffs and was available to them at the time of the interference proceeding but was not used because they elected not to present it after mistakenly deciding that it was not needed to prevail." <u>Id</u>. at 873 (<u>quoting</u> <u>Kirschke v. Lamar</u>, 300 F. Supp. 146, 152-53 (W.D. Mo. 1969)).   The Court held that "a deliberate, intentional, or willful withholding or suppression of pertinent and available evidence from the Patent Office, whether attended by reprehensible motives or not, whether it be for tactical or other reasons, justifies exclusion of such evidence in a § 146 proceeding." 426 F.2d at 874.   This principle has no application to the present case, where Dome seeks <u>discovery</u> of evidence that was <u>not</u> "within the knowledge of" Dome during the reexamination proceeding.

<u>Velsicol Chem. Corp. v. Monsanto Co</u>., 579 F.2d 1038 (7th Cir. 1978), was also an interference case in which a party failed to present the testimony of two of its former employees who signed an alleged inventor's notewook as witnesses, and whose testimony "was in fact easily procurable." <u>Id</u>. at 1047.   Importantly, an interference proceeding is a type of "contested case" in the USPTO (37 C.F.R. § 41.2) and as such,  is one in which parties can request a district court to issue subpoenas to witnesses under 35 U.S.C. § 24.  <u>Velsicol</u> is thus yet another case in which testimony was readily available to a party, including through subpoenas in the interference proceeding itself, and was not proffered as a result of "grossly

negligent" conduct of a party.  579 F.2d at 1048.  Again, the Velsicol facts and reasoning are wholly inapplicable here: unlike the interference proceeding in Velsicol, reexamination proceedings are not "contested cases" in which patent owners can obtain subpoenas under 35 U.S.C. § 24; unlike the witnesses at issue in Velsicol, Dome here had no access to the information and documents now sought; and Velsicol did not involve any question of a party's right to seek discovery in an action brought under 35 U.S.C. § 145.

Any appeal of this Court's judgment in this case will lie to the Court of Appeals for the Federal Circuit, and it is thus appropriate to consider that court's precedents interpreting § 145.  In Winner, the Federal Circuit upheld Judge Sporkin's decision to receive in evidence a "survey report regarding the nexus between commercial success and the patentably distinct feature of the claimed invention."  202 F.3d at 1351.  In reaching that conclusion, the Federal Circuit did not inquire into whether the patent applicant could have generated the survey evidence during earlier USPTO interference proceedings, or whether the patent applicant was "negligent," "grossly negligent," or "diligent" in preparing its case before the USPTO.  The idea that a patent owner's right to proffer evidence in a § 145 proceeding depends on the patentee displaying "diligence," or an absence of "negligence," in prior USPTO administrative proceedings (Def. Mem. at 3, 10), is inconsistent with Federal Circuit precedent.   There is, at all events, no basis for applying any such principle here.

The Director's reliance on Conservolite v. Widmayer, 21 F.3d 1098 (Fed. Cir. 1994), is misplaced.  Conservolite concerned whether a litigant could introduce in a § 146 action evidence on "issues [that] were not raised before the Board." 21 F.3d at 1102.  Here, Dome seeks discovery relevant to the same legal and factual issues that were before the Board.

### III.     THE DIRECTOR HAS MISCHARACTERIZED THE OUTCOME OF PREVIOUS LITIGATION INVOLVING THE PATENT AT ISSUE IN THE PRESENT SUIT

In an apparent attempt to prejudice the Court, the Director supports his motion with gratuitous – and wholly erroneous and misleading – characterizations of prior litigation between Dome and non-party Pilkington Visioncare, Inc.  Def. Mem. at 4-5.  Contrary to the Director's suggestion, on May 30, 1995, a jury in the Pilkington case returned a verdict finding that the defendant had infringed the Neefe Patent under the doctrine of equivalents and was liable to Dome for $4.25 million in compensatory damages.  Dabney Decl. at ¶ 8 & Ex. 7.  The district court thereafter granted a motion for a new trial, after which Dome and Pilkington settled the litigation by the granting of a license whose terms are confidential.

## CONCLUSION

For the reasons set forth above, the Director's motion for a Protective Order under Fed. R. Civ. P. 26(c)(1) should be denied in all respects.

Dated: January 25, 2008

FRIED, FRANK, HARRIS, SHRIVER
& JACOBSON LLP

By: _____ / s / James W. Dabney _____
    James W. Dabney, D.C. Bar # NY0036
    Stephen S. Rabinowitz, D.C. Bar # NY0085
    John F. Duffy, D.C. Bar # 442138
    Randy C. Eisensmith, D.C. Bar # NY0084

1001 Pennsylvania Ave, N.W.
Washington, D.C. 20004
Telephone:  (202) 639-7000

One New York Plaza
New York, NY  10004
Telephone:  (212) 859-8000

E-mail:  james.dabney@friedfrank.com

Attorneys for Plaintiff
Dome Patent L.P.

562445

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

------------------------------------------------------------------ x
                                                    :
DOME PATENT L.P.,                                   :
                                                    :
                               Plaintiff,           :        ECF CASE
                                                    :
                     - v -                           :        No. 07-1695 (PLF)
                                                    :
JON W. DUDAS,                                       :
Under Secretary of Commerce for Intellectual Property :
and Director of the United States Patent and Trademark :
Office,                                             :
                                                    :
                               Defendant.            :
                                                    :
------------------------------------------------------------------ x-

## <u>DECLARATION OF JAMES W. DABNEY</u>

1.  My name is James W. Dabney.  I am a member of the Bar of this Court and of the

firm of Fried, Frank, Harris, Shriver & Jacobson LLP, counsel for plaintiff Dome Patent L.P.

("Dome") in this action.  I have personal knowledge of the matters stated in this declaration.

2.  Annexed hereto as Exhibit 1 is a copy of a PACER docket report in <u>Dome Patent L.P.</u>

<u>v. Permeable Technologies, Inc</u>., No. 6:98-cv-06247-DGL, currently pending in the United

States District Court for the Western District of New York (the "Infringement Action").

3.  Annexed hereto as Exhibit 2 is a Decision and Order issued September 27, 1999, in

the Infringement Action, denying a motion by defendant Polymer Technology to dismiss Dome's

Complaint in the Infringement Action.

4.  Annexed hereto as Exhibit 3 is a copy of a Decision and Order issued September 30,

1999 in the Infringement Action, denying multiple motions by defendants for a more definite

statement under Rule 12(e) of the Federal Rules of Civil Procedure.

5.   Annexed hereto as Exhibit 4 is a copy of a paper styled "Brief Re: Continued Stay" dated September 22, 1999, in which Dome opposed a stay of proceedings in the Infringement Action pending the determination of reexamination proceedings in the United States Patent and Trademark Office.

6.   Annexed hereto as Exhibit 5 is a copy of an Order dated October 5, 1999, in which the Court stayed all proceedings in the Infringement Action "pending the outcome of a reexamination proceeding initiated by Optical in the United States Patent of Trademark Office."

7.   Annexed hereto as Exhibit 6 is a PACER docket report of <u>Dome Patent L.P. v. Pilkington Visioncare Inc</u>., No. 3:95-cv-03031-WHO, formerly pending in the United States District Court for the Northern District of California (the "Pilkington Action").

8.   Annexed hereto as Exhibit 7 is a copy of a jury verdict rendered May 30, 1995, in the Pilkington Action, awarding $4.25 million in damages for infringement of U.S. Patent No. 4,306,042 (the "Neefe Patent"), under the doctrine of equivalents.

9.   Annexed hereto as Exhibit 8 is a copy of the Neefe Patent.

10.   Annexed hereto as Exhibit 9 is a copy of the transaction history of Reexamination No. 90/005,090 in the United States Patent and Trademark Office.

11.   Annexed hereto as Exhibit 10 is a copy of a decision of the Board of Patent Appeals and Interferences in Appeal No. 2007-1366 entitled <u>Ex Parte Russell A. Neefe</u>.

I, JAMES W. DABNEY, hereby declare under penalty of perjury that the foregoing is true and correct.

Dated:  January 25, 2008

/ s /  James W. Dabney<br>JAMES W. DABNEY

562085

EXHIBIT 1

# U.S. DISTRICT COURT
## U.S. District Court, Western District of New York (Rochester)
## CIVIL DOCKET FOR CASE #: 6:98-cv-06247-DGL

Dome Patent L.P. v. Permeable, et al

Assigned to: Hon. David G. Larimer

Demand: $0

Cause: 35:271 Patent Infringement

Date Filed: 06/09/1998

Jury Demand: Plaintiff

Nature of Suit: 830 Patent

Jurisdiction: Federal Question

**Plaintiff**

**Dome Patent L.P.**
*a California limited patrnership*

represented by   **Douglas Jones**
Chamberlain, D'Amanda, Oppenheimer &
Greenfield
1600 Crossroads Building
Two State Street
Rochester, NY 14614
(716) 232-3730
*TERMINATED: 12/11/2001*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jerry A. Riedinger**
Perkins Coie, LLP
1201 Third Avenue
Suite 4800
Seattle, WA 98101
206-359-8664
Fax: 206-359-9664
Email: JRiedinger@perkinscoie.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John P. Sutton**
2421 Pierce Street
San Francisco, CA 94115
fax415-922-2885
*TERMINATED: 01/02/2002*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**K. Wade Eaton**
Chamberlain, D'Amanda, Oppenheimer &
Greenfield
1600 Crossroads Building
Two State Street
Rochester, NY 14614
585-232-3730
Fax: 585-232-3882

Email: kwe@cdlawyers.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Koorosh Afshari**
Bryan, Hinshaw & Barnet, Inc.
425 California Street
Suite 900
San Francisco, CA 94104
415-296-0812
*TERMINATED: 12/17/2001*
*LEAD ATTORNEY*

**Manuella W. Hancock**
Perkins Coie, LLP
1201 Third Avenue
Suite 4800
Seattle, WA 98101
*ATTORNEY TO BE NOTICED*

**Victor Cerda**
Perkins Coie, LLP
1201 Third Avenue
Suite 4800
Seattle, WA 98101
*ATTORNEY TO BE NOTICED*

V.

**<u>Defendant</u>**

**Permeable Technologies, Inc.**
*a New Jersey Corporation*

represented by    **Henry D. Coleman**
Coleman Sudol Sapone, P.C.
714 Colorado Avenue
Bridgeport, CT 06605-1601
(203) 366-3560
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**<u>Defendant</u>**

**Concise Contact Lens, Inc.**
*a California Corporation*
*TERMINATED: 09/11/1998*

**<u>Defendant</u>**

**GT Laboratories, Inc.**
*a Corporation*

represented by    **James T. FitzGibbon**
Vedder, Price, Kaufman & Kammholz
222 North LaSalle Street
Suite 2600
Chicago, IL 60601-1003

312-609-7500
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Michael West**
Lothrop and West
8801 Folsom Boulevard
Suite 105
Sacramento, CA 95826-3249
(916) 379-9100
*TERMINATED: 09/22/1998*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

## Defendant

**Optical Polymer Research, Inc.**
*a Corporation*

represented by **Andrew Peter Rausch, Jr.**
Law Office of Andrew Peter Rausch Jr.
2800 W Marsh Lane
Suite 220
Stockton, CA 95219
(209) 952-5000
*TERMINATED: 10/14/1998*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brian B. Shaw**
Cumpston & Shaw
Two State Street
850
Rochester, NY 14614
716-325-5553
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Herbert W. Larson**
Larson and Larson
7381 114th Avenue North
Suite 406
Largo, FL 33773
(813) 546-0660
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Virginia Hulvey Meyer**
Law Offices of Virginia H Meyer
475 Gate Five Road
Suite 275
Sausalito, CA 94965
(415) 289-7471
*TERMINATED: 09/27/1999*

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Stellar Contact Lens, Inc.**                                      represented by **Harry C. Post**
*a Corporation*                                                                       Griggs, Robinson, Post, Henderson & Smith,
                                                                                      LLP
                                                                                      1200 North Dallas Bank Tower
                                                                                      12900 Preston Road, LB-29
                                                                                      Dallas, TX 75230
                                                                                      972-404-9785
                                                                                      *LEAD ATTORNEY*
                                                                                      *ATTORNEY TO BE NOTICED*

**Defendant**

**Polymer Technology**                                             represented by **Michael R. Wolford**
*a Corporation*                                                                       The Wolford Law Firm LLP
                                                                                      16 East Main Street
                                                                                      600 Reynolds Arcade Building
                                                                                      Rochester, NY 14614
                                                                                      585-325-8008
                                                                                      Fax: 585-325-8009
                                                                                      Email: mwolford@wolfordfirm.com
                                                                                      *LEAD ATTORNEY*
                                                                                      *ATTORNEY TO BE NOTICED*

                                                                                      **Priscilla F. Gallagher**
                                                                                      McAndrews, Held & Malloy, Ltd.
                                                                                      500 West Madison Street
                                                                                      34th Floor
                                                                                      Chicago, IL 60661
                                                                                      (312) 707-8889
                                                                                      *LEAD ATTORNEY*
                                                                                      *ATTORNEY TO BE NOTICED*

                                                                                      **Edward W. Remus**
                                                                                      McAndrews, Held & Malloy, Ltd.
                                                                                      500 West Madison Street
                                                                                      34th Floor
                                                                                      Chicago, IL 60661
                                                                                      (312) 707-8889
                                                                                      *ATTORNEY TO BE NOTICED*

                                                                                      **Mario F. Greco**
                                                                                      McAndrews, Held & Malloy, Ltd.
                                                                                      500 West Madison Street
                                                                                      34th Floor
                                                                                      Chicago, IL 60661
                                                                                      (312) 707-8889
                                                                                      *ATTORNEY TO BE NOTICED*

**ThirdParty Plaintiff**

**GT Laboratories, Inc.**


V.

**ThirdParty Defendant**

**GT Estate Inc.**                              represented by **James E. Metzler**
Boylan, Brown, Code, Vigdor & Wilson,
LLP
2400 Chase Square
Rochester, NY 14604
585-232-5300, ext. 250
Fax: 585-238-9050
Email: jmetzler@boylanbrown.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gregory H. Gardella**
Foley & Lardner
330 North Wabash Ave.
Suite 3300
Chicago, IL 60611
*ATTORNEY TO BE NOTICED*

**James R. Vogler**
Foley & Lardner
330 North Wabash Ave.
Suite 3300
Chicago, IL 60611
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**GT Laboratories, Inc.**


V.

**Counter Defendant**

**Dome Patent LP**                             represented by **Jerry A. Riedinger**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John P. Sutton**
Bryan Hinshaw and Barnet
425 California Street
Suite 900
San Francisco, CA 94104
(415) 296-0800

*TERMINATED: 01/02/2002*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Manuella W. Hancock**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Victor Cerda**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/09/1998 | 40 | Original file, certified copy of transfer order, docket sheet and document numbers 1 - 39 received from District of California, Eastern District (BJB) (Entered: 07/01/1998) |
| 07/01/1998 | | awaiting certified transfer order from Eastern District of California (Sacramento) (BJB) (Entered: 07/01/1998) |
| 08/11/1998 | 41 | NOTICE of Motion by Polymer Technology (BJB) (Entered: 08/12/1998) |
| 08/11/1998 | 42 | MOTION by Polymer Technology to Dismiss the action Court to set return date (BJB) (Entered: 08/12/1998) |
| 08/11/1998 | 43 | CERTIFICATE OF SERVICE by Polymer Technology [42-1] motion to Dismiss the action by Polymer Technology, [41-1] notice by Polymer Technology upon John P. Sutton and H.William Larson on 8/11/98 by mail (BJB) (Entered: 08/12/1998) |
| 08/31/1998 | 44 | ORDER, Response to Motion reset to 9/21/98 for [42-1] motion to Dismiss the action , and Reply to Response to Motion set to eight business days following filing of the responding papers for [42-1] motion to Dismiss the action ( signed by Chief USDJ David G. Larimer ) Notice and copy of order sent to John P. Sutton, Michael Wolford, Herbert W. Larson, Virginia Hulvey Meyer, Andrew Peter Rausch Jr., Robert Michael West, Henry D. Coleman (BJB) (Entered: 09/01/1998) |
| 09/01/1998 | 45 | MOTION/APPLICATION by Dome Patent L.P. for Koorosh Afshari to Appear Pro Hac Vice (BJB) (Entered: 09/01/1998) |
| 09/01/1998 | 46 | MOTION/APPLICATION by Dome Patent L.P. for John P. Sutton to Appear Pro Hac Vice (BJB) (Entered: 09/01/1998) |
| 09/01/1998 | 47 | DECLARATION by John P. Sutton on behalf of Dome Patent L.P. (BJB) (Entered: 09/01/1998) |
| 09/01/1998 | 48 | MEMORANDUM by Dome Patent L.P. in opposition to Polymer Technologies Rule 11 motion-document #42 (BJB) Modified on 09/15/1998 (Entered: 09/01/1998) |
| 09/08/1998 | 49 | ANSWER to Complaint by Stellar Contact Lens (Attorney Harry C. Post), (BJB) (Entered: 09/08/1998) |

| 09/08/1998 | 50 | ORDER granting [46-1] motion for John P. Sutton to Appear Pro Hac Vice, granting [45-1] motion for Koorosh Afshari to Appear Pro Hac Vice ( signed by Chief USDJ David G. Larimer ) Notice and copy of order sent to John P. Sutton, Michael Wolford, Harry C. Post, Herbert W. Larson, Virginia Hulvey Meyer, Andrew Peter Rausch Jr., Robert Michael West, Henry D. Coleman, Koorosh Afshari (BJB) (Entered: 09/08/1998) |
| 09/08/1998 | | PRO HAC VICE fee paid. (John P. Sutton and Koorosh Afshari) (BJB) (Entered: 09/08/1998) |
| 09/11/1998 | 51 | MOTION by Optical Polymer for H. William Larson and Herbert W. Larson to Appear Pro Hac Vice No oral argument of the motion is requested (BJB) (Entered: 09/14/1998) |
| 09/11/1998 | 52 | REQUEST FOR the United States Patent and Trademark Office to Reexamine. (BJB) (Entered: 09/14/1998) |
| 09/11/1998 | 53 | MOTION by Optical Polymer to Stay pending the outcome of the reexamination by the U.S. Patent Office Court to set return date (BJB) (Entered: 09/14/1998) |
| 09/11/1998 | 54 | ANSWER by Dome Patent LP to Counterclaim of G.T. Laboratories, Inc. (BJB) (Entered: 09/14/1998) |
| 09/11/1998 | 55 | ANSWER by Dome Patent LP to Counterclaims of Stellar Contact Lens, Inc. (BJB) (Entered: 09/14/1998) |
| 09/11/1998 | 58 | DISMISSAL of the action against defendant Concise Contact Lens, Inc., without prejudice pursuant to FRCP 41(a)(1) (BJB) (Entered: 09/18/1998) |
| 09/14/1998 | 56 | REPLY/RESPONSE by Polymer Technology to [48-1] opposition memorandum by Dome Patent L.P. (BJB) (Entered: 09/15/1998) |
| 09/16/1998 | 57 | ORDER granting [51-1] motion for H. William Larson and Herbert W. Larson to Appear Pro Hac Vice ( signed by Chief USDJ David G. Larimer ) Notice and copy of order sent to John P. Sutton, Michael Wolford, Harry C. Post, H. William Larson, Herbert W. Larson, Virginia Hulvey Meyer, Andrew Peter Rausch Jr., Robert Michael West, Henry D. Coleman, Koorosh Afshari (BJB) (Entered: 09/17/1998) |
| 09/17/1998 | | PRO HAC VICE fee paid as to H. William Larson and Herbert W. Larson (BJB) (Entered: 09/17/1998) |
| 09/21/1998 | 59 | MOTION by Permeable for Mr. Parrinello, Mr. Wolfe, and Nielsen, Merksamer, Parrinello, Mueller & Naylor to Withdraw as Associate Counsel Court to set return date. (BJB) (Entered: 09/22/1998) |
| 09/22/1998 | 60 | ORDER, for R. Michael West to Withdraw as Attorney (Terminated attorney Robert Michael West for GT Laboratories, ( signed by Chief USDJ David G. Larimer ) Notice and copy of order sent to John P. Sutton, Michael Wolford, Harry C. Post, H. William Larson, Herbert W. Larson, Virginia Hulvey Meyer, Andrew Peter Rausch Jr., Robert Michael West, Henry D. Coleman, Koorosh Afshari (BJB) (Entered: 09/22/1998) |
| 09/23/1998 | 61 | MOTION by Polymer Technology for Priscilla F. Gallagher, Esq., Edward W. Remus, Esq., and Mario F. Greco, Esq., to Appear Pro Hac Vice Court to set return date (BJB) (Entered: 09/23/1998) |

| | | |
|---|---|---|
| 09/23/1998 | 62 | AFFIDAVIT by Polymer Technology Re: [61-1] motion for Priscilla F. Gallagher, Esq., Edward W. Remus, Esq., and Mario F. Greco, Esq., to Appear Pro Hac Vice by Polymer Technology (BJB) (Entered: 09/23/1998) |
| 09/23/1998 | 63 | AFFIDAVIT by Polymer Technology Re: [61-1] motion for Priscilla F. Gallagher, Esq., Edward W. Remus, Esq., and Mario F. Greco, Esq., to Appear Pro Hac Vice by Polymer Technology (BJB) (Entered: 09/23/1998) |
| 09/23/1998 | 64 | AFFIDAVIT by Polymer Technology Re: [61-1] motion for Priscilla F. Gallagher, Esq., Edward W. Remus, Esq., and Mario F. Greco, Esq., to Appear Pro Hac Vice by Polymer Technology (BJB) (Entered: 09/23/1998) |
| 09/25/1998 | 65 | ORDER granting [61-1] motion for Priscilla F. Gallagher, Esq., Edward W. Remus, Esq., and Mario F. Greco, Esq., to Appear Pro Hac Vice ( signed by Chief USDJ David G. Larimer ) Notice and copy of order sent to John P. Sutton, Michael Wolford, Harry C. Post, H. William Larson, Herbert W. Larson, Virginia Hulvey Meyer, Andrew Peter Rausch Jr., Henry D. Coleman, Douglas Jones, Koorosh Afshari (BJB) (Entered: 09/25/1998) |
| 09/25/1998 | | PRO HAC VICE fee paid as to Mario F. Greco, Priscilla F. Gallagher and Edward W. Remus (BJB) (Entered: 09/25/1998) |
| 09/28/1998 | 66 | MOTION for A. Peter Rausch, Jr. to Withdraw as Attorney Court to set return date (BJB) (Entered: 09/28/1998) |
| 10/05/1998 | 67 | ANSWER by GT Estate Inc. (Attorney James Metzler) to third party complaint of G.T. Laboratories, Inc. (BJB) (Entered: 10/05/1998) |
| 10/09/1998 | 69 | SUPPLEMENTAL MEMORANDUM by Dome Patent L.P. Re: Rule 11 Motion (BJB) (Entered: 10/13/1998) |
| 10/09/1998 | 72 | CERTIFICATE OF SERVICE by Optical Polymer [61-1] motion for Priscilla F. Gallagher, Esq., Edward W. Remus, Esq., and Mario F. Greco, Esq., to Appear Pro Hac Vice by Polymer Technology on 9/15/98 by mail upon John Sutton, Ed Remus, Harry C. Oost, III, Henry D. Coleman, James FitzGibbon (BJB) (Entered: 10/19/1998) |
| 10/13/1998 | 68 | AMENDED ANSWER to Interrogatory #4 filed by Polymer Technology L.P. (BJB) (Entered: 10/13/1998) |
| 10/14/1998 | 70 | ORDER granting [66-1] motion for A. Peter Rausch, Jr. to Withdraw as Attorney (Terminated attorney Andrew Peter Rausch Jr. for Optical Polymer ( signed by Chief USDJ David G. Larimer ) Notice and copy of order sent to James Metzler, John P. Sutton, Mario F. Greco, Edward W. Remus, Priscilla F. Gallagher, Michael Wolford, Harry C. Post, Brian B. Shaw, H. William Larson, Herbert W. Larson, Virginia Hulvey Meyer, Andrew Peter Rausch Jr., Robert Michael West, Henry D. Coleman, Douglas Jones, Koorosh Afshari (BJB) (Entered: 10/14/1998) |
| 10/16/1998 | 71 | MOTION by Optical Polymer for Virginia H. Meyer to Withdraw as Attorney Court to set return date (BJB) (Entered: 10/16/1998) |
| 11/03/1998 | 73 | ORDER, Response to Motion reset to 12/1/98 for [53-1] motion to Stay pending the outcome of the reexamination by the U.S. Patent Office , and Motion Hearing set for 9:00 12/17/98 for [53-1] motion to Stay pending the outcome of the reexamination by the U.S. Patent Office, set for 9:00 12/17/98 for [42-1] motion to Dismiss the action ( signed by Chief USDJ David G. Larimer ) Notice and copy of order sent to James |

| | | |
|---|---|---|
| | | Metzler, John P. Sutton, Mario F. Greco, Edward W. Remus, Priscilla F. Gallagher, Michael Wolford, Harry C. Post, Brian B. Shaw, H. William Larson, Herbert W. Larson, Virginia Hulvey Meyer, Henry D. Coleman, Douglas Jones, Koorosh Afshari (BJB) (Entered: 11/03/1998) |
| 11/17/1998 | 74 | MOTION by Polymer Technology, Concise Contact Lens for Sharon K. Sandeen to Withdraw as Attorney Court to set return date (BJB) (Entered: 11/17/1998) |
| 11/17/1998 | 75 | ORDER granting [74-1] motion for Sharon K. Sandeen to Withdraw as Attorney (*attorney and firm not found) ( signed by Chief USDJ David G. Larimer ) Notice and copy of order sent to James Metzler, John P. Sutton, Mario F. Greco, Edward W. Remus, Priscilla F. Gallagher, Michael Wolford, Harry C. Post, Brian B. Shaw, H. William Larson, Herbert W. Larson, Virginia Hulvey Meyer, Henry D. Coleman, Douglas Jones, Koorosh Afshari (BJB) (Entered: 11/18/1998) |
| 11/18/1998 | 76 | RESPONSE by Polymer Technology to [53-1] motion to Stay pending the outcome of the reexamination by the U.S. Patent Office by Optical Polymer (BJB) (Entered: 11/18/1998) |
| 11/24/1998 | 77 | NOTICE of Decision on Reexamination by Dome Patent L.P. (BJB) (Entered: 11/24/1998) |
| 11/24/1998 | 78 | AFFIRMATION by John P. Sutton on behalf of Dome Patent L.P. Re: Opposition to Motion for Rule 11 Sanctions (BJB) (Entered: 11/24/1998) |
| 11/30/1998 | 79 | RESPONSE by GT Laboratories, to [53-1] motion to Stay pending the outcome of the reexamination by the U.S. Patent Office by Optical Polymer (BJB) (Entered: 11/30/1998) |
| 12/10/1998 | 80 | MOTION by Polymer Technology for Leave to File Reply papers re: Polymer's motion to dismiss Court to set return date (BJB) (Entered: 12/11/1998) |
| 12/10/1998 | 81 | REPLY by Polymer Technology to response to [42-1] motion to Dismiss the action by Polymer Technology (BJB) (Entered: 12/11/1998) |
| 12/10/1998 | 82 | DECLARATION by Joseph C. Salamone on behalf of Polymer Technology Re: [42-1] motion to Dismiss the action by Polymer Technology (BJB) (Entered: 12/11/1998) |
| 12/10/1998 | 83 | CERTIFICATE OF SERVICE by Polymer Technology [82-1] affirmation by Polymer Technology, [81-1] response reply by Polymer Technology, [80-1] motion for Leave to File Reply papers re: Polymer's motion to dismiss by Polymer Technology upon John Sutton, Douglas Jones, Henry Coleman, James T. Gitzgibbon, Brian Shaw, H. Larson, Harry Post, III, James Vogler, Jason Turner, James Metzler on 12/10/98 (BJB) (Entered: 12/11/1998) |
| 12/11/1998 | 84 | RESPONSE by Dome Patent L.P. to [53-1] motion to Stay pending the outcome of the reexamination by the U.S. Patent Office by Optical Polymer (BJB) (Entered: 12/14/1998) |
| 12/16/1998 | 85 | MOTION by GT Estate Inc. for James R. Vogler and Gregory H. Gardella to Appear Pro Hac Vice Court to set return date (BJB) (Entered: 12/16/1998) |
| 12/16/1998 | 86 | ORDER granting [85-1] motion for James R. Vogler and Gregory H. Gardella to Appear Pro Hac Vice ( signed by Chief USDJ David G. Larimer ) Notice and copy of order sent to James Metzler, John P. Sutton, Mario F. Greco, Edward W. Remus, |

|  |  | Priscilla F. Gallagher, Michael Wolford, Harry C. Post, Brian B. Shaw, H. William Larson, Herbert W. Larson, Virginia Hulvey Meyer, Andrew Peter Rausch Jr., Robert Michael West, Henry D. Coleman, Douglas Jones, Koorosh Afshari (BJB) (Entered: 12/17/1998) |
|---|---|---|
| 12/16/1998 |  | PRO HAC VICE fee paid. (Vogler, Gardella) (BJB) (Entered: 12/17/1998) |
| 12/17/1998 |  | Minute entry: [53-1] motion to Stay pending the outcome of the reexamination by the U.S. Patent Office under advisement, [42-1] motion to Dismiss the action under advisement (DGL) (BJB) (Entered: 03/21/1999) |
| 01/29/1999 | 87 | STIPULATION and ORDER, of Confidentiallity signed by Chief USDJ David G. Larimer . Notice and copy of order sent to James Metzler, John P. Sutton, Mario F. Greco, Edward W. Remus, Priscilla F. Gallagher, Michael Wolford, Harry C. Post, Brian B. Shaw, H. William Larson, Herbert W. Larson, Virginia Hulvey Meyer, Henry D. Coleman, Douglas Jones, Koorosh Afshari . (BJB) (Entered: 01/29/1999) |
| 02/12/1999 | 88 | TRANSCRIPT of proceeding before USDJ Larimer on 12/17/98 (37 pages) (BJB) (Entered: 02/18/1999) |
| 07/02/1999 | 89 | ATTORNEY AFFIDAVIT by Optical Polymer Re: Notice of filing decision on petition from the US Patent and Trademark Office (BJB) (Entered: 07/06/1999) |
| 07/09/1999 | 90 | RESPONSE by Polymer Technology to the Notice of filing Decision on Petition from the US Patent and Trademark Office (not found) (BJB) (Entered: 07/09/1999) |
| 07/14/1999 | 91 | Request by Optical Polymer to Continue Stay (BJB) (Entered: 07/21/1999) |
| 07/27/1999 | 92 | RESPONSE by Dome Patent L.P. to [91-1] motion to Continue Stay by Optical Polymer (BJB) (Entered: 07/27/1999) |
| 07/29/1999 | 93 | ORDER, Motion Hearing set for 9:30 9/22/99 for [91-1] motion to Continue Stay , and Response to Motion reset to 8/23/99 for [91-1] motion to Continue Stay (and for motions for a more definite statement *not found) ( signed by Chief USDJ David G. Larimer ) Notice and copy of order sent to Gregory H. Gardella, James R. Vogler, James Metzler, John P. Sutton, Mario F. Greco, Edward W. Remus, Priscilla F. Gallagher, Michael Wolford, Harry C. Post, Brian B. Shaw, H. William Larson, Herbert W. Larson, Virginia Hulvey Meyer, James T. FitzGibbon, Henry D. Coleman, Douglas Jones, Koorosh Afshari (BJB) (Entered: 07/29/1999) |
| 07/30/1999 | 94 | RESPONSE by Polymer Technology to [92-1] motion response by Dome Patent L.P. (BJB) (Entered: 07/30/1999) |
| 08/02/1999 | 95 | REPLY by Optical Polymer to response to [91-1] motion to Continue Stay by Optical Polymer (BJB) (Entered: 08/03/1999) |
| 08/23/1999 | 96 | RESPONSE by Dome Patent L.P. to [91-1] motion to Continue Stay by Optical Polymer (BJB) (Entered: 08/24/1999) |
| 08/23/1999 | 97 | ATTORNEY DECLARATION by Dome Patent L.P. Re: Exhibits (BJB) (Entered: 08/24/1999) |
| 08/30/1999 | 98 | MEMORANDUM by GT Laboratories, in support of [91-1] motion to Continue Stay by Optical Polymer (BJB) (Entered: 08/30/1999) |

| 09/13/1999 | 99 | RESPONSE by Polymer Technology to Case Law submitted by plaintiff relating to Polymer's pending rule 11 motion against Dome (BJB) (Entered: 09/13/1999) |
| 09/21/1999 | | Settlement conference held (MAT) (BJB) (Entered: 09/22/1999) |
| 09/22/1999 | 100 | BRIEF by Dome Patent L.P. . [91-1] motion to Continue Stay by Optical Polymer (BJB) (Entered: 09/22/1999) |
| 09/23/1999 | | Minute entry: granting [91-1] motion to Continue Stay, and set Status Report deadline to 12/20/99 on the PTO The stay is indefinite and can be modified without prejudice. The Court directs the defendant to submit a proposed order reflecting the Courts decision on this motion, with plaintiff's approval as to form. (DGL) (BJB) (Entered: 10/18/1999) |
| 09/27/1999 | 101 | ORDER granting [80-1] motion for Leave to File Reply papers re: Polymer's motion to dismiss, granting [71-1] motion for Virginia H. Meyer to Withdraw as Attorney (Terminated attorney Virginia Hulvey Meyer for Optical Polymer, granting [59-1] motion for Mr. Parrinello, Mr. Wolfe, and Nielsen, Merksamer, Parrinello, Mueller & Naylor to Withdraw as Associate Counsel (Terminated ( signed by Chief USDJ David G. Larimer ) Notice and copy of order sent to Gregory H. Gardella, James R. Vogler, James Metzler, John P. Sutton, Mario F. Greco, Edward W. Remus, Priscilla F. Gallagher, Michael Wolford, Harry C. Post, Brian B. Shaw, H. William Larson, Herbert W. Larson, Virginia Hulvey Meyer, Andrew Peter Rausch Jr., James T. FitzGibbon, Robert Michael West, Henry D. Coleman, Douglas Jones, Koorosh Afshari (BJB) (Entered: 09/28/1999) |
| 09/27/1999 | 102 | ORDER denying [42-1] motion to Dismiss the action ( signed by Chief USDJ David G. Larimer ) Notice and copy of order sent to Gregory H. Gardella, James R. Vogler, James Metzler, John P. Sutton, Mario F. Greco, Edward W. Remus, Priscilla F. Gallagher, Michael Wolford, Harry C. Post, Brian B. Shaw, H. William Larson, Herbert W. Larson, James T. FitzGibbon, Henry D. Coleman, Douglas Jones, Koorosh Afshari (BJB) (Entered: 09/29/1999) |
| 10/01/1999 | 103 | ORDER, defendant Con-Cise Contact Lens Co.'s motion for a more definite statement (docket #6), defendant Polymer Technology's motion for a more definite statement (Docket Item 8), defendant Permeable Technology, Inc.'s motion for a more definite statement (docket #18), and defendant Stellar Contact Lens, Inc.'s motion for a more definite statement (docket #31), are denied* (*all the above-referenced docket numbers were entered on the docket in the Eastern District of California, where action 99-cv-6377 was originally filed -the issues presented by these motions are virtually identical and for the purposes of these motions only case #'s 99-cv-6377 and 98-cv-6247 are being consolidated) and copy of order sent to Gregory H. Gardella, Herbert W. Larson, James T. FitzGibbon, Henry D. Coleman, Douglas Jones, Koorosh Afshari (BJB) (Entered: 10/01/1999) |
| 10/05/1999 | 104 | ORDER granting [91-1] motion to Continue Stay, and to Stay, indefinitely, all proceedings in this action , and set Status Report deadline to 12/20/99 ( signed by Chief USDJ David G. Larimer ) Notice and copy of order sent to Gregory H. Gardella, James R. Vogler, James Metzler, John P. Sutton, Mario F. Greco, Edward W. Remus, Priscilla F. Gallagher, Michael Wolford, Harry C. Post, Brian B. Shaw, H. William Larson, Herbert W. Larson, James T. FitzGibbon, Henry D. Coleman, Douglas Jones, Koorosh Afshari (BJB) (Entered: 10/05/1999) |

| 12/20/1999 | 105 | STATUS REPORT by Permeable, GT Laboratories, Optical Polymer, Stellar Contact Lens, Polymer Technology (BJB) (Entered: 12/20/1999) |
| 02/25/2000 | 106 | NOTICE of Change of Attorney Address by Dome Patent L.P. (BJB) Modified on 02/29/2000 (Entered: 02/28/2000) |
| 11/29/2001 | 107 | MOTION by Dome Patent L.P. for Jerry A. Riedinger, Victor Cerda and Manuella Hancock to Appear Pro Hac Vice Court to set return date (BJB) Modified on 11/29/2001 (Entered: 11/29/2001) |
| 12/06/2001 | 108 | ORDER granting [107-1] motion for Jerry A. Riedinger, Victor Cerda and Manuella Hancock to Appear Pro Hac Vice ( signed by Chief USDJ David G. Larimer ) Notice and copy of order sent to Gregory H. Gardella, James R. Vogler, James Metzler, John P. Sutton, Mario F. Greco, Edward W. Remus, Priscilla F. Gallagher, Michael Wolford, Harry C. Post, Brian B. Shaw, H. William Larson, Herbert W. Larson, James T. FitzGibbon, Henry D. Coleman, Manuella W. Hancock, Victor Cerda, Jerry A. Riedinger, Douglas Jones, Koorosh Afshari (BJB) (Entered: 12/06/2001) |
| 12/06/2001 | | PRO HAC VICE fee paid as to Jerry A. Riedinger, Victor Cerda and Manuella W. Hancock. (BJB) (Entered: 12/10/2001) |
| 01/02/2002 | 109 | STIPULATION and ORDER, to Substitute Attorney terminated attorney John P. Sutton for Dome Patent LP, attorney John P. Sutton for Dome Patent L.P. Added Jerry A. Riedinger, Victor Cerda, Manuella W. Hancock signed by Chief USDJ David G. Larimer . Notice and copy of order sent to Gregory H. Gardella, James R. Vogler, James Metzler, Manuella W. Hancock, Victor Cerda, Jerry A. Riedinger, John P. Sutton, Mario F. Greco, Edward W. Remus, Priscilla F. Gallagher, Michael Wolford, Harry C. Post, Brian B. Shaw, H. William Larson, Herbert W. Larson, James T. FitzGibbon, Henry D. Coleman, K. Wade Eaton . (BJB) (Entered: 01/02/2002) |
| 03/28/2005 | 110 | ORDER TO SHOW CAUSE. Show Cause Response in writing by letter, fax or e-mail due by 4/11/2005. Signed by Hon. David G. Larimer on 3/28/05. (PR, ) (Entered: 03/28/2005) |
| 04/11/2005 | 111 | JOINT RESPONSE to re 110 Order to Show Cause filed by GT Estate Inc., Dome Patent L.P., Permeable Technologies, Inc., GT Laboratories, Inc., Optical Polymer Research, Inc., Stellar Contact Lens, Inc., Polymer Technology, GT Laboratories, Inc. requesting continuation of stay. (PR, ) (Entered: 04/22/2005) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 01/24/2008 13:47:02 | | |
| **PACER Login:** | ff0658 | **Client Code:** | 31128-2 |
| **Description:** | Docket Report | **Search Criteria:** | 6:98-cv-06247-DGL |
| **Billable Pages:** | 7 | **Cost:** | 0.56 |

EXHIBIT 2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FILED

09 SEP 05  PM 3:30

U.S. DISTRICT COURT
W.D.N.Y. - ROCHESTER

DOME PATENT L.P., a California limited
partnership,

                                    Plaintiff,

                                                        DECISION AND ORDER

                                                        98-CV-6247L

              v.

PERMEABLE TECHNOLOGIES, INC.,
a New Jersey Corporation, et al.,

                                    Defendants.

## INTRODUCTION

Plaintiff, Dome Patent L.P. ("Dome"), commenced this patent infringement action in the

United States District Court for the Eastern District of California on December 30, 1997.  On May

18, 1998, District Judge Garland E. Burrell, Jr. of the Eastern District of California signed an Order

transferring the case to this district pursuant to 28 U.S.C. § 1404(a).

Defendant Polymer Technology ("Polymer") has moved to dismiss the complaint under Rule

11 of the Federal Rules of Civil Procedure.  In addition, prior to the transfer of this action, Polymer

and three other defendants had filed motions for a more definite statement pursuant to Fed. R. Civ.

P. 12(e).  These motions had not been decided when the case was transferred to this district.

w.162

## BACKGROUND

Dome is the holder of United States Patent No. 4,306,042 ("the '042 patent"), entitled "Method of Making a Contact Lens Material with Increased Oxygen Permeability." This patent describes a method of making an oxygen-permeable material for the manufacture of contact lenses. This process involves the synthesization of a monomer known as "TRIS" by following certain specific steps. The claim limitations in the patent require that certain reactants be mixed together, and the mixture added to water whose volume is from three to ten times that of the mixture. This new mixture is then agitated from thirty minutes to forty-eight hours, after which it is allowed to separate into layers, filtered, and distilled to remove unwanted byproducts. The resulting TRIS is then combined with two other components, one of which is an oxygen-permeable "crosslinking" agent. The crosslinking agent joins polymer chains together to permit the manufacture of a three-dimensional product.

One significant aspect of the '042 patent is that is calls for an oxygen-permeable crosslinking agent. This allows more oxygen to reach the wearer's cornea, which allows the lenses to be worn comfortably for longer periods of time. The complaint alleges that all the defendants have infringed, induced others to infringe, and contributed to infringement of the '042 patent through the use, sale and manufacture of silicone-acrylate contact lenses embodying oxygen-permeable crosslinkers covered by the claims of the '042 patent.

The basis for Polymer's motion to dismiss is its contention that Dome has not established a good-faith basis for the allegations of the complaint only with respect to the last claim limitation,

*i.e.* the presence of an oxygen-permeable crosslinking agent. According to Polymer, the '042 patent does not merely claim a combination of TRIS with other components, but rather TRIS made by a very specific process. Unless Polymer employs that exact process in preparing its TRIS, then, Polymer contends that it would not and could not be violating the patent. Polymer states that Dome has admitted that it has no knowledge of how Polymer prepares its TRIS, and therefore Dome cannot have alleged in good faith that Polymer has violated the '042 patent. Dome responds that it has alleged enough to set forth a viable claim for patent infringement, that it has a good-faith belief that Polymer has infringed, and that many of the relevant facts are within Polymer's sole knowledge and may be obtained only through discovery.

## DISCUSSION

### I. Polymer's Motion to Dismiss Under Rule 11

Rule 11(b) of the Federal Rules of Civil Procedure provides, *inter alia*, that

[b]y presenting to the court ... a pleading, written motion, or other paper, an attorney ... is certifying that to the best of the person's knowledge, information, and belief, formed under an inquiry reasonable under the circumstances, ... the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery ....

If, after notice and a reasonable opportunity to respond, the court finds that this section has been violated, it may impose a sanction upon the violator. Such sanctions may be nonmonetary as well as monetary, and can include dismissal. *See Carman v. Treat*, 7 F.3d 1379, 1382 (8th Cir. 1993) (district court did not abuse discretion in dismissing inmate's civil rights action as sanction

for filing motion containing allegations that had no basis in fact). Here, Polymer seeks only

dismissal; it does not request any monetary sanctions. In considering Polymer's motion, however,

I am mindful that the Second Circuit "ha[s] long recognized that dismissal is a harsh remedy, not

to be utilized without a careful weighing of its appropriateness." *Dodson v. Runyon*, 86 F.3d 37, 39

(2d Cir. 1996) (footnote omitted).[1]

In addition, "Rule 11 should not be used to raise issues of legal sufficiency that more

properly can be disposed of by a motion to dismiss or a motion for a more definite statement or a

motion for summary judgment." 5A Charles A. Wright & Arthur R. Miller, Federal Practice and

Procedure § 1336 at 97 (2d ed. 1990). It is not clear whether Polymer concedes that the complaint

here is facially sufficient to state a claim for patent infringement, but the thrust of its motion is not

directed at the complaint itself, but at the basis upon which Dome–or its attorney–made the

allegations contained in the complaint.

On its face, the complaint does appear adequate. Form 16 of the Appendix of Forms to the

Federal Rules of Civil Procedure sets forth a form complaint for infringement of a patent. The form

consists of only four paragraphs alleging jurisdiction and the underlying facts, plus a demand for

relief. The paragraph alleging infringement states simply that "[d]efendant has for a long time past

---

[1]Although since this is a patent case any appeal from this Decision and Order would be taken to the Court of Appeals for the Federal Circuit, that court, in reviewing a district court's exercise of its discretion in determining an issue not unique to patent law, such as the application of Rule 11, looks to the law of the circuit in which the district court sits. *Vardon Golf Co. v. Allied Golf Corp.*, No. 94 C 1332, 1996 WL 451305 *1 (N.D.Ill. Aug. 7, 1996) (citing *Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1183 (Fed.Cir.1996)). With respect to the general standards for applying Rule 11, therefore, I am guided primarily by the law of this circuit.

been and still is infringing [plaintiff's] Letters Patent by making, selling, and using electric motors embodying the patented invention, and will continue to do so unless enjoined by this court." The form complaint does not set forth in detail precisely which claim limitations of the patent are embodied in the defendant's product, or precisely how the defendant's product infringes on the plaintiff's patent.

Rule 84 states that "[t]he forms contained in the Appendix of Forms are sufficient under the rules and are intended to indicate the simplicity and brevity of statement which the rules contemplate." Courts have held that a complaint that sets forth at least as much information as the complaint in Form 16 is therefore sufficient to withstand a motion to dismiss under Rule 12(b)(6) or a motion for a more definite statement under Rule 12(e). *See, e.g., OKI Elec. Indus. Co. v. LG Semicon Co.*, Civ. 97-20310, 1998 WL 101737 *3-4 (N.D.Cal. Feb. 25, 1998); *Soli-Tech, Inc. v. Halliburton Co.*, 97-CV-10232, 1993 WL 315358 *3 (E.D.Mich. Jan. 26, 1993).

The complaint here alleges, *inter alia*, that "Polymer has infringed, and induced others to infringe, and contributed to infringement under 35 U.S.C. 271 and continues to infringe, claims of the '042 patent by use, sale and manufacture in the United States, of silicone-acrylate contact lenses embodying oxygen-permeable cross-linkers covered by the claims of the '042 patent." Complaint ¶ 18. Clearly, then, the complaint on its face adequately sets forth a claim for patent infringement.

The focus, therefore, is not on the facial sufficiency of the complaint, but on the factual basis upon which Dome's counsel relied in signing and filing the complaint. In considering this issue, the court must first determine whether an objectively reasonable evidentiary basis for the claim existed at the time counsel signed the complaint. If such a basis existed, "no inquiry into the adequacy of

the attorney's pre-filing investigation is necessary." *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1329 (2d Cir. 1995). If there was no objectively reasonable foundation, however, the court must then scrutinize the attorney's pre-signing inquiry. *American Nat'l Can Co. v. Continental Pet Technologies, Inc.*, No. B:90-CV-558, 1995 WL 839229 *3 (D.Conn. Aug. 21, 1995) (citing *Calloway v. Marvel Entertainment Group*, 854 F.2d 1452, 1470 (2d Cir. 1988), *rev'd in part on other grounds sub nom. Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120 (1989)).

A factual claim lacks an objectively reasonable basis when, "after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the ... modification ... of existing law." *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2nd Cir. 1985), *cert. denied*, 484 U.S. 918 (1987). Sanctions are therefore appropriate when it is "patently clear that a claim has absolutely no chance of success." *Id.* In deciding the motion in this case, the focus must be not on whether Polymer is in fact infringing, but "on the information available to [Dome's attorney] at the relevant times." *Oliveri v. Thompson*, 803 F.2d 1265, 1279 (2d Cir. 1986), *cert. denied*, 480 U.S. 918 (1987).

After reviewing the record, I find that there is a sufficient objective evidentiary basis for Dome's claim against Polymer, and that Polymer's Rule 11 motion must be dismissed. Although Dome concedes that it does not know precisely how Polymer prepares its contact lens material, it has presented enough of a basis for its claim of infringement to pursue its claim and to amplify it through discovery.

Dome states that prior to commencing this action, it had testing performed on three different Polymer contact lens materials to determine whether the contents of those materials indicated that Polymer was following the Dome's patented process. According to one of Dome's attorneys, John P. Sutton, Esq., who holds a degree in chemistry and has been involved in prior litigation involving the same patent, the results of these tests showed that the same oxygen-permeable crosslinker used in Dome's products is present in the Polymer products.

In addition, Dome states that Polymer has admitted that it uses an oxygen-permeable crosslinker. In a letter dated March 16, 1998, counsel for Polymer stated that Polymer produced a number of "oxygen permeable contact lens materials, each of which is a silicone acrylate utilizing silicone cross linking agents ... ." Polymer's Motion to Dismiss Ex. C.

Dome also contends that it has a good-faith basis to believe that Polymer's contact lens materials contain methyl methacrylate and a siloxanyl component, as called for in the '042 patent. Dome states that *every* manufacturer of rigid gas-permeable contact lens material uses these components to provide rigidity, machinability and oxygen permeability. Dome has also submitted copies of documents from the American Chemical Society's Chemical Abstract Service, which is available to the public over the Internet. Dome states that these documents show the presence of methyl methacrylate and other substances covered by the '042 patent.

I believe that Dome has shown a sufficient basis for the allegations of the complaint to satisfy Rule 11. Although Dome may not know precisely how Polymer produces its contact lens materials at each stage of the process, such information is obviously within the exclusive knowledge and control of Polymer at this stage. This is not like cases involving mechanical or electrical objects that

can be taken apart and "reverse engineered" to deduce the method of their manufacture. *See, e.g.,*

*Judin v. United States*, 110 F.3d 780, 784 (Fed. Cir. 1997) (neither plaintiff nor his attorney

attempted to obtain bar code scanner from Postal Service so that they could dissect or reverse

engineer the device); *Refac Int'l, Ltd. v. Hitachi Ltd.*, 141 F.R.D. 281, 286 (C.D.Cal. 1991) (plaintiff

did not make reasonable inquiry to determine that its complaint was well grounded in fact where

plaintiff made no attempt to reverse engineer defendant's liquid crystal display components). Dome

contends that because this case involves chemical processes in which the substances used react with

one another to produce new substances, Dome cannot take a sample of Polymer's finished product

and "unscramble the egg" until the product is broken down into its original components. Even if it

could do so, that would not necessarily establish exactly what substances Polymer started with, the

quantities used, or the exact sequence and duration of the stages of the process. Since Dome has not

been able to observe how Polymer produces its materials, I believe that Dome was justified in

relying the results of the chemical analyses of those materials in alleging infringement. Discovery

may ultimately prove those allegations to be false, but at this stage the requirements of Rule 11 have

been met.

This result finds support in *Cambridge Products, Ltd. v. Penn Nutrients, Inc.*, 962 F.2d 1048

(Fed. Cir. 1992). There, the plaintiff accused the defendant of infringing the plaintiff's patent

claiming a method of preparing chloride-based mold inhibitors. The plaintiff subsequently moved

to voluntarily dismiss the action for reasons unrelated to the merits of its claim, and the district court

granted the motion. Defendant then moved for attorney's fees under Rule 11, but the court denied

the motion.

On appeal, the defendant "argue[d] that although Cambridge performed an independent chemical analysis of its allegedly infringing product, Cambridge did not make any attempt to determine the method by which the 6BA liquid was made before the complaint was filed and that a simple phone call to Penn would have revealed that the method was not the same." *Id.* at 1050. The defendant argued that the plaintiff's attorney, in signing the complaint and other papers, therefore could not reasonably have believed the infringement allegations to be true. The Court of Appeals for the Federal Circuit rejected this argument, stating that

> Cambridge appears to have undertaken a reasonable pre-filing inquiry in preparing for and commencing this litigation. Cambridge had tested a sample of the allegedly infringing product and had commissioned further chemical analyses and acquired documentary evidence that appeared to confirm that the product alleged to infringe fell within the chemical specifications of the patented method. Without the aid of discovery, any further information was not practicably obtainable. Thus, Cambridge met the Rule 11 standard for filing and maintaining its case.

*Id.*

The same is true here. If, as Polymer contends, Dome has no precise knowledge of a number of facts relevant to the method by which Polymer produces its contact lens materials, that is attributable to the difficulty, if not impossibility, of Dome obtaining that information without discovery. Polymer's motion to dismiss based on a violation of Rule 11 is therefore denied. *See also Marley Co. v. FE Petro, Inc.*, 38 F.Supp. 1070, 1082 (S.D.Iowa 1998) (whether plaintiff's observations of defendant's product were sufficient to establish good-faith belief of infringement is for jury to decide, especially where product has complicated internal structure that is not readily observable).

**CONCLUSION**

Defendant Polymer Technology Incorporated's motion to dismiss the complaint pursuant to Fed. R. Civ. P. 11 (Docket Item 42) is denied.

IT IS SO ORDERED.

_David G. Larimer_
DAVID G. LARIMER
CHIEF JUDGE
UNITED STATES DISTRICT COURT

Dated: Rochester, New York
    September 27 1999.

- 10 -

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Dome Patent L.P.

                       Plaintiff(s)

      v.                              6:98-cv-06247

Permeable

                       Defendant(s)

---

PLEASE take notice of the entry of an ORDER filed on

9/27/99, of which the within is a copy, and entered 9/29/99

upon the official docket in this case.   (Document No. 102 .)


Dated:  Rochester, New York
        September 29, 1999


                                RODNEY C. EARLY, Clerk
                                U.S. District Court
                                Western District of New York
                                2120 U.S. Courthouse
                                100 State Street
                                Rochester, New York 14614

Enclosure
TO:
        Koorosh Afshari, Esq.
        Douglas Jones, Esq.
        James T. FitzGibbon, Esq.
        Brian B. Shaw, Esq.
        Harry C. Post, Esq.
        Michael Wolford, Esq.
        Priscilla F. Gallagher, Esq.
        James R. Vogler, Esq.
        John P. Sutton, Esq.
        Henry D. Coleman, Esq.
        Herbert W. Larson, Esq.
        H. William Larson, Esq.
        James Metzler, Esq.

EXHIBIT 3

COPIES SENT TO CLIENT

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FILED

_____

U.S. DISTRICT
W.D.N.Y.

_____

DOME PATENT L.P., a California limited
partnership,

                                    Plaintiff,

                                                        DECISION AND ORDER

                                                        98-CV-6247L

            v.

PERMEABLE TECHNOLOGIES, INC.,
a New Jersey Corporation, et al.,

                                    Defendants.

_____

DOME PATENT L.P., a California
partnership,

                                    Plaintiff,

            v.                                          99-CV-6377L

CON-CISE CONTACT LENS, INC., a
California Corporation,

                                    Defendant.

_____

#103

## INTRODUCTION

Plaintiff, Dome Patent L.P. ("Dome"), commenced these two patent infringement actions against several defendants, alleging that all the defendants have infringed and continue to infringe a patent owned by plaintiff. The first of these actions, *Dome Patent L.P. v. Permeable Technologies, Inc. et al.*, 98-CV-6247L, was originally commenced in the United States District Court for the Eastern District of California on December 30, 1997. On May 18, 1998, District Judge Garland E. Burrell, Jr. of the Eastern District of California signed an Order transferring the case to this district pursuant to 28 U.S.C. § 1404(a). At the time the case was transferred, four defendants–Polymer Technology ("Polymer"), Permeable Technology, Inc., Stellar Contact Lens, Inc., and Con-Cise Contact Lens Co. ("Con-Cise")–had filed motions for a more definite statement pursuant to Fed. R. Civ. P. 12(e). Subsequent to the transfer of the case, Dome voluntarily withdrew its claims against Con-Cise. Dome later filed a new action against Con-Cise in this court, *Dome Patent v. Con-Cise Contact Lens Co.*, 99-CV-6377L. Counsel for Con-Cise has requested that its previously filed Rule 12(e) motion be deemed as having been reinstated in this new action.

Since the factual and legal issues presented by all four motions are virtually identical, for purposes of these motions only I am consolidating these cases pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, which permits consolidation "of any or all the matters in issue" in "actions involving a common question of law or fact ... ." This Decision and Order, then, constitutes my ruling on these motions.

**DISCUSSION**

On September 27, 1999, the court issued a Decision and Order denying defendant Polymer Technology's motion to dismiss the complaint under Rule 11. The underlying facts of the case are set forth in that decision, familiarity with which is assumed.

Dome is the holder of United States Patent No. 4,306,042 ("the '042 patent"), entitled "Method of Making a Contact Lens Material with Increased Oxygen Permeability." This patent describes a method of making an oxygen-permeable material for the manufacture of contact lenses. One significant aspect of the claimed process is the use of an oxygen-permeable "crosslinking" agent to join polymer chains together, which permits the manufacture of a three-dimensional product. The fact that the crosslinking agent is oxygen-permeable means that more oxygen can reach the wearer's cornea, which in turn allows the lenses to be worn comfortably for longer periods of time.

The complaint asserts the same allegation against each of the defendants, all of which are corporations involved in the manufacture and sale of contact lenses. The complaint alleges that each defendant "has infringed, and induced others to infringe, and contributed to infringement under 35 U.S.C. 271 and continues to infringe, claims of the '042 patent by use, sale and manufacture of silicone-acrylate contact lenses embodying oxygen-permeable cross-linkers covered by the claims of the '042 patent." Complaint ¶¶ 13-18. The complaint does not go into any greater detail than that with respect to how, when or where the defendants have infringed the patent.

- 3 -

Defendants contend that the complaint is vague in that it does not identify which of defendants' products infringe the '042 patent. Absent such allegations stating exactly which of their products infringe, defendants argue, they cannot frame a responsive pleading.

I do not agree. As the Supreme Court has explained,

> [t]The federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain statement of the claims" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.

*Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)). Due to this liberal notice pleading standard and the availability of extensive discovery, Rule 12(e) motions are generally looked upon with disfavor. *See, e.g., John J. Kirlin, Inc. v. Conopco, Inc.*, No. 94 CIV 2675, 1995 WL 15468 *3 (S.D.N.Y. Jan. 17, 1995); *Resolution Trust Corp. v. Gershman*, 829 F.Supp. 1095, 1103 (E.D.Mo.1993) (citing cases); *Sagan v. Apple Computer, Inc.*, 874 F.Supp. 1072, 1077 (C.D.Cal.1994); *Frederick v. Koziol*, 727 F.Supp. 1019, 1020 (E.D.Va.1990).

Since the purpose of Rule 12(e) is "to remedy unintelligible pleadings, not to correct for lack of detail," *John J. Kirlin*, 1995 WL 15468 *3 (quoting *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 35 (S.D.N.Y. 1992), *aff'd*, 23 F.3d 398 (2d Cir.), *cert. denied*, 513 U.S. 950 (1994)), a motion for a more definite statement "should not be granted 'unless the complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it.'" *John J. Kirlin*, 1995 WL 15468 *3 (quoting *Bower v. Weisman*, 639 F.Supp. 532, 538 (S.D.N.Y.1986) (citations and internal quotations omitted)).

Also noteworthy is Form 16 of the Appendix of Forms to the Federal Rules of Civil Procedure, entitled "Complaint for Infringement of Patent." That form sets forth a complaint in a hypothetical patent case. The form includes:

1. Allegation of jurisdiction.

2. On May 16, 1934, United States Letters Patent No. ___ were duly and legally issued to plaintiff for an invention in an electric motor; and since that date plaintiff has been and still is the owner of those Letters Patent.

3. Defendant has for a long time past been and still is infringing those Letters Patent by making, selling, and using electric motors embodying the patented invention, and will continue to do so unless enjoined by this court.

4. Plaintiff has placed the required statutory notice on all electric motors manufactured and sold by him under said Letters Patent, and has given written notice to defendant of his said infringement.

Wherefore plaintiff demands a preliminary and final injunction against continued infringement, an accounting for damages, and an assessment of interest and costs against defendant.

Rule 84 states that these brief allegations "are sufficient under the [Federal] rules and are intended to indicate the simplicity and brevity of statement which the rules contemplate." Notably, the form complaint (Form 16) does not specify which of the defendant's motors are alleged to infringe the plaintiff's patent.

Polymer states in its reply brief that "[i]f Form 16 were a sufficient complaint for all patent infringement suits, prior courts would never have granted a Rule 12(e) motion." Not a single one of the four cases cited by Polymer in support of that proposition involved a Rule 12(e) motion in a patent infringement case, however. *See DeKalb Genetics Corp. v. Northrup King Co.*, No. 96 C 50169, 1997 WL 587492 (N.D.Ill. Aug. 14, 1997) (summary judgment motion); *Gen-Probe, Inc. v.*

- 5 -

*Amoco Corp.*, 926 F.Supp. 948 (S.D.Cal. 1996) (Rule 12(b)(6) motion); *Sagan v. Apple Computer, Inc.*, 874 F.Supp. 1072 (C.D.Cal. 1994) (Lanham Act claim); *Van Dyke Ford, Inc. v. Ford*, 399 F.Supp. 277 (E.D.Wisc. 1975) (antitrust claim).

There are cases, however, in which courts have denied motions for a more definite statement where the complaint was similar to that set forth in Form 16. *See, e.g.*, *OKI Elec. Indus. Co. v. LG Semicon Co.*, No. CIV. 97-20310, 1998 WL 101737 *3-4 (N.D.Cal. Feb. 25, 1998); *Beery v. Hitachi Home Electronics (America), Inc.*, 157 F.R.D. 477, 480 (C.D.Ca. 1993).

Courts have also denied Rule 12(e) motions notwithstanding the complaint's failure to identify the allegedly infringing products. *See, e.g.*, *OKI Elec.*, 1998 WL 101737 *2 (rejecting defendants' argument that complaint was defective because it "fail[ed] to specify particular facts to support its infringement claims and instead refer[red] vaguely and generically to nearly all of Defendants' product line"); *Intel Corp. v. Hyundai Electronics America Inc.*, 5 U.S.P.Q.2d 1608 (N.D.Cal. 1987) (denying Rule 12(e) motion for order requiring plaintiff to identify which of defendant's products infringed plaintiff's patents, and which infringing products defendant had aided others in using or selling, stating that the "complaint is not so vague that ICT cannot respond," and that "[i]f ICT is not infringing the patents, it can simply deny the allegations").

Polymer's reliance on *Amsted Indus., Inc. v. Buckeye Steel Castings, Inc.*, 24 F.3d 178 (Fed. Cir. 1994) is misplaced. Polymer cites *Amsted* for the proposition that "in letters attempting to comply with the notice requirement of 35 U.S.C. §287(a)[1], the accused product must be identified

---

[1] § 287. Limitation on damages and other remedies; marking and notice

(continued...)

with specificity," Polymer's Memorandum of Law at 7, and that *a fortiori* the complaint must contain a "notice" at least as specific as that required by § 287(a). *Amsted* did not so hold, however. The court there simply held that a letter in which the plaintiff advised the defendant and several other companies that the plaintiff had acquired a certain patent and that the recipients should acquaint themselves with the patent and refrain from infringing it did not constitute sufficient notice under § 287(a).[2]

Because I believe that the complaint is sufficient under federal notice pleading standards, and since the "preferred course" under the federal rules "is to encourage the use of discovery procedures to apprise the parties of the factual basis of the claims made in the pleadings," *Boothe v. TRW Credit Data*, 523 F.Supp. 631, 635 (S.D.N.Y.1981) (citations omitted), I will therefore deny all the motions for a more definite statement. The specifics concerning which of defendants' products are alleged to infringe the '042 patent may be obtained through discovery. *See Stephens v. American Home*

---

[1](...continued)
(a) Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or when. from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

[2]To the extent that Polymer may be arguing that the '042 patent does not comply with the requirements of § 287(a), I reject that argument, since § 287(a) does not apply to method patents. *See Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1082-83 (Fed.Cir.1983).

- 7 -

*Assurance Co.*, 811 F.Supp. 937, 959 (S.D.N.Y.1993) ("[d]iscovery is not the purpose behind Rule 12(e)") (citations omitted); *Choat v. Rome Indus., Inc.*, 480 F.Supp. 387 (N.D.Ga. 1979) (refusing to require more definite statement in patent infringement action, and noting that any information defendant needed could be obtained in discovery).

### CONCLUSION

Defendant Con-Cise Contact Lens Co.'s motion for a more definite statement (Docket Item 6), defendant Polymer Technology's mortion for a more definite statement (Docket Item 8), defendant Permeable Technology, Inc.'s motion for a more definite statement (Docket Item 18), and defendant Stellar Contact Lens, Inc.'s motion for a more definite statement (Docket Item 31), are denied.[3]

IT IS SO ORDERED.

DAVID G. LARIMER
CHIEF JUDGE
UNITED STATES DISTRICT COURT

Dated: Rochester, New York
September 30, 1999.

_____

[3]All the above-referenced docket numbers were entered on the docket in the Eastern District of California, where the action was originally filed.

- 8 -

# EXHIBIT 4

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| DOME PATENT, L.P., | Case No. 98-CV-6247L |
| Plaintiff, | **BRIEF RE CONTINUED STAY** |
| v. | |
| PERMEABLE TECHNOLOGIES, INC., a New Jersey corporation, GT LABORATORIES, INC., a Corporation, OPTICAL POLYMER RESEARCH, INC., a Corporation, STELLAR CONTACT LENS, INC., a Corporation, and POLYMER TECHNOLOGY, a Corporation, | |
| Defendants. | |

On July 29, 1999, the Court permitted additional responsive papers limited to "the motion requesting the continuation of a stay." The next day, counsel for Polymer Technology filed a letter brief arguing for a stay. This memorandum is primarily directed to the July 30, 1999 letter to the court from Wolford & Leclair LLP.

**ARGUMENT**

## 1. TIME LINE

The patent in suit was granted December 15, 1981. It expires September 8, 2000. Defendants have known about this patent since 1989, when the previous

owner of the patent corresponded with them (Sutton Declaration, paragraphs 2-5).

In 1992, Dome sued the largest of the allegedly infringing companies of which it was aware, Pilkington Visioncare, successor to Syntex (U.S.A.) (Sutton Decl., paragraph 6).

Defendants seek an indefinite stay in order for the Patent and Trademark Office to consider a patent to Quaal that was the subject of several hearings before Judge Orrick of the Northern District of California on motions for summary judgment. The motions for summary judgment grounded on the Quaal patent were denied and the case was tried before a jury in the courtroom of Judge Robert P. Aguilar in 1995. Again, the Quaal patent was the centerpiece of the defense.

The jury held the patent was valid and willfully infringed, and awarded $4,250,000 in damages. The jury disregarded the Quaal patent because it related to a method of waterproofing fabric and masonry surfaces, not contact lens materials. Judge Aguilar denied a Rule 50 motion, finding that there was substantial evidence to support the jury finding that Quaal did not show contact lens materials. However, because he thought the amount of the award was too high, he ordered a new trial under Fed. R. Civ. P. 59.

Pilkington's predecessor Syntex had successfully proved in a trial in the District of Arizona that the Quaal patent did not relate to a method of making contact lens materials (Sutton declaration, paragraphs 7 and 8).

2.

Judge Aguilar resigned from the bench before the new trial was held, and the case was reassigned back to Judge Orrick, who had previously denied a motion for summary judgment based upon the Quaal patent. Before the retrial set for 1997, the case settled. This case was brought in late 1997 in Sacramento, California, Dome's residence.

After transfer to this Court, Optical Polymer, who had known about the patent in suit since at least 1990 (Sutton declaration, para. 5), asked the Patent and Trademark Office to Reexamine the patent seventeen years after it had been granted. The Patent and Trademark Office refused to reexamine, because there was no new issue of patentability raised by the Quaal patent.

There is no provision for an appeal from the denial of a Request to reexamine, so Optical Polymer petitioned to the Commissioner, an avenue where there is no right to appeal on the merits to the Board of Patent Appeals and Interferences. The Commissioner, who had no knowledge of the search done by the examiner who both granted the patent and denied the Reexamination Request, substituted his view of the facts for that of the more experienced examiner who searched the class where the Quaal patent was located before he issued the patent in suit.

Dome has now filed its own petition to the Commissioner pointing out that review of the final agency decision not to institute a reexamination proceeding must by in accordance with the Administrative Procedure Act. Such a review must give deference to the examiner, unless he acted arbitrarily or capriciously. Substituting the reviewer's understanding of the significance of the Quaal patent

3.

for that of the trier of fact in the first instance is a violation of the Administrative Procedure Act.

It was the substituting of the view of one examiner for that of another that led to the Motion for Continued Stay. That process took seven months, so it seems likely that it will take a similar period to decide the Dome petition to the Commissioner, taking us well into next year. The patent expires next year, so that if a further stay is granted, Dome will be denied its substantive right to relief by injunction under 35 U.S.C. § 283. Defendants will have succeeded in delaying the day of reckoning from 1989 until after the patent expires in 2000.

As Judge Telesca of this District said in *Xerox Corp. v. 3Com Corp* 50 U.S.P.Q.2d 1793 (W.D.N.Y 1999) *(Xerox I)* "the average time for reexamination , 19.2 months, [] does not take into account" time for appeals. There are two levels of appeal, administrative and judicial. The administrative appeal is to the Board of Patent Appeals and Interferences, and typically takes years to decision. After that, there is appeal to the United States Court of Appeals for the Federal Circuit, a further delay of at least a year.

Accordingly, the reexamination will not be finally determined at least until 2005 at the earliest, five years after the patent expired.

The Patent and Trademark Office cannot issue injunctions or money damages, nor can it award any expenses to any party for Rule 11 violation, dilatory tactics, or anything else (37 C.F.R. 2.120(g)(1)). If the usual spurs to efficient case management are to apply, they must apply in this Court.

**2.  THE JULY 30, 1999 LETTER.**

4.

In the July 30, 1999, Polymer argues that there is no stay on this case, but that there should be a stay because the reexamination will be conducted with "dispatch". It also harps on fact issues.

## A. THIS CASE HAS BEEN STAYED SINCE DECEMBER 17, 1998.

During the December 17, 1998 hearing of the motion to stay, the Court noted that Optical Polymer had requested the Court to "stay [my] hand until the issue is finally resolved." (Sutton Decl., Exhibit 5, page 32). Later in the proceeding, the Court asked the Dome's counsel "What's the harm in at least waiting three months" (Exhibit 5 at 34).

The Court did not deny the motion to stay. Nor did the Court order Polymer, Permeable, and Optical Polymer to file an answer. Nor has any of these three defendants filed an answer voluntarily. No Scheduling Conference has been set by the Court, and none of the parties have conducted any formal discovery. Finally, Optical Polymer believes that there is a stay because it has asked for a continuation of the stay. There can be no doubt that matters were put on hold, and rigorous discovery during that period was not encouraged.

## B. "SPECIAL DISPATCH" MEANS YEARS.

Optical claims that a "continued stay" will not be harmful to plaintiff because it will be conducted with "special dispatch." This is an illusion. In reality, it could easily be many years from now before the reexamination and the ensuing appeals to the Board of Patent Appeals and Interferences, and the Federal Circuit are concluded.

5.

This Court was concerned with that very issue at the December 17, hearing:

> THE COURT: Does it really take only three months? I have had a couple of these cases where it seems like it's been three times multiplies before I get answers.
>
> MR. SHAW: You're right. Once there's --there's two steps to provoke the reexamination, that is raise the substantial new question of patentability. Once that is met, then the case is laid open again on its merits, and then it can take a substantial period of time. (December 17, 1998 Hearing TR at 31)

Indeed, as stated, in *Xerox Corp., v. 3Com Corp* 50 U.S.P.Q.2d 1793 (W.D.N.Y 1999) *(Xerox I)* decided in this District, the Court stated "Thus, the delay involved would likely be at least one year and <u>could easily exceed two years</u> (emphasis added).

Add to this two-plus year period at least two to five more years for any appeals to the Board of Patent Appeals and Interferences and the Federal Circuit, and it becomes apparent that a final resolution to the reexamination will take until well into the next millenium.

Thus, such a stay would "unduly prejudice or present a clear tactical disadvantage to the nonmoving party," while it will not necessarily "simplify the issues and the trial of the case." *Xerox I*

Plaintiff respectfully submits that it would not be in the interest of justice to subject plaintiff to years of delay while the technology changes, evidence evaporates, and market forces take their unpredictable toll.

## C. XEROX II DOES NOT MILITATE IN FAVOR OF A STAY

6.

In the July 30 letter, Polymer relies on *Xerox Corp v. 3Com Corp.*, Lexis 9977 (W.D.N.Y. 1999) (*Xerox II*) to emphasize that the court eventually did grant the stay denied in *Xerox I*. Polymer's reliance is misplaced. In *Xerox II* the reexamination was already under way and the examiner had already issued an Office Action finding all of the claims of the patent invalid. Here, the reexamination has not even begun.

Thus, *Xerox II* is clearly distinguishable.

Instead, what is clearly applicable here is the language in *Xerox I* that states that a defendant's dilatory tactics militate against stay. The Court observed:

> ... there is evidence that the movant's request for a stay has at least some dilatory tactical motive behind it.

The circumstances of this case point to dilatory tactics. Three of the defendants who have known of the patent for nearly a decade have not even answered the complaint after this case has been pending for nearly two years. Furthermore, as evidenced during the December 17 hearing Optical will resist providing discovery on the ground that protective orders are not adequate to protect its trade secrets.

## D. NONE OF THE DEFENDANTS MANUFACTURE INFRINGING PRODUCTS IN THE WESTERN DISTRICT

The July 30 letter states that "plaintiff's claim that there is no connection between any of the parties and the Western District of New York is incomprehensible. Polymer Technology is a wholly-owned subsidiary of Bausch & Lomb Incorporated and is head quartered in Rochester New York." But that is

7.

not the point. The issue of venue in patent cases is determined by 28 USC Sect. 1400(b). That statute permits "where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business,". Polymer makes contact lens materials in Massachusetts.

## 3. SCHEDULING

If defendants believe that the Quaal patent is their best shot, the court should bifurcate that issue from the case and have an early trial on whether the patent in suit was obvious at the time it was made (before 1981) to a person of ordinary skill in the art having knowledge of the Quaal patent. Plaintiff has already tried this issue once, and could be prepared for trial in a matter of months (allowing discovery of expert's opinions).

There would be no need for a delay of more years only to have the issue raised again in this Court no matter how the Reexamination Proceeding ends. Even a decision of the Federal Circuit on reexamination does not preclude defendants from raising the Quaal patent at trial whenever it occurs in this Court.

If defendants do not collectively believe that the Quaal patent is their best shot, it will undermine the need for a stay to consider what really is a subsidiary issue in the case. Some other issue can be selected for bifurcation and separate trial in hopes of disposing of the case efficiently.

All of this raises the need for *Case Management* as provided in the Federal Rules of Civil Procedure. The dilatory tactics of the last two years portend more of the same. Only by aggressive management can the Court

"secure the just, speedy and inexpensive determination of [this] action" Fed. R. Civ. P. 1.

## 4. CONCLUSION

Justice will not be served by letting this case languish for five years in the PTO and appellate courts while most of the issues will remain to be tried anyway. Defendants have been aware of their day of reckoning since 1989. That day should not be delayed further to a date well into the first decade of the twenty-first century.

DATED:  September 22, 1999

Respectfully submitted,

CHAMBERLAIN D'AMANDA
OPPENHEIMER & GREENFIELD


By:  Louis D'Amanda, Esq., of counsel
1600 Crossroads Building
Two State Street
Rochester, NY  14614-1397
Telephone: (716) 232-3730
Facsimile:  (716) 232-3882
Attorneys for Plaintiff

OF COUNSEL

BRYAN, HINSHAW & BARNET
A Professional Corporation


By_____
John P. Sutton
425 California Street, Suite 900
San Francisco, CA 94104
Telephone: (415) 296-0800
Facsimile: (415) 296-0812
Attorneys for Plaintiff

9.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **DOME PATENT, L.P.,** | **CASE NO. 98-CV-6247L** |
| **Plaintiff,** | |
| **vs.** | **CERTIFICATE OF SERVICE** |
| **PERMEABLE TECHNOLOGIES, INC., a New Jersey Corporation, CONCISE CONTACT LENS, INC., GT, a California Corporation, GT LABORATORIES, INC., a Corporation, OPTICAL POLYMER RESEARCH, INC., a Corporation, STELLAR CONTACT LENS, INC., a Corporation, and POLYMER TECHNOLOGY, a Corporation,** | |
| **Defendant.** | |

I hereby certify that on the 22nd day of September 1999, I caused to be served a true and correct copy of the foregoing Brief re Continued Stay in the above-captioned action, by causing the same to be delivered by first class mail to:

Henry D. Coleman, Esq.
Coleman & Sudol, LLP
708 Third Avenue, 14th Floor
New York, NY 10017

H. William Larson, Esq.
Larson & Larson, P.A.
11199 69th Street N.
Largo, Florida 33773

Harry C. Post, III, Esq.
Griggs, Robinson, Post,
Henderson & Smith
North Dallas Bank Tower, Suite 1202
12900 Preston Road, LBJ Freeway
Dallas, TX 75230

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**DOME PATENT, L.P.,**

      **Plaintiff,**

**vs.**

**PERMEABLE TECHNOLOGIES, INC., a
New Jersey Corporation, CONCISE CONTACT
LENS, INC., GT, a California Corporation, GT
LABORATORIES, INC., a Corporation,
OPTICAL POLYMER RESEARCH, INC., a
Corporation, STELLAR CONTACT LENS, INC.,
a Corporation, and POLYMER TECHNOLOGY,
a Corporation,**

      **Defendant.**

**CASE NO. 98-CV-6247L**

**CERTIFICATE OF SERVICE**

---

      I hereby certify that on the 22nd day of September 1999, I caused to be served a true and
correct copy of the foregoing Brief re Continued Stay in the above-captioned action, by causing
the same to be delivered by first class mail to:

Henry D. Coleman, Esq.
Coleman & Sudol, LLP
708 Third Avenue, 14th Floor
New York, NY  10017

H. William Larson, Esq.
Larson & Larson, P.A.
11199 69th Street N.
Largo, Florida  33773

Harry C. Post, III, Esq.
Griggs, Robinson, Post,
Henderson & Smith
North Dallas Bank Tower, Suite 1202
12900 Preston Road, LBJ Freeway
Dallas, TX  75230

James FitzGibbon, Esq.
Vedder, Price, Kaufman & Kammholz
222 North LaSalle Street, 24th Floor
Chicago, IL 60601-1003

John P. Sutton, Esq.
Bryan, Hinshaw & Barnet
425 California Street, Suite 900
San Francisco, CA 94104

Michael R. Wolford, Esq.    (by hand delivery)
Wolford & Leclair, LLP
600 Reynolds Arcade Building
16 East Main Street
Rochester, NY 14614

Edward W. Remus, Esq.
Priscilla F. Gallagher, Esq.
McAndrews, Held & Malloy, Ltd.
500 West Madison Street, 34th Floor
Chicago, IL 60661

Brian B. Shaw, Esq.
Cumpston & Shaw
Two State Street, Suite 850
Rochester, NY 14614

James Metzler, Esq.
Boylan, Brown, Code, et al.,
2400 Chase Square
Rochester, NY 14604

James Vogler, Esq.
Foley & Lardner
330 North Wabash, Suite 3300
Chicago, IL 60611

Louis D'Amanda

# EXHIBIT 5

COPIES SENT TO CLIENT CALENDARED 12-20
Date _____
By _____

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DOME PATENT L.P.,

                        Plaintiff,                          **ORDER**

            -vs-                                    Case No. 98 CV-6247L

PERMEABLE TECHNOLOGIES, INC., a
New Jersey Corporation, G.T. LABORATORIES,
INC., a Corporation, OPTICAL POLYMER
RESEARCH, INC., a Corporation, STELLAR
CONTACT LENS, INC., a Corporation, and
POLYMER TECHNOLOGY, a Corporation,

                        Defendants.

_____

        Defendant Optical Polymer Research, Inc. (Optical) having moved to stay this action

pending the outcome of a reexamination proceeding initiated by Optical in the United

States Patent and Trademark Office, and defendants Polymer Technology, Permeable

Technologies, Inc., GT Laboratories and Stellar Contact Lens, Inc. having joined in the

motion to stay filed by Optical.  Plaintiff Dome Patent, L.P. (Dome) having opposed

Optical's motion;

        Upon consideration of the parties' written submissions and oral arguments heard

on December 17, 1998 and September 23, 1999, and in accordance with the factors

articulated in <u>Ethicon, Inc. v. Quigg</u>, 849 F.2d 1422 (Fed. Cir. 1988),

        IT IS HEREBY ORDERED that:

        1.      The defendant's motion to stay this action pending resolution of the

reexamination proceedings is GRANTED.

#104

-2-

IT IS FURTHER ORDERED that:

1.    Any further proceedings in the case, whether discovery or otherwise, are stayed pending further order of the Court.

2.    The stay is indefinite and any party may, without prejudice, seek to modify or vacate the stay in the event a material change in circumstances occurs.

3.    Status reports from the plaintiff and collectively, the defendants, advising the Court as to the status of the reexamination proceeding and the continued need for staying this action are due on December 20, 1999.


IT IS SO ORDERED.

DAVID G. LARIMER
CHIEF JUDGE
UNITED STATES DISTRICT COURT

Dated: October 5, 1999
    Rochester, New York

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Dome Patent L.P.

                              Plaintiff(s)

        v.                                    6:98-cv-06247

Permeable

                              Defendant(s)

---

PLEASE take notice of the entry of an ORDER filed on

10/5/99, of which the within is a copy, and entered 10/5/99

upon the official docket in this case.    (Document No. 104 .)


Dated:   Rochester, New York
         October 5, 1999




                         RODNEY C. EARLY, Clerk
                         U.S. District Court
                         Western District of New York
                         2120 U.S. Courthouse
                         100 State Street
                         Rochester, New York 14614

Enclosure
TO:
         Koorosh Afshari, Esq.
         Douglas Jones, Esq.
         James T. FitzGibbon, Esq.
         Brian B. Shaw, Esq.
         Harry C. Post, Esq.
         Michael Wolford, Esq.
         Priscilla F. Gallagher, Esq.
         James R. Vogler, Esq.
         John P. Sutton, Esq.
         Henry D. Coleman, Esq.
         Herbert W. Larson, Esq.
         H. William Larson, Esq.
         James Metzler, Esq.

EXHIBIT 6

CLOSED, ICMS, REFDIS

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:95-cv-03031-WHO

| | |
|---|---|
| Dome Patent L.P. v. Pilkington Visioncar | Date Filed: 12/08/1992 |
| Assigned to: Hon. William H. Orrick | Date Terminated: 01/27/1997 |
| Referred to: Judge Eugene F. Lynch | Jury Demand: Both |
| Demand: $0 | Nature of Suit: 830 Patent |
| Cause: 35:271 Patent Infringement | Jurisdiction: Federal Question |

**Plaintiff**

| | | |
|---|---|---|
| **Dome Patent L.P.**<br>*a California limited partnership* | represented by | **Jessica Susan Pers**<br>Heller Ehrman LLP<br>333 Bush Street<br>San Francisco, CA 94104-2878<br>415-772-6000<br>Fax: 415-772-6268<br>Email: jessica.pers@hellerehrman.com<br>*TERMINATED: 02/22/1995*<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**John P. Sutton**
Bryan Hinshaw Cohen & Barnet
425 California St Ste 900
San Francisco, CA 94104
(415) 296-0800
Email: johnpsutton@earthlink.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Virginia Shaw Medlen**
Medlen & Carroll LLP
101 Howard Street
Suite 350
Invalid email address as of 3/2/2004
San Francisco, CA 94105
415-904-6500
Email: invalidaddress@myrealbox.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Hunter L. Auyang**
Heller Ehrman White & McAuliffe LLP

333 Bush Street
San Francisco, CA 94104-2878
(415) 772-6000
*ATTORNEY TO BE NOTICED*

**Karen Yvette Spencer**
Heller Ehrman White & McAuliffe LLP
333 Bush Street
San Francisco, CA 94104-2878
(415) 772-6000
*TERMINATED: 02/22/1995*
*ATTORNEY TO BE NOTICED*

V.

**<u>Defendant</u>**

**Pilkington Visioncare Inc.**                     represented by     **David R. Foley**
*a Delaware corporation*                                            Wise & Shepard LLP
*doing business as*                                                 3030 Hansen Way Ste 100
Paragon Optical                                                     Palo Alto, CA 94304
*doing business as*                                                 (415) 856-1200
Sola Barnes Hind                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **M. Scott Donahey**
                                                                    Wise & Shepard LLP
                                                                    3030 Hansen Way Ste 100
                                                                    Palo Alto, CA 94304
                                                                    (415) 856-1200
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **James Mason Smith**
                                                                    Wise & Shepard LLP
                                                                    3030 Hansen Way Ste 100
                                                                    Palo Alto, CA 94304
                                                                    (415) 856-1200
                                                                    Email: jmsmith@ssd.com
                                                                    *ATTORNEY TO BE NOTICED*

**<u>Counter-claimant</u>**

**Pilkington Visioncare Inc.**                     represented by     **David R. Foley**
*doing business as*                                                 (See above for address)
Paragon Optical                                                     *LEAD ATTORNEY*
*doing business as*                                                 *ATTORNEY TO BE NOTICED*
Sola Barnes Hind

                                                                    **M. Scott Donahey**
                                                                    (See above for address)
                                                                    *LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**James Mason Smith**
(See above for address)
*ATTORNEY TO BE NOTICED*


V.

**Counter-defendant**

**Dome Patent L.P.**                          represented by   **John P. Sutton**
(See above for address)
*TERMINATED: 02/23/1995*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Hunter L. Auyang**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Karen Yvette Spencer**
(See above for address)
*TERMINATED: 02/22/1995*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/08/1992 | 1 | COMPLAINT (Summons(es) issued) Fee status pd entered on 12/8/92 in the amount of $ 120 ( Receipt No. 25688) (mcl, COURT STAFF) (Entered: 12/14/1992) |
| 12/08/1992 | 2 | CASE MANAGEMENT SCHEDULING ORDER by WHO : Proof of service to be filed by 1/22/93 ; counsels' case management statement to be filed by 3/29/93 ; initial case management conference will be held 2:00 4/8/93 . (cc: all counsel) (mcl, COURT STAFF) (Entered: 12/15/1992) |
| 01/21/1993 | 3 | RETURN OF SERVICE executed upon defendant Pilkington Visioncar on 1/8/93 (mcl, COURT STAFF) (Entered: 01/25/1993) |
| 01/27/1993 | 4 | COUNTERCLAIM; jury demand by defendant Pilkington Visioncar against plaintiff Dome Patent L.P. (mcl, COURT STAFF) (Entered: 01/29/1993) |
| 01/27/1993 | 4 | ANSWER by defendant Pilkington Visioncar to complaint [1-1]; jury demand (mcl, COURT STAFF) (Entered: 01/29/1993) |
| 03/01/1993 |  | RECEIVED Answer of counter-defendant Dome Patent L.P. to counterclaim submitted by plaintiff and counter-defendant Dome Patent L.P. (mcl, COURT STAFF) (Entered: 03/03/1993) |
| 03/01/1993 |  | RECEIVED Stipulation for extension of time to file answer to counterclaim ( plaintiff Dome Patent L.P. ) (mcl, COURT STAFF) (Entered: 03/03/1993) |
| 03/02/1993 | 13 | REPLY TO COUNTERCLAIM [4-1] by counter-defendant Dome Patent L.P. (mcl, COURT STAFF) (Entered: 04/14/1993) |

| 03/02/1993 | 5 | STIPULATION and ORDER by WHO : extending time until 3/2/93 to respond to counterclaim (cc: all counsel) (mcl, COURT STAFF) (Entered: 03/04/1993) |
|---|---|---|
| 03/09/1993 | 6 | PROOF OF SERVICE by plaintiff Dome Patent L.P. of Stipulation and Order extending time to respond to counterclaim and Answer to counterclaim (mcl, COURT STAFF) (Entered: 03/11/1993) |
| 03/29/1993 | | RECEIVED Stipulation and Protective Order ( plaintiff Dome Patent L.P. ) (mcl, COURT STAFF) (Entered: 04/01/1993) |
| 03/29/1993 | 7 | JOINT CASE MANAGEMENT STATEMENT filed. (mcl, COURT STAFF) (Entered: 04/01/1993) |
| 03/30/1993 | 8 | STIPULATION and ORDER by WHO : for protective order re confidential information (cc: all counsel) (mcl, COURT STAFF) (Entered: 04/02/1993) |
| 04/06/1993 | 9 | PROOF OF SERVICE by plaintiff Dome Patent L.P. of Stipulation and Protective Order re confidential information (mcl, COURT STAFF) (Entered: 04/09/1993) |
| 04/08/1993 | 11 | CASE MANAGEMENT ORDER by WHO Discovery cutoff 1/4/94 ; deadline for discovery from experts is 1/17/94 ; all motions to be heard 2:00 3/10/94 ; pretrial conference 2:00 4/21/94 ; Jury Trial set for 8:30 5/2/94 ADR process: none Est.trial days: 10 (see order) (cc: all counsel) (mcl, COURT STAFF) (Entered: 04/09/1993) |
| 04/08/1993 | 10 | MINUTES: ( C/R Carl Pline) INITIAL CASE MANAGEMENT CONFERENCE HELD. Status conference set for 2:00 7/8/93 ; All motions hearing date 2:00 3/10/94 ; Pre-trial conference will be held 2:00 4/21/94 ; Trial set for 8:30 5/2/94 ; (mcl, COURT STAFF) (Entered: 04/09/1993) |
| 04/12/1993 | 12 | SCHEDULING ORDER by WHO : All motions will be heard 3/10/94 ; discovery cut-off set for 1/4/94 ; pretrial conference set 2:00 4/21/94 ; trial will be held 8:30 5/2/94 (see order) (cc: all counsel) (mcl, COURT STAFF) (Entered: 04/14/1993) |
| 04/15/1993 | | RECEIVED Stipulated proposed discovery Order (mcl, COURT STAFF) (Entered: 04/16/1993) |
| 04/20/1993 | 14 | STIPULATION and ORDER by WHO : for discovery schedule (cc: all counsel) (mcl, COURT STAFF) (Entered: 04/22/1993) |
| 05/04/1993 | 15 | PROOF OF SERVICE by plaintiff Dome Patent L.P. of proposed stipulated discovery order (ml, COURT STAFF) (Entered: 05/06/1993) |
| 07/01/1993 | 16 | JOINT STATUS CONFERENCE REPORT (mcl, COURT STAFF) (Entered: 07/02/1993) |
| 10/27/1993 | | RECEIVED Order ( defendant Pilkington Visioncar ) re: [28-1] (mcl, COURT STAFF) (Entered: 10/29/1993) |
| 10/27/1993 | 36 | DECLARATION by James M. Smith on behalf of defendant Pilkington Visioncar re motion for summary judgment on the grounds that there is no material issue of fact ... [28-1] (mcl, COURT STAFF) (Entered: 10/29/1993) |
| 10/27/1993 | 35 | DECLARATION by Chidambar L. Kulkarni on behalf of defendant Pilkington Visioncar re motion for summary judgment on the grounds that there is no material issue of fact ... [28-1] FILED UNDER SEAL (mcl, COURT STAFF) (Entered: 10/29/1993) |

| 10/27/1993 | 34 | DECLARATION by Bill Meyers on behalf of defendant Pilkington Visioncar re motion for summary judgment on the grounds that there is no material issue of fact ... [28-1] FILED UNDER SEAL (mcl, COURT STAFF) (Entered: 10/29/1993) |
| 10/27/1993 | 33 | DECLARATION by Tom McCarthy on behalf of defendant Pilkington Visioncar re motion for summary judgment on the grounds that there is no material issue of fact ... [28-1] FILED UNDER SEAL (mcl, COURT STAFF) (Entered: 10/29/1993) |
| 10/27/1993 | 32 | DECLARATION by Edwward J. Kelley on behalf of defendant Pilkington Visioncar re motion for summary judgment on the grounds that there is no material issue of fact ... [28-1] (mcl, COURT STAFF) (Entered: 10/29/1993) |
| 10/27/1993 | 31 | DECLARATION by Donald J. Lyman, Ph.D. on behalf of defendant Pilkington Visioncar re motion for summary judgment on the grounds that there is no material issue of fact ... [28-1] (mcl, COURT STAFF) (Entered: 10/29/1993) |
| 10/27/1993 | 30 | STATEMENT of facts by defendant Pilkington Visioncar in support of motion for summary judgment on the grounds that there is no material issue of fact ... [28-1] FILED UNDER SEAL (mcl, COURT STAFF) (Entered: 10/29/1993) |
| 10/27/1993 | 29 | MEMORANDUM of points and authorities by defendant Pilkington Visioncar in support of motion for summary judgment on the grounds that there is no material issue of fact ... [28-1] FILED UNDER SEAL (mcl, COURT STAFF) (Entered: 10/29/1993) |
| 10/27/1993 | 28 | MOTION before WHO by defendant Pilkington Visioncar for summary judgment on the grounds that there is no material issue of fact re noninfringement ... with Notice set for 11/24/93 (mcl, COURT STAFF) (Entered: 10/29/1993) |
| 10/27/1993 |  | RECEIVED Order ( defendant Pilkington Visioncar ) re: [17-1] (mcl, COURT STAFF) (Entered: 10/28/1993) |
| 10/27/1993 | 27 | DECLARATION by Chidambar l. Kulkarni on behalf of defendant Pilkington Visioncar re motion for summary judgment on the grounds that the patent is invalid ... [17-1] FILED UNDER SEAL (mcl, COURT STAFF) (Entered: 10/28/1993) |
| 10/27/1993 | 26 | DECLARATION by Edward J. Kelley on behalf of defendant Pilkington Visioncar re motion for summary judgment on the grounds that the patent is invalid ... [17-1] (mcl, COURT STAFF) (Entered: 10/28/1993) |
| 10/27/1993 | 25 | DECLARATION by William J. Burke, Ph.D. on behalf of defendant Pilkington Visioncar re motion for summary judgment on the grounds that the patent is invalid ... [17-1] (mcl, COURT STAFF) (Entered: 10/28/1993) |
| 10/27/1993 | 24 | DECLARATION by William H. Drummond on behalf of defendant Pilkington Visioncar re motion for summary judgment on the grounds that the patent is invalid ... [17-1] (mcl, COURT STAFF) (Entered: 10/28/1993) |
| 10/27/1993 | 23 | DECLARATION by Donald J. Lyman, Ph.D. on behalf of defendant Pilkington Visioncar re motion for summary judgment on the grounds that the patent is invalid ... [17-1] (mcl, COURT STAFF) (Entered: 10/28/1993) |
| 10/27/1993 | 22 | DECLARATION by William R. Peterson, Ph. D. on behalf of defendant Pilkington Visioncar re motion for summary judgment on the grounds that the patent is invalid ... [17-1] (mcl, COURT STAFF) (Entered: 10/28/1993) |

| 10/27/1993 | 21 | DECLARATION by Martin Goffman, Ph. D. on behalf of defendant Pilkington Visioncar re motion for summary judgment on the grounds that the patent is invalid ... [17-1] (mcl, COURT STAFF) (Entered: 10/28/1993) |
| 10/27/1993 | 20 | DECLARATION by James M. Smith on behalf of defendant Pilkington Visioncar re motion for summary judgment on the grounds that the patent is invalid ... [17-1] (mcl, COURT STAFF) (Entered: 10/28/1993) |
| 10/27/1993 | 19 | STATEMENT of material facts in dispute by defendant Pilkington Visioncar in support of motion for summary judgment on the grounds that the patent is invalid ... [17-1] (mcl, COURT STAFF) (Entered: 10/28/1993) |
| 10/27/1993 | 18 | MEMORANDUM of points and authorities by defendant Pilkington Visioncar in support of motion for summary judgment on the grounds that the patent is invalid ... [17-1] (mcl, COURT STAFF) (Entered: 10/28/1993) |
| 10/27/1993 | 17 | MOTION before WHO by defendant Pilkington Visioncar for summary judgment on the grounds that the patent is invalid ... with Notice set for 11/24/93 at 2:00 pm (mcl, COURT STAFF) (Entered: 10/28/1993) |
| 11/02/1993 | 38 | PROOF OF SERVICE by defendant Pilkington Visioncar of Motion for summary judgment and supporting papers (mcl, COURT STAFF) (Entered: 11/03/1993) |
| 11/02/1993 | 37 | PROOF OF SERVICE by defendant Pilkington Visioncar of Motion for summary judgment and supporting papers (mcl, COURT STAFF) (Entered: 11/03/1993) |
| 11/10/1993 | 46 | PROOF OF SERVICE by plaintiff Dome Patent L.P., counter-defendant Dome Patent L.P. of documents #39 to #45 [3:92-cv-04758] (jm, COURT STAFF) (Entered: 11/16/1993) |
| 11/10/1993 | 45 | STATEMENT of facts by plaintiff Dome Patent L.P., counter-defendant Dome Patent L.P. in support of opposition memorandum [41-1] (FILED UNDER SEAL) [3:92-cv-04758] (fs, COURT STAFF) (Entered: 11/15/1993) |
| 11/10/1993 | 44 | DECLARATION by Chung S.Y. Kim on behalf of plaintiff Dome Patent L.P., counter-defendant Dome Patent L.P. re opposition memorandum [41-1] (FILED UNDER SEAL) [3:92-cv-04758] (fs, COURT STAFF) (Entered: 11/15/1993) |
| 11/10/1993 | 43 | DECLARATION by Hunter L. Auyang on behalf of plaintiff Dome Patent L.P., counter-defendant Dome Patent L.P. re opposition memorandum [41-1] (FILED UNDER SEAL) [3:92-cv-04758] (fs, COURT STAFF) (Entered: 11/15/1993) |
| 11/10/1993 | 42 | DECLARATION by Russell A. Neefe on behalf of plaintiff Dome Patent L.P., counter-defendant Dome Patent L.P. re opposition memorandum [41-1] (FILED UNDER SEAL) [3:92-cv-04758] (fs, COURT STAFF) (Entered: 11/15/1993) |
| 11/10/1993 | 41 | MEMORANDUM by plaintiff Dome Patent L.P., counter-defendant Dome Patent L.P. in opposition to motion for summary judgment on non-infringement. (FILED UNDER SEAL) [3:92-cv-04758] (fs, COURT STAFF) (Entered: 11/15/1993) |
| 11/10/1993 | 40 | STATEMENT of facts in dispute by plaintiff Dome Patent L.P., counter-defendant Dome Patent L.P. in support of opposition memorandum [39-1] [3:92-cv-04758] (fs, COURT STAFF) (Entered: 11/15/1993) |
| 11/10/1993 | 39 | MEMORANDUM by plaintiff Dome Patent L.P., counter-defendant Dome Patent L.P. in opposition to motion for summary judgment on the grounds that the patent is invalid |

|            |    | ... [17-1] [3:92-cv-04758] (fs, COURT STAFF) (Entered: 11/15/1993) |
|------------|----|---|
| 11/12/1993 | 48 | DECLARATION by Chung S.Y. Kim on behalf of plaintiff in opposition to motion for summary judgment on non-infringement [17-1] (FILED UNDER SEAL) [3:92-cv-04758] (tn, COURT STAFF) (Entered: 11/22/1993) |
| 11/12/1993 | 47 | Substitute MEMORANDUM by plaintiff in opposition to motion for summary judgment on non-infringement [17-1] (FILED UNDER SEAL) [3:92-cv-04758] (tn, COURT STAFF) (Entered: 11/22/1993) |
| 11/17/1993 | 54 | DECLARATION (UNDER SEAL) [3:92-cv-04758] (cb, COURT STAFF) (Entered: 11/22/1993) |
| 11/17/1993 | 53 | OBJECTIONS (UNDER SEAL) [3:92-cv-04758] (cb, COURT STAFF) (Entered: 11/22/1993) |
| 11/17/1993 | 52 | REPLY (UNDER SEAL) [3:92-cv-04758] (cb, COURT STAFF) (Entered: 11/22/1993) |
| 11/17/1993 | 51 | DECLARATION (UNDER SEAL) [3:92-cv-04758] (cb, COURT STAFF) (Entered: 11/22/1993) |
| 11/17/1993 | 50 | OBJECTIONS (UNDER SEAL) [3:92-cv-04758] (cb, COURT STAFF) (Entered: 11/22/1993) |
| 11/17/1993 | 49 | REPLY by defendant to response to motion for summary judgment on the grounds that the patent is invalid ... [17-1] [3:92-cv-04758] (cb, COURT STAFF) (Entered: 11/22/1993) |
| 11/18/1993 | 55 | DECLARATION (Under Seal) [3:92-cv-04758] (cb, COURT STAFF) (Entered: 11/22/1993) |
| 11/24/1993 | 56 | MINUTES: ( C/R Carol Karen) resetting hearing on defendant's motion for summary judgment on the grounds that the patent is invalid ... [17-1] 2:00 2/10/94, resetting hearing on defendant's motion for summary judgment on the grounds that there is no material issue of fact ... [28-1] 2:00 2/10/94 [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 12/01/1993) |
| 12/13/1993 | 57 | REPORTER'S TRANSCRIPT; Date of proceedings: 11/24/93 ( C/R: Carol Karen) [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 12/14/1993) |
| 01/10/1994 | 63 | DECLARATION by M. Scott Donahey on behalf of defendant Pilkington Visioncar FILED UNDER SEAL [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 01/14/1994) |
| 01/10/1994 | 62 | STATEMENT of material facts not in dispute by defendant Pilkington Visioncar FILED UNDER SEAL [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 01/14/1994) |
| 01/10/1994 | 61 | SUPPLEMENTAL MEMORANDUM by defendant Pilkington Visioncar FILED UNDER SEAL [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 01/14/1994) |
| 01/10/1994 | 60 | DECLARATION by M. Scott Donahey on behalf of defendant Pilkington Visioncar re motion for summary judgment on the grounds that the patent is invalid ... [17-1] [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 01/14/1994) |
| 01/10/1994 | 59 | STATEMENT of material facts not in dispute by defendant Pilkington Visioncar in support of motion for summary judgment on the grounds that the patent is invalid ... [17-1] [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 01/14/1994) |

| 01/10/1994 | 58 | SUPPLEMENTAL MEMORANDUM by defendant Pilkington Visioncar in support of motion for summary judgment on the grounds that the patent is invalid ... [17-1] [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 01/14/1994) |
| 01/11/1994 | 67 | PROOF OF SERVICE by plaintiff Dome Patent L.P. of document nos. 64-66 and proposed Order [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 01/14/1994) |
| 01/11/1994 |  | RECEIVED Order granting motion to amend complaint ( plaintiff Dome Patent L.P. ) re: [64-1] [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 01/14/1994) |
| 01/11/1994 | 66 | DECLARATION by Hunter L. Auyang on behalf of plaintiff Dome Patent L.P. FILED UNDER SEAL [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 01/14/1994) |
| 01/11/1994 | 65 | MEMORANDUM of points and authorities by plaintiff Dome Patent L.P. in support of motion to amend complaint [64-1] [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 01/14/1994) |
| 01/11/1994 | 64 | NOTICE OF MOTION AND MOTION before WHO by plaintiff Dome Patent L.P. to amend complaint with Notice set for 2/10/94 at 2:00 pm [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 01/14/1994) |
| 01/13/1994 |  | RECEIVED Stipulation re extension of time for the completion of discovery [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 01/14/1994) |
| 01/18/1994 | 68 | STIPULATION and ORDER by WHO : Discovery cutoff continued to 1/14/94 ; (cc: all counsel) [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 01/24/1994) |
| 01/21/1994 | 72 | PROOF OF SERVICE by plaintiff Dome Patent L.P. of document nos. 69-71 and proposed Order [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 01/26/1994) |
| 01/21/1994 |  | RECEIVED Order granting motion to compel ( plaintiff Dome Patent L.P. ) re: [69-1] [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 01/26/1994) |
| 01/21/1994 | 71 | DECLARATION by John P. Sutton on behalf of plaintiff Dome Patent L.P. re motion to compel discovery [69-1] [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 01/26/1994) |
| 01/21/1994 | 70 | MEMORANDUM by plaintiff Dome Patent L.P. in support of motion to compel discovery [69-1] [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 01/26/1994) |
| 01/21/1994 | 69 | NOTICE OF MOTION AND MOTION before WHO by plaintiff Dome Patent L.P. to compel discovery with Notice set for 2/10/94 at 2:00 pm [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 01/26/1994) |
| 01/24/1994 | 78 | PROOF OF SERVICE by plaintiff Dome Patent L.P. of document nos. 73-77 [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 01/27/1994) |
| 01/24/1994 | 77 | SUPPLEMENTAL DECLARATION by Hunter L. Auyang on behalf of plaintiff Dome Patent L.P. re opposition memorandum [76-1], re opposition memorandum [73-1] FILED UNDER SEAL [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 01/27/1994) |
| 01/24/1994 | 76 | SUPPLEMENTAL MEMORANDUM of points and authorities by plaintiff Dome Patent L.P. FILED UNDER SEAL [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 01/27/1994) |

| 01/24/1994 | 75 | DECLARATION by James E. McGrath on behalf of plaintiff Dome Patent L.P. re opposition memorandum [73-1] [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 01/27/1994) |
| 01/24/1994 | 74 | SUPPLEMENTAL STATEMENT of genuine issues of material facts by plaintiff Dome Patent L.P. in support of opposition memorandum [73-1] [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 01/27/1994) |
| 01/24/1994 | 73 | SUPPLEMTNAL MEMORANDUM by plaintiff Dome Patent L.P. in opposition to motion for summary judgment on the grounds that the patent is invalid ... [17-1] [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 01/27/1994) |
| 01/27/1994 | 82 | DECLARATION by James M. Smith on behalf of defendant Pilkington Visioncar re opposition [81-1] [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 02/02/1994) |
| 01/27/1994 | 81 | OPPOSITION by defendant Pilkington Visioncar to motion to compel discovery [69-1] [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 02/02/1994) |
| 01/27/1994 | 80 | DECLARATION by James M. Smith on behalf of defendant Pilkington Visioncar re opposition [79-1] FILED UNDER SEAL [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 02/02/1994) |
| 01/27/1994 | 79 | OPPOSITION by defendant Pilkington Visioncar to motion to amend complaint [64-1] [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 02/02/1994) |
| 01/31/1994 | 85 | SUPPLEMENTAL DECLARATION by M. Scott Donahey on behalf of defendant Pilkington Visioncar FILED UNDER SEAL [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 02/03/1994) |
| 01/31/1994 | 84 | SUPPLEMENTAL REPLY by defendant Pilkington Visioncar FILED UNDER SEAL [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 02/03/1994) |
| 01/31/1994 | 83 | SUPPLEMENTAL REPLY by defendant Pilkington Visioncar to response to motion for summary judgment on the grounds that the patent is invalid ... [17-1] [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 02/03/1994) |
| 02/01/1994 | 87 | DECLARATION by James E. McGrath on behalf of plaintiff Dome Patent L.P. in opposition to defendant's motions for summary judgment [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 02/04/1994) |
| 02/01/1994 | 86 | SECOND SUPPLEMENTAL DECLARATION by Donald J. Lyman, Ph.D. on behalf of defendant Pilkington Visioncar FILED UNDER SEAL [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 02/04/1994) |
| 02/03/1994 | 89 | NOTICE by plaintiff Dome Patent L.P. withdrawing motion to amend complaint [64-1] [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 02/09/1994) |
| 02/03/1994 | 88 | REPLY BRIEF by plaintiff Dome Patent L.P. to response to motion to compel discovery [69-1] [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 02/09/1994) |
| 02/18/1994 |  | RECEIVED Stipulation re extension of time for completion of expert discovery [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 02/22/1994) |
| 02/23/1994 | 90 | STIPULATION and ORDER by WHO : cutoff date for expert discovery extended to 3/25/94 ; (cc: all counsel) [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 03/01/1994) |

| 03/10/1994 | 91 | MINUTES: ( C/R Candy Yount) continuing hearing on defendant's motion for summary judgment on the grounds that the patent is invalid ... [17-1] 2:00 4/20/94 ; plaintiff's motion for production of documents : counsel stipulate in Court today as to what documents shall be produced ; documents re tutorial are due 2/24/94 [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 03/15/1994) |
| 03/17/1994 | | RECEIVED Stipulation re hearing on motions for summary judgment and modification of order [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 03/17/1994) |
| 03/21/1994 | 92 | STIPULATION and ORDER by WHO : resetting hearing on defendant's motion for summary judgment on the grounds that the patent is invalid ... [17-1] 2:00 4/20/94 Pretrial conference set for 2:00 6/16/94 ; (cc: all counsel) [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 03/22/1994) |
| 03/24/1994 | 93 | CHARTS by defendant Pilkington in support of motions for summary judgment [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 03/25/1994) |
| 04/11/1994 | 95 | SECOND SUPPLEMENTAL DECLARATION by James M. Smith on behalf of defendant Pilkington Visioncar re motion for summary judgment on the grounds that the patent is invalid ... [17-1], re motion for summary judgment on the grounds that there is no material issue of fact re noninfringement ... [28-1] [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 04/13/1994) |
| 04/11/1994 | 94 | REBUTTAL CHARTS by defendants re motion for summary judgment on the grounds that the patent is invalid ... [17-1], re motion for summary judgment on the grounds that there is no material issue of fact re noninfringement ... [28-1] [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 04/13/1994) |
| 04/18/1994 | 96 | MEMORANDUM by plaintiff Dome Patent L.P. FILED UNDER SEAL [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 04/21/1994) |
| 04/20/1994 | 97 | MINUTES: ( C/R Diane Skillman) tutorial re issues presented in defendant's motion for summary judgment held ; case will be set for trial at the next hearing [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 04/25/1994) |
| 05/16/1994 | 98 | REPORTER'S TRANSCRIPT; Date of proceedings: 4/20/94 ( C/R: Diane Skillman) [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 05/16/1994) |
| 06/09/1994 | 99 | JOINT STATUS CONFERENCE REPORT by defendant, plaintiff [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 06/15/1994) |
| 06/16/1994 | 100 | MINUTES: ( C/R Roberta Rogers) status conference held , referring case for settlement conference to Judge Eugene F. Lynch [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 06/20/1994) |
| 06/20/1994 | 101 | SCHEDULING ORDER by WHO : All motions to be heard 2:00 9/29/94 ; pretrial conference set for 2:00 10/27/94 ; jury trial set for 8:30 11/7/94 (cc: all counsel) [3:92-cv-04758] (mcl, COURT STAFF) (Entered: 06/22/1994) |
| 07/05/1994 | 102 | MINUTES: ( C/R none) (Judge Lynch) Status conference re settlement held; Further settlement conference will be held 12:30 8/31/94 ; [3:92-cv-04758] (tn, COURT STAFF) (Entered: 07/06/1994) |
| 08/03/1994 | 103 | MEMORANDUM AND ORDER: by Senior Judge William H. Orrick denying defendant's motion for summary judgment [17-1] [28-1] ( Date Entered: 8/5/94) (cc: all |

| | | counsel) [3:92-cv-04758] (scu, COURT STAFF) (Entered: 08/05/1994) |
|---|---|---|
| 08/31/1994 | 104 | MINUTES: ( C/R none) settlement conference with Judge Lynch held; case did not settle [3:92-cv-04758] (tn, COURT STAFF) (Entered: 09/01/1994) |
| 09/27/1994 | 105 | MINUTES: 9/27/94 (C/R none) Telephone status conference regarding discussion on settlement of case held before Judge Lynch ; and that Judge Lynch informs counsel to re-group themselves and talk about further settlement; court did not set a date before Judge Lynch [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/03/1994) |
| 09/29/1994 | 117 | TRIAL briefs submitted by defendant [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/06/1994) |
| 09/29/1994 | 116 | PROOF OF SERVICE by Plaintiff [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/04/1994) |
| 09/29/1994 | 115 | DESIGNATION OF DEPOSITION and discovery responses by Plaintiff [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/04/1994) |
| 09/29/1994 | 114 | PRE-TRIAL STATEMENT by Plaintiff [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/04/1994) |
| 09/29/1994 | 113 | EXHIBIT list by Plaintiff [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/04/1994) |
| 09/29/1994 | 112 | DESIGNATION OF WITNESS(ES) submitted by Plaintiff [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/04/1994) |
| 09/29/1994 | 111 | TRIAL brief submitted by Plaintiff (UNDER SEAL) [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/04/1994) |
| 09/29/1994 | 110 | PROOF OF SERVICE by defendant [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/04/1994) |
| 09/29/1994 | 109 | PRE-TRIAL STATEMENT by defendant [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/04/1994) |
| 09/29/1994 | 108 | narrative witness statement submitted by defendant [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/04/1994) |
| 09/29/1994 | 107 | EXHIBIT list by defendant [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/04/1994) |
| 09/29/1994 | 106 | NOTICE by defendant of lodging [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/04/1994) |
| 10/04/1994 | 119 | AMENDED EXHIBIT list by defendant [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/06/1994) |
| 10/04/1994 | 118 | PROOF OF personal SERVICE by defendant of trial documents [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/06/1994) |
| 10/13/1994 | 144 | PROOF OF SERVICE by Plaintiff and Counter-defendant Dome Patent L.P. of documents #: 135-143 [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/14/1994) |
| 10/13/1994 | 143 | PROOF OF SERVICE by Plaintiff and Counter-defendant Dome Patent L.P. of documents #: 135-142 [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/14/1994) |

| | | |
|---|---|---|
| 10/13/1994 | 142 | VOIR DIRE QUESTIONS submitted by Plaintiff and Counter-defendant Dome Patent L.P. [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/14/1994) |
| 10/13/1994 | 141 | OBJECTIONS by Plaintiff and Counter-defendant Dome Patent L.P. to trial exhibits [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/14/1994) |
| 10/13/1994 | 140 | OPPOSITION BRIEF by Plaintiff and Counter-defendant Dome Patent L.P. [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/14/1994) |
| 10/13/1994 | 139 | MOTION by Plaintiff and Counter-defendant Dome Patent L.P. in limine exclude the issue of laches at trial [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/14/1994) |
| 10/13/1994 | 138 | MOTION by Plaintiff and Counter-defendant Dome Patent L.P. in limine to exclude the issue of file wrapper estoppel at trial [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/14/1994) |
| 10/13/1994 | 137 | MOTION by Plaintiff and Counter-defendant Dome Patent L.P. in limine to exclude the newly raised affirmative defenses at trial [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/14/1994) |
| 10/13/1994 | 136 | MOTION by Plaintiff and Counter-defendant Dome Patent L.P. in limine to exclude the testimonies of proposed experts Rene Tegtmeyer and Robert Whipple; alternatively to limit testimonies to rebuttal [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/14/1994) |
| 10/13/1994 | 135 | NOTICE by Plaintiff and Counter-defendant Dome Patent L.P. of lodging [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/14/1994) |
| 10/13/1994 | 134 | OPPOSITION BRIEF by defendant and counter-claimant Pilkington Visioncare, Inc. [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/14/1994) |
| 10/13/1994 | 133 | SECOND AMENDED EXHIBIT LIST by defendant and counter-claimant Pilkington Visioncare, Inc. [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/14/1994) |
| 10/13/1994 | 132 | PROOF OF SERVICE by defendant and counter-claimant Pilkington Visioncare, Inc. of documents #: 120-131 [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/14/1994) |
| 10/13/1994 | 131 | PROPOSED VOIR DIRE submitted by defendant and counter-claimant Pilkington Visioncare, Inc. [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/14/1994) |
| 10/13/1994 | 130 | REBUTTAL WITNESS DESIGNATION AND STATEMENTS by defendant and counter-claimant Pilkington Visioncare, Inc. [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/14/1994) |
| 10/13/1994 | 129 | OBJECTIONS by defendant and counter-claimant Pilkington Visioncare, Inc. to designated testimony and trial exhibits [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/14/1994) |
| 10/13/1994 | 128 | DECLARATION of James M. Smith on behalf of defendant and counter-claimant Pilkington Visioncare, Inc. re motion to bifurcate [127-1] [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/14/1994) |
| 10/13/1994 | 127 | MOTION by defendant and counter-claimant Pilkington Visioncare, Inc. to bifurcate [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/14/1994) |

| 10/13/1994 | 126 | MOTION by defendant and counter-claimant Pilkington Visioncare, Inc. in limine regarding Dome's attorney's party admissions [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/14/1994) |
| 10/13/1994 | 125 | MOTION by defendant and counter-claimant Pilkington Visioncare, Inc. in limine regarding admission of S.Y. Kim's declaration and supporting memorandum of law [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/14/1994) |
| 10/13/1994 | 124 | MOTION by defendant and counter-claimant Pilkington Visioncare, Inc. in limine regarding the doctrine of file wrapper estoppel and supporting memorandum of law [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/14/1994) |
| 10/13/1994 | 123 | MOTION by defendant and counter-claimant Pilkington Visioncare, Inc. in limine regarding plaintiff's extension of the doctrine of equivalents to encompass prior art and supporting memorandum of law [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/14/1994) |
| 10/13/1994 | 122 | MOTION by defendant and counter-claimant Pilkington Visioncare, Inc. in limine regarding limitation of damages [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/14/1994) |
| 10/13/1994 | 121 | MOTION by defendant and counter-claimant Pilkington Visioncare, Inc. in limine regarding law of the case and supporting memorandum of law [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/14/1994) |
| 10/13/1994 | 120 | NOTICE by defendant and counter-claimant Pilkington Visioncarre, Inc. of lodgin [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/14/1994) |
| 10/19/1994 | 147 | PROOF OF SERVICE by defendant of pretrial documents [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/20/1994) |
| 10/19/1994 | 146 | THIRD AMENDED EXHIBIT list by defendant [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/20/1994) |
| 10/19/1994 | 145 | NOTICE by defendant of lodging [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/20/1994) |
| 10/20/1994 | 166 | PROOF OF SERVICE by defendant and Counter-claimant Pilkington Visioncare, Inc. of documents #: 159 [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/21/1994) |
| 10/20/1994 | 165 | DECLARATION of James M. Smith on behalf of defendant and Counter-claimant Pilkington Visioncare, Inc. in support of its response [164-1] [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/21/1994) |
| 10/20/1994 | 164 | RESPONSE by defendant and Counter-claimant Pilkington Visioncare, Inc. to plaintiff's motion in limine to exclude the testimonies of proposed experts Rene Tegtmeyer and Robert Whipple [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/21/1994) |
| 10/20/1994 | 163 | RESPONSE by defendant and Counter-claimant Pilkington Visioncare, Inc. to plaintiff's motion in limine to exclude the issue of Laches at trial [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/21/1994) |
| 10/20/1994 | 162 | RESPONSE by defendant and Counter-claimant Pilkington Visioncare, Inc. to plaintiff's motion in limine to exclude defendant's affirmative defenses [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/21/1994) |

| 10/20/1994 | 161 | RESPONSE by defendant and Counter-claimant Pilkington Visioncare, Inc. to plaintiff's motion in limine to exclude the issue of file wrapper estoppel at trial [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/21/1994) |
|---|---|---|
| 10/20/1994 | 160 | OBJECTIONS by defendant and Counter-claimant Pilkington Visioncare, Inc. to plaintiff's jury instructions [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/21/1994) |
| 10/20/1994 | 159 | REPLY BRIEF by defendant and counter-claimant Pilkington Visioncare, Inc. [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/21/1994) |
| 10/20/1994 | 158 | PROOF OF SERVICE by Plaintiff and Counter-defendant Dome Patent L.P. of documents #: 148-157 [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/21/1994) |
| 10/20/1994 | 157 | MOTION by Plaintiff and Counter-defendant Dome Patent L.P. in limine to exclude the testimonies of proposed "rebuttal" witnesses Barry Arkles and James Harwood [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/21/1994) |
| 10/20/1994 | 156 | REPLY by Plaintiff and Counter-defendant Dome Patent L.P. to trial brief [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/21/1994) |
| 10/20/1994 | 155 | OPPOSITION by Plaintiff and Counter-defendant Dome Patent L.P. to motion to bifurcate [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/21/1994) |
| 10/20/1994 | 154 | OPPOSITION by Plaintiff and Counter-defendant Dome Patent L.P. to motion in limine regarding limitation of damages [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/21/1994) |
| 10/20/1994 | 153 | OPPOSITION by Plaintiff and Counter-defendant Dome Patent L.P. to motion in limine regarding law of the case [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/21/1994) |
| 10/20/1994 | 152 | OPPOSITION by Plaintiff and Counter-defendant Dome Patent L.P. to motion in limine re doctrine of equivalents [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/21/1994) |
| 10/20/1994 | 151 | OPPOSITION by Plaintiff and Counter-defendant Dome Patent L.P. to attorney's admissions motion in limine [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/21/1994) |
| 10/20/1994 | 150 | OPPOSITION by Plaintiff and Counter-defendant Dome Patent L.P. to the Kim Declaration motion in limine [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/21/1994) |
| 10/20/1994 | 149 | OPPOSITION by Plaintiff and Counter-defendant Dome Patent L.P. to file Wrapper Estoppel motion in limine [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/21/1994) |
| 10/20/1994 | 148 | NOTICE by Plaintiff and Counter-defendant Dome Patent L.P. of lodging [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/21/1994) |
| 10/27/1994 | 167 | MINUTES: (C/R Jan Brewer) Pretrial conference held; All argument for motions in limine will be heard by 2:00 p.m. on 11/30/94; Trial will be held at 8:30 a.m. on 12/5/94 [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/28/1994) |
| 10/28/1994 | 168 | PROOF OF SERVICE by defendant and counter-claimant Pilkington Visioncare, Inc. of orders in limine [3:92-cv-04758] (tn, COURT STAFF) (Entered: 10/31/1994) |

| 11/02/1994 | 169 | PROOF OF SERVICE by defendant of motion re pro hac vice [3:92-cv-04758] (tn, COURT STAFF) (Entered: 11/03/1994) |
| --- | --- | --- |
| 11/03/1994 | 182 | PROOF OF SERVICE by Plaintiff and counter-defendant Dome Patent L.P. of document #: 101 [3:92-cv-04758] (tn, COURT STAFF) (Entered: 11/04/1994) |
| 11/03/1994 | 181 | SUPPLEMENTAL BRIEF by Plaintiff and counter-defendant Dome Patent L.P. [3:92-cv-04758] (tn, COURT STAFF) (Entered: 11/04/1994) |
| 11/03/1994 | 180 | PROOF OF SERVICE by defendant and counter-claimant Pilkington Visioncare, Inc. of documents #: 170-179 [3:92-cv-04758] (tn, COURT STAFF) (Entered: 11/04/1994) |
| 11/03/1994 | 179 | DECLARATION of Donald J. Lyman on behalf of defendant and counter-claimant Pilkington Visioncare, Inc. in support of its motion in limine regarding the doctrine of equivalents [3:92-cv-04758] (tn, COURT STAFF) (Entered: 11/04/1994) |
| 11/03/1994 | 178 | SUPPLEMENTAL MEMORANDUM by defendant and counter-claimant Pilkington Visioncare, Inc. in support of its motion in limine re: doctrine of equivalents [3:92-cv-04758] (tn, COURT STAFF) (Entered: 11/04/1994) |
| 11/03/1994 | 177 | SUPPLEMENTAL RESPONSE by defendant and counter-claimant Pilkington Visioncare, Inc. to plaintiff's motion in limine to exclude defendant's defense of the reverse doctrine of equivalents [3:92-cv-04758] (tn, COURT STAFF) (Entered: 11/04/1994) |
| 11/03/1994 | 176 | SUPPLEMENTAL MEMORANDUM of points and authorities by defendant and counter-claimant Pilkington Visioncare, Inc. in support of defendant's motion in limine regarding file wrapper estoppel [3:92-cv-04758] (tn, COURT STAFF) (Entered: 11/04/1994) |
| 11/03/1994 | 175 | SUPPLEMENTAL MEMORANDUM by defendant and counter-claimant Pilkington Visioncare, Inc. in support of its motion in limine regarding limitation of damages [3:92-cv-04758] (tn, COURT STAFF) (Entered: 11/04/1994) |
| 11/03/1994 | 174 | MEMORANDUM of points and authorities by defendant and counter-claimant Pilkington Visioncare, Inc. in support of its motion in limine regarding Dome's attorneys' party admissions [3:92-cv-04758] (tn, COURT STAFF) (Entered: 11/04/1994) |
| 11/03/1994 | 173 | MEMORANDUM of points and authorites by defendant and counter-claimant Pilkington Visioncare, Inc. in support of its motion in limine regarding law of the case [3:92-cv-04758] (tn, COURT STAFF) (Entered: 11/04/1994) |
| 11/03/1994 | 172 | SUPPLEMENTAL RESPONSE by defendant and counter-claimant Pilkington Visioncare, Inc. to plaintiff's motion in limine to exclude defense of laches [3:92-cv-04758] (tn, COURT STAFF) (Entered: 11/04/1994) |
| 11/03/1994 | 171 | MEMORANDUM by defendant and counter-claimant Pilkington Visioncare, Inc. in support of its proposed forms of verdict [3:92-cv-04758] (tn, COURT STAFF) (Entered: 11/04/1994) |
| 11/03/1994 | 170 | RESPONSE by defendant and counter-claimant Pilkington Visioncare, Inc. to plaintiff's motion in limine to exclude the testimonies of witnesses Barry Arkles and James Harwood [3:92-cv-04758] (tn, COURT STAFF) (Entered: 11/04/1994) |

| | | |
|---|---|---|
| 11/08/1994 | 183 | MOTION AND ORDER by Senior Judge William H. Orrick for admission pro hac vice (cc: all counsel) [3:92-cv-04758] (tn, COURT STAFF) (Entered: 11/14/1994) |
| 11/14/1994 | 184 | PROOF OF SERVICE by defendant of motion and order for pro hac vice [3:92-cv-04758] (tn, COURT STAFF) (Entered: 11/17/1994) |
| 11/22/1994 | 185 | NOTICE by defendant and counter-claimant Pilkington Visioncare, Inc. of lodging of revised defendant exhibits [3:92-cv-04758] (tn, COURT STAFF) (Entered: 11/28/1994) |
| 11/30/1994 | 187 | PROOF OF SERVICE by Plaintiff of subpoena upon Pilkinton Visioncare [3:92-cv-04758] (tn, COURT STAFF) (Entered: 12/02/1994) |
| 11/30/1994 | 186 | MINUTES: ( C/R Raymond Linkerman) that the motions in limine [157-1] [139-1] [138-1] [137-1] [136-1] [126-1] [125-1] [124-1] [123-1] [122-1] [121-1] are submitted; case transfered to Judge Henderson for jury trial [3:92-cv-04758] (tn, COURT STAFF) (Entered: 12/02/1994) |
| 12/02/1994 | 188 | PROOF OF SERVICE by defendant and counter-claimant Pilkington Visioncare of order limine re law of the case; order re: plaintiff's motion in limine to exclude the issue of laches at trial [3:92-cv-04758] (tn, COURT STAFF) (Entered: 12/07/1994) |
| 12/07/1994 | 189 | MINUTES: (C/R not reported) Telephone conference regarding trial date - held, case continued to 2/9/95 at 2:00 p.m. on defendant's motions in limine re new designations and exhibits; Pretrial conference set for 2:00 p.m. on 2/9/95; Jury trial will be held at 8:30 a.m. on 2/27/95 ; the court will issue a jury questionare to prospective jurors; counsel shall submit questions to the court by Monday, 12/12/94; counsel shall submit their jury instructions on a disk and have joint instructions in a notebook [3:92-cv-04758] (tn, COURT STAFF) (Entered: 12/09/1994) |
| 12/09/1994 | 194 | PROOF OF SERVICE by defendant of motions in limine [3:92-cv-04758] (tn, COURT STAFF) (Entered: 12/13/1994) |
| 12/09/1994 | 193 | MOTION before Senior Judge William H. Orrick by defendant in limine precluding evidence re: amount of judgment in Syntex v. Paragon [3:92-cv-04758] (tn, COURT STAFF) (Entered: 12/13/1994) |
| 12/09/1994 | 192 | MOTION before Senior Judge William H. Orrick by defendant in limine for order barring exhibits 114-115 [3:92-cv-04758] (tn, COURT STAFF) (Entered: 12/13/1994) |
| 12/09/1994 | 191 | MOTION before Senior Judge William H. Orrick by defendant in limine for order barring exhibits 107 to 113 [3:92-cv-04758] (tn, COURT STAFF) (Entered: 12/13/1994) |
| 12/09/1994 | 190 | MOTION before Senior Judge William H. Orrick by defendant in limine to preclude newly designated testimony of Chidambar Kulkarni [3:92-cv-04758] (tn, COURT STAFF) (Entered: 12/13/1994) |
| 12/16/1994 | 196 | PROOF OF SERVICE by defendant of application [3:92-cv-04758] (tn, COURT STAFF) (Entered: 12/19/1994) |
| 12/16/1994 | 195 | APPLICATION by defendant for permission to file motion for reconsideration [3:92-cv-04758] (tn, COURT STAFF) (Entered: 12/19/1994) |
| 12/29/1994 | 197 | REPORTER'S TRANSCRIPT; Date of proceedings: 11/30/94 (C/R: Raymond Linkerman) [3:92-cv-04758] (tn, COURT STAFF) (Entered: 12/29/1994) |

| 01/03/1995 | 198 | ORDER by Senior Judge William H. Orrick granting defendant's application to file a motion for reconsideration of the court's decision on the law of the case as it applies to literal infringement, and the hearing on the motion will be held on 1/19/95 at 2:00 p.m.; plaintiff shall file an opposition to the motion by 1/10/95 and that defendant's reply shall be filed by 1/16/95 (cc: all counsel) [3:92-cv-04758] (tn, COURT STAFF) (Entered: 01/05/1995) |
|---|---|---|
| 01/05/1995 | 201 | PROOF OF SERVICE by defendant [3:92-cv-04758] (tn, COURT STAFF) (Entered: 01/09/1995) |
| 01/05/1995 | 200 | MEMORANDUM by defendant in support of motion for reconsideration [199-1] [3:92-cv-04758] (tn, COURT STAFF) (Entered: 01/09/1995) |
| 01/05/1995 | 199 | MOTION before Senior Judge William H. Orrick by defendant for reconsideration with Notice set for 1/19/95 at 2:00 [3:92-cv-04758] (tn, COURT STAFF) (Entered: 01/09/1995) |
| 01/10/1995 | 202 | OPPOSITION by Plaintiff and counter-defendant Dome Patent L.P. to defendant and counter-claimant's motion for reconsideration [199-1] [3:92-cv-04758] (tn, COURT STAFF) (Entered: 01/11/1995) |
| 01/17/1995 | 203 | REPLY MEMORANDUM by defendant and counter-claimant Pilkington Visioncare, Inc. in support of its motion for reconsideration [199-1] [3:92-cv-04758] (tn, COURT STAFF) (Entered: 01/20/1995) |
| 01/19/1995 | 205 | ORDER by Senior Judge William H. Orrick denying plaintiff's motion in limine to exclude the testimony of proposed "rebuttal" witness Barry Arkles, but granting witness James Harwood [157-1], and that defendant shall provide Mr. Ankles for deposition before the commencement of the trial; withdrawing plaintiff's motion in limine to exclude the defense of reverse doctrine of equivalents and the issue of laches at trial [139-1]; granting plaintiff's motion in limine to exclude the issue of file wrapper estoppel at trial [138-1]; denying defendant's motion limine regarding Dome's attorney's party admissions [126-1]; denying defendant's motion in limine regarding plaintiff's extension of the doctrine of equivalents to encompass prior art and supporting memorandum of law [123-1]; denying defendant's motion in limine regarding limitation of damages [122-1]; and that granting defendant's motion in limine regarding law of the case and supporting memorandum of law [121-1] (cc: all counsel) [3:92-cv-04758] (tn, COURT STAFF) (Entered: 01/24/1995) |
| 01/19/1995 | 204 | MINUTES: (C/R Roberta Rogers) that the defendant's motion for reconsideration [199-1] is submitted [3:92-cv-04758] (tn, COURT STAFF) (Entered: 01/24/1995) |
| 01/23/1995 | 206 | APPLICATION by defendant to file motion for reconsideration [3:92-cv-04758] (tn, COURT STAFF) (Entered: 01/25/1995) |
| 01/27/1995 | 208 | ORDER by Senior Judge William H. Orrick denying motion for reconsideration of 1/19/95 order re issue of file wrapper estoppel ( Date Entered: 1/30/95) (cc: all counsel) [3:92-cv-04758] (tn, COURT STAFF) (Entered: 01/30/1995) |
| 01/27/1995 | 207 | ORDER by Senior Judge William H. Orrick denying motion for reconsideration [199-1]; 8/3/94 order is correct ( Date Entered: 1/30/95) (cc: all counsel) [3:92-cv-04758] (tn, COURT STAFF) (Entered: 01/30/1995) |
| 02/08/1995 | 210 | FOURTH AMENDED EXHIBIT LIST by defendant and counter-claimant Pilkington Visioncare, Inc. [3:92-cv-04758] (tn, COURT STAFF) (Entered: 02/10/1995) |

| | | |
|---|---|---|
| 02/08/1995 | 209 | NOTICE by defendant and counter-claimant Pilkington Visioncare, Inc. of addition to defendant's exhibit list and lodging of exhibits [3:92-cv-04758] (tn, COURT STAFF) (Entered: 02/10/1995) |
| 02/09/1995 | 211 | MINUTES: (C/R Diane Skillman) Pretrial conference held, case continued to 2/27/95 at 8:30 a.m. for jury trial ; the court informs counsel that the jury pannel will come to the trial on 2/27/95 to fill out a questionare first; counsel are to meet to agree on the questions to be on the questionare [3:92-cv-04758] (tn, COURT STAFF) (Entered: 02/10/1995) |
| 02/10/1995 | 212 | JOINTLY PROPOSED JURY QUESTIONNAIRE submitted by defendant [3:92-cv-04758] (tn, COURT STAFF) (Entered: 02/13/1995) |
| 02/21/1995 | 213 | ORDER by Senior Judge William H. Orrick that the defendant and counter-claimant be authorized to introduce into the courtroom the following items: five television monitors & cables; laser disc equipment; four easels; one bookcase, approximately thirty exhibit charts; and etc. (cc: all counsel) [3:92-cv-04758] (tn, COURT STAFF) (Entered: 02/23/1995) |
| 02/22/1995 | 259 | ATTORNEY SUBSTITUTION: terminating attorney Karen Y. Spencer for Dome Patent L.P., attorney Jessica S. Pers for Dome Patent L.P., attorney Karen Y. Spencer for Dome Patent L.P. as counsel for Plaintiff Dome Patent L.P. and substituting attorney John P. Sutton, Virginia S. Medlen [5:95-cv-20225] (jc, COURT STAFF) (Entered: 04/25/1995) |
| 02/23/1995 | 214 | ORDER by Senior Judge William H. Orrick withdrawing attorney John P. Sutton & Virginia S. Medlen of Haverstock, Medlen & Carroll for plaintiff & counter-defendant Dome Patent L.P. and substituting attorney Jessica S. Pers of Heller, Ehrman, White & McAuliffe (cc: all counsel) [3:92-cv-04758] (tn, COURT STAFF) (Entered: 02/24/1995) |
| 02/24/1995 | 215 | Supplementary EXHIBITS and exhibit list by plaintiff [3:92-cv-04758] (tn, COURT STAFF) (Entered: 02/27/1995) |
| 03/01/1995 | 216 | REPORTER'S TRANSCRIPT; Date of proceedings: 2/9/95 (C/R: Diane Skillman) [3:92-cv-04758] (tn, COURT STAFF) (Entered: 03/02/1995) |
| 03/07/1995 | 218 | Joint submission of Glossary [3:92-cv-04758] (tn, COURT STAFF) (Entered: 03/08/1995) |
| 03/07/1995 | 217 | JOINT STATEMENT of facts [3:92-cv-04758] (tn, COURT STAFF) (Entered: 03/08/1995) |
| 03/14/1995 | 221 | SCHEDULING ORDER by Judge Robert P. Aguilar: that the jury trial set for 9:00 a.m. on 4/17/95 before Judge Robert P. Aguilar (cc: all counsel) [3:92-cv-04758] (tn, COURT STAFF) (Entered: 03/21/1995) |
| 03/15/1995 | 220 | ORDER by Judge Robert P. Aguilar regarding jury questionnaire [see order for more info.] (cc: all counsel) [3:92-cv-04758] (tn, COURT STAFF) (Entered: 03/21/1995) |
| 03/15/1995 | 219 | ORDER by Judge Robert P. Aguilar regarding jury trial exhibits; page two of this exhibit entitled "Pilkington" will be allowed in defendant's opening statement (cc: all counsel) [3:92-cv-04758] (tn, COURT STAFF) (Entered: 03/21/1995) |

| 03/20/1995 | 222 | SUBMISSION by Plaintiff & Counter-defendant Dome Patent L.P. of the "agreed statement of facts" [3:92-cv-04758] (tn, COURT STAFF) (Entered: 03/23/1995) |
|---|---|---|
| 03/22/1995 | 224 | LETTER to Judge Aguilar dated 3/22/95 from M. Scott Donahey [3:92-cv-04758] (tn, COURT STAFF) (Entered: 03/29/1995) |
| 03/22/1995 | 223 | LETTER to Judge Aguilar dated 3/22/95 from James Mason Smith [3:92-cv-04758] (tn, COURT STAFF) (Entered: 03/29/1995) |
| 03/30/1995 | 225 | ORDER by Senior Judge William H. Orrick Case reassigned to Judge Robert P. Aguilar ; New case number C95-20225 RPA ( Date Entered: 4/3/95) (cc: all counsel) [3:92-cv-04758] (tn, COURT STAFF) (Entered: 04/03/1995) |
| 03/30/1995 | 228 | VOIR DIRE submitted by defendant [5:95-cv-20225] (tn, COURT STAFF) (Entered: 04/05/1995) |
| 03/31/1995 | 226 | LETTER dated 3/31/95 from James Mason Smith [5:95-cv-20225] (tn, COURT STAFF) (Entered: 04/05/1995) |
| 03/31/1995 | 227 | LETTER dated 3/31/95 from M. Scott Donahey [5:95-cv-20225] (tn, COURT STAFF) (Entered: 04/05/1995) |
| 04/03/1995 | 229 | LETTER dated 4/3/95 from James Mason Smith for Pilkington Visioncar re: Stipulation and protective order regarding confidential information. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 04/12/1995) |
| 04/04/1995 | 230 | ORDER SCHEDULING PRETRIAL CONFERENCE by Judge Robert P. Aguilar Pretrial conference set for 1:30 4/13/95; (Date Entered: 4/12/95) (cc: all counsel) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 04/12/1995) |
| 04/04/1995 | 231 | ORDER by Judge Robert P. Aguilar re: new case number (Date Entered: 4/12/95) (cc: all counsel) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 04/12/1995) |
| 04/04/1995 | 232 | ORDER OF ADMISSION TO COURT by Judge Robert P. Aguilar authorizing Pilkington Visioncare, Inc. to bring in electronic equipment into the courtroom (Date Entered: 4/12/95) (cc: all counsel) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 04/12/1995) |
| 04/04/1995 | 233 | ORDER by Judge Robert P. Aguilar authorizing Dome Patent I.P. to bring in an overhead projector and screen into the courtroom for the purpose of the trial ( Date Entered: 4/12/95) (cc: all counsel) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 04/12/1995) |
| 04/06/1995 | 234 | NOTICE OF LODGING by defendant Pilkington Visioncar [5:95-cv-20225] (jc, COURT STAFF) (Entered: 04/12/1995) |
| 04/06/1995 | 235 | NOTICE OF ADDITIONS TO DEFENDANT'S EXHIBIT LIST by defendant Pilkington Visioncar [5:95-cv-20225] (jc, COURT STAFF) (Entered: 04/12/1995) |
| 04/07/1995 | 236 | PROPOSED JURY INSTRUCTIONS submitted by defendant Pilkington Visioncar [5:95-cv-20225] (jc, COURT STAFF) (Entered: 04/12/1995) |
| 04/07/1995 | 237 | REPORTER'S TRANSCRIPT; Date of proceedings: 1/19/95 ( C/R: Roberta L. Rogers) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 04/14/1995) |

| 04/10/1995 | 238 | LETTER dated 4/10/95 from M. Scott Donahey for Pilkington Visioncar re: Jury instructions. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 04/14/1995) |
| 04/11/1995 | 239 | PROPOSED FORM OF VERDICT for defendant Pilkington Visioncar [5:95-cv-20225] (jc, COURT STAFF) (Entered: 04/14/1995) |
| 04/12/1995 | 243 | REPORTER'S TRANSCRIPT; Date of proceedings: 10/27/94 (C/R: Jan E. Brewer) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 04/18/1995) |
| 04/13/1995 | 240 | RESPONSE by defendant Pilkington Visioncar to Dome's objections to the use of certain exhibits. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 04/14/1995) |
| 04/13/1995 | 241 | JOINT WITNESS LIST submitted by Plaintiff Dome Patent L.P. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 04/14/1995) |
| 04/13/1995 | 242 | JOINT EXHIBIT LIST by Plaintiff Dome Patent L.P. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 04/14/1995) |
| 04/14/1995 | 244 | LETTER dated 4/14/95 from Jonathan O. Owens of Dome Patent L.P. re: requesting the case still be tried to the jury. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 04/18/1995) |
| 04/17/1995 | 245 | LETTER dated 4/17/95 from James Mason Smith of Pilkington Visioncar re: Proposed Supplemental Jury Instructions. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 04/18/1995) |
| 04/17/1995 | 246 | "CLEAN" JURY INSTRUCTIONS submitted by Plaintiff Dome Patent L.P. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 04/18/1995) |
| 04/17/1995 | 247 | "CLEAN" JURY COPY OF JOINTLY PROPOSED JURY INSTRUCTIONS and PROPOSED JURY INSTRUCTIONS submitted by defendant Pilkington Visioncar [5:95-cv-20225] (jc, COURT STAFF) (Entered: 04/18/1995) |
| 04/17/1995 | 248 | OBJECTIONS by Plaintiff Dome Patent L.P. to defendant's amended proposed form of verdict [239-1] and submission of plaintiff's alternative proposed form of verdict. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 04/18/1995) |
| 04/17/1995 | 249 | AGREED STATEMENT of facts or matters determined by the court by defendant Pilkington Visioncar [5:95-cv-20225] (jc, COURT STAFF) (Entered: 04/18/1995) |
| 04/17/1995 | 250 | PROPOSED SUPPLEMENTAL JURY INSTRUCTIONS submitted by defendant Pilkington Visioncar regarding the meaning and scope of claim 1 of the Neefe Patent [5:95-cv-20225] (jc, COURT STAFF) (Entered: 04/18/1995) |
| 04/17/1995 | 251 | STIPULATION and ORDER by Judge Robert P. Aguilar: regarding trial exhibits (cc: all counsel) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 04/18/1995) |
| 04/17/1995 | 252 | ORDER by Judge Robert P. Aguilar authorizing attorneys for plaintiff Dome Patent and defendant Pilkington Visioncare to use the Court's law library, during the trial ( Date Entered: 4/18/95) (cc: all counsel) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 04/18/1995) |
| 04/17/1995 | 255 | TRIAL MINUTES: (C/R Jo Ann Bryce) Trial began 4/17/95 @ 9:00 am; further trial 4/18/95 @ (;00 am. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 04/24/1995) |

| | | |
|---|---|---|
| 04/18/1995 | 253 | SUBPOENA returned as to: Briant E. Benson 4/17/95 (jc, COURT STAFF) (Entered: 04/18/1995) |
| 04/18/1995 | 254 | SUBPOENA returned as to: Russell A. Neefe 4/17/95 (jc, COURT STAFF) (Entered: 04/18/1995) |
| 04/18/1995 | 256 | TRIAL MINUTES: (C/R Jo Ann Bryce) Further trial on 4/19/95 @ 9:00 am. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 04/24/1995) |
| 04/18/1995 | 321 | REPORTER'S TRANSCRIPT; Date of proceedings: 4/18/95 ( C/R: Jo Ann Bryce) Jury Trial (Volume 2) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/13/1995) |
| 04/19/1995 | 257 | TRIAL MINUTES: ( C/R Jo Ann Bryce) Further trial on 4/20/95 @ 9:00 am. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 04/24/1995) |
| 04/19/1995 | 258 | PROOF OF SERVICE by defendant Pilkington Visioncar of Agreed statement of facts or matters determined by the court; jury copy of jointly proposed jury instructions; proposed supplemental jury instruction; letter to Judge Aguilar. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 04/24/1995) |
| 04/20/1995 | 260 | TRIAL MINUTES: ( C/R Jo Ann Bryce) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 05/02/1995) |
| 04/20/1995 | 261 | SUPPLEMENTAL JURY INSTRUCTIONS interpreting Claim 1 of the Neefe patent submitted by Plaintiff Dome Patent L.P. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 05/02/1995) |
| 04/20/1995 | 262 | CLEAN JURY COPY OF JOINTLY PROPOSED JURY INSTRUCTIONS re: the meaning and scope of Claim 1 of the Neefe patent submitted by defendant Pilkington Visioncar [5:95-cv-20225] (jc, COURT STAFF) (Entered: 05/02/1995) |
| 04/20/1995 | 263 | JOINTLY PROPOSED JURY INSTRUCTIONS re: the meaning and scope of Claim 1 of the Neefe patent submitted by defendant Pilkington Visioncar [5:95-cv-20225] (jc, COURT STAFF) (Entered: 05/02/1995) |
| 04/24/1995 | 264 | PROPOSED FORM OF VERDICT by defendant Pilkington Visioncar [5:95-cv-20225] (jc, COURT STAFF) (Entered: 05/02/1995) |
| 04/24/1995 | 265 | RESPONSE by defendant Pilkington Visioncar re objection [248-1] [5:95-cv-20225] (jc, COURT STAFF) (Entered: 05/02/1995) |
| 04/24/1995 | 266 | REPORTER'S TRANSCRIPT; Date of proceedings: 4/13/95 ( C/R: Jo Ann Bryce) of Pretrial Conference [5:95-cv-20225] (jc, COURT STAFF) (Entered: 05/02/1995) |
| 04/24/1995 | 267 | TRIAL MINUTES: ( C/R Jo Ann Bryce) Further jury trial on 5/15/95 @ 9:00 am. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 05/02/1995) |
| 04/24/1995 | 268 | TITLE Sheet re: Jury attendance record for the month of 4/95. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 05/02/1995) |
| 04/25/1995 | 269 | OBJECTIONS by defendant Pilkington Visioncar to jury [261-1] [5:95-cv-20225] (jc, COURT STAFF) (Entered: 05/02/1995) |
| 05/02/1995 | 270 | PROOF OF SERVICE by defendant Pilkington Visioncar of Defendant's response to plaintiff 's objection to defendant's amended proposed form of verdict and submission of plaintiff's alternative proposed form of verdict; defendant's proposed form of verdict |

| | | [5:95-cv-20225] (jc, COURT STAFF) (Entered: 05/16/1995) |
|---|---|---|
| 05/02/1995 | 271 | LETTER dated 5/2/95 from James Mason Smith for Pilkington Visioncar re: objection to the proposed instruction which bears the designation 111. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 05/17/1995) |
| 05/08/1995 | 272 | DEFENDANT'S SUPPLEMENTAL DESIGNATION OF EXHIBITS 1306, 1307, 1308 and 1309. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 05/17/1995) |
| 05/11/1995 | 273 | DEFENDANT'S SUPPLEMENTAL DESIGNATION OF EXHIBITS 1300-A and 1310. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 05/17/1995) |
| 05/12/1995 | 274 | JOINT JURY INSTRUCTIONS submitted by Plaintiff Dome Patent L.P. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 05/23/1995) |
| 05/15/1995 | 275 | TRIAL MINUTES: (C/R Jo Ann Bryce) further jury trial on 5/16/95 @ 9:00 am [5:95-cv-20225] (jc, COURT STAFF) (Entered: 05/23/1995) |
| 05/15/1995 | 276 | MOTION before Judge Robert P. Aguilar by defendant Pilkington Visioncar for judgment for noninfringement based upon the nonapplication of doctrine of equivalents [5:95-cv-20225] (jc, COURT STAFF) (Entered: 05/23/1995) |
| 05/15/1995 | 277 | MOTION before Judge Robert P. Aguilar by defendant Pilkington Visioncar for judgment on the grounds of noninfringement [5:95-cv-20225] (jc, COURT STAFF) (Entered: 05/23/1995) |
| 05/15/1995 | 278 | MOTION before Judge Robert P. Aguilar by defendant Pilkington Visioncar for judgment barring recovery of damages on the basis of Laches [5:95-cv-20225] (jc, COURT STAFF) (Entered: 05/23/1995) |
| 05/15/1995 | 279 | NOTICE of lodging by defendant Pilkington Visioncar [5:95-cv-20225] (jc, COURT STAFF) (Entered: 05/23/1995) |
| 05/16/1995 | 280 | PROOF OF SERVICE by defendant Pilkington Visioncar of Notice of lodging. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 05/23/1995) |
| 05/16/1995 | 281 | PROOF OF SERVICE by defendant Pilkington Visioncar of Documents # 276 thru 278. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 05/23/1995) |
| 05/16/1995 | 282 | TRIAL MINUTES: ( C/R Jo Ann Bryce) Further trial on 5/17/95 @ 9:00 am [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/06/1995) |
| 05/17/1995 | 283 | ORDER by Judge Robert P. Aguilar permitting Dr. Harwood to testify at trial ( Date Entered: 6/6/95) (cc: all counsel) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/06/1995) |
| 05/17/1995 | 284 | TRIAL MINUTES: ( C/R Jo Ann Bryce) Further trial on 5/22/95 @ 9:00 am. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/06/1995) |
| 05/17/1995 | 285 | DOCUMENTS AND INFORMATION pertaining to Pilkington's untimely designation of Harwood [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/06/1995) |
| 05/17/1995 | 286 | PRELIMINARY JURY INSTRUCTIONS read by the court to the jury before opening statements on 4/17/95 [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/06/1995) |
| 05/19/1995 | 287 | OPPOSITION by Plaintiff Dome Patent L.P. to motion for judgment barring recovery of damages on the basis of Laches [278-1] [5:95-cv-20225] (jc, COURT STAFF) |

|  |  | (Entered: 06/06/1995) |
|---|---|---|
| 05/22/1995 | 288 | TRIAL MINUTES: ( C/R Jo Ann Bryce) Further trial on 5/23/95 @ 9:00 am [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/06/1995) |
| 05/22/1995 | 289 | MEMORANDUM by Plaintiff Dome Patent L.P. in support of oral motion to reconsider the Tanaka ruling. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/06/1995) |
| 05/22/1995 | 290 | PROOF OF SERVICE by defendant Pilkington Visioncar of Defendant's proposed form of verdict. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/06/1995) |
| 05/22/1995 | 291 | AMENDED PROPOSED FORM OF VERDICT for Plaintiff Dome Patent L.P. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/06/1995) |
| 05/22/1995 | 292 | PROPOSED FORM OF VERDICT for defendant Pilkington Visioncar [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/06/1995) |
| 05/23/1995 | 293 | TRIAL MINUTES: ( C/R Jo Ann Bryce) Further trial on 5/24/95 @ 9:00 am [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/06/1995) |
| 05/23/1995 | 294 | EXHIBITS IN EVIDENCE [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/06/1995) |
| 05/23/1995 | 295 | ORDER by Judge Robert P. Aguilar overruling plaintiff's objections to proposed jury instructions ( Date Entered: 6/6/95) (cc: all counsel) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/06/1995) |
| 05/23/1995 | 296 | ORDER by Judge Robert P. Aguilar reconsidering Tanaka ruling ( Date Entered: 6/6/95) (cc: all counsel) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/06/1995) |
| 05/23/1995 | 297 | SUPPLEMENTAL JURY INSTRUCTIONS submitted by Plaintiff Dome Patent L.P. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/06/1995) |
| 05/23/1995 | 298 | OBJECTIONS by Plaintiff Dome Patent L.P. to proposed jury instructions [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/06/1995) |
| 05/23/1995 | 299 | MOTION before Judge Robert P. Aguilar by defendant Pilkington Visioncar for judgment for invalidity based upon lack of enablement [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/06/1995) |
| 05/23/1995 | 300 | MOTION before Judge Robert P. Aguilar by defendant Pilkington Visioncar denying award of enhanced damages [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/06/1995) |
| 05/23/1995 |  | RECEIVED Order re: Tanaka patent ( Plaintiff Dome Patent L.P. ) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/06/1995) |
| 05/23/1995 | 301 | OPPOSITION by defendant Pilkington Visioncar to Dome's 3rd motion for reconsideration of the Tanaka ruling [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/06/1995) |
| 05/24/1995 | 302 | ORDER by Judge Robert P. Aguilar authorizing Virginia S. Medlen to bring into court a portable computer ( Date Entered: 6/6/95) (cc: all counsel) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/06/1995) |

| 05/24/1995 | 303 | TRIAL MINUTES: ( C/R Jo Ann Bryce) Further trial on 5/25/95 @ 10:00 am [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/06/1995) |
| 05/24/1995 | 304 | ORDER by Judge Robert P. Aguilar denying motion for judgment barring recovery of damages on the basis of Laches [278-1] ( Date Entered: 6/6/95) (cc: all counsel) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/06/1995) |
| 05/24/1995 | 305 | ORIGINAL JURY INSTRUCTIONS given to jury [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/06/1995) |
| 05/24/1995 | 306 | PROPOSED FORM OF VERDICT for Plaintiff Dome Patent L.P. rejected by court [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/06/1995) |
| 05/24/1995 | 307 | VERDICT given to jury [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/06/1995) |
| 05/25/1995 | 308 | PROOF OF SERVICE by defendant Pilkington Visioncar of Opposition to 3rd motion for reconsideration of the Tanaka ruling; motion for judgment for invalidity based upon lack of enablement; motion denying award of enhanced damages. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/06/1995) |
| 05/25/1995 | 309 | TRIAL MINUTES: ( C/R Jo Ann Bryce) Further trial on 5/26/95 @ 8:00 am (Jury deliberating) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/06/1995) |
| 05/26/1995 | 310 | ORDER by Judge Robert P. Aguilar re: jury lunch ( Date Entered: 6/6/95) (cc: all counsel) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/06/1995) |
| 05/26/1995 | 311 | TRIAL MINUTES: ( C/R Jo Ann Bryce) Further trial on 5/30/95 @ 9:00 am (Jury Deliberating) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/06/1995) |
| 05/30/1995 | 312 | TRIAL MINUTES: ( C/R Jo Ann Bryce) Jury reached a verdict [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/06/1995) |
| 05/30/1995 | 313 | VERDICT for Plaintiff Dome Patent L.P. against defendant Pilkington Visioncar [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/06/1995) |
| 05/30/1995 | 314 | JURY ATTENDANCE SHEET for the month of May [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/06/1995) |
| 05/30/1995 | 315 | EXHIBIT and WITNESS list [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/06/1995) |
| 05/30/1995 | 316 | JURY NOTES begining 4/18/95 thru 5/30/95 [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/06/1995) |
| 06/01/1995 | 317 | BRIEF FILED in support of finding of obviousness by defendant Pilkington Visioncar [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/13/1995) |
| 06/01/1995 | 318 | OBJECTION by defendant Pilkington Visioncar to Plaintiff's proposed form of judgment. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/13/1995) |
| 06/01/1995 |  | RECEIVED judgment [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/13/1995) |
| 06/01/1995 | 319 | PROOF OF SERVICE by defendant Pilkington Visioncar of Documents # 317 & 318. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/13/1995) |
| 06/08/1995 | 320 | REPORTER'S TRANSCRIPT; Date of proceedings: 4/17/95 ( C/R: Jo Ann Bryce) Jury Trial (Volume 1) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/13/1995) |

| 06/08/1995 | 322 | REPORTER'S TRANSCRIPT; Date of proceedings: 4/19/95 ( C/R: Jo Ann Bryce) Jury Trial (Volume 3) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/13/1995) |
| 06/08/1995 | 323 | REPORTER'S TRANSCRIPT; Date of proceedings: 4/20/95 ( C/R: Jo Ann Bryce) Jury Trial (Volume 4) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/13/1995) |
| 06/08/1995 | 324 | REPORTER'S TRANSCRIPT; Date of proceedings: 6/8/95 ( C/R: Jo Ann Bryce) Jury Trial (Volume 5) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/13/1995) |
| 06/08/1995 | 325 | REPORTER'S TRANSCRIPT; Date of proceedings: 5/15/95 ( C/R: Jo Ann Bryce) Jury Trial (Volume 6) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/13/1995) |
| 06/08/1995 | 326 | REPORTER'S TRANSCRIPT; Date of proceedings: 5/16/95 ( C/R: Jo Ann Bryce) Jury Trial (Volume 7) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/13/1995) |
| 06/08/1995 | 327 | REPORTER'S TRANSCRIPT; Date of proceedings: 5/17/95 ( C/R: Jo Ann Bryce) Jury Trial (Volume 8) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/13/1995) |
| 06/08/1995 | 328 | REPORTER'S TRANSCRIPT; Date of proceedings: 5/22/95 ( C/R: Jo Ann Bryce) Jury Trial (Volume 9) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/13/1995) |
| 06/08/1995 | 329 | REPORTER'S TRANSCRIPT; Date of proceedings: 5/23/95 ( C/R: Jo Ann Bryce) Jury Trial (Volume 10) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/13/1995) |
| 06/08/1995 | 330 | REPORTER'S TRANSCRIPT; Date of proceedings: 5/24/95 ( C/R: Jo Ann Bryce) Jury Trial (Volume 11) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/13/1995) |
| 06/08/1995 | 331 | REPORTER'S TRANSCRIPT; Date of proceedings: 5/25/95 ( C/R: Jo Ann Bryce) Jury Trial Motions (Volume 12) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/13/1995) |
| 06/08/1995 | 332 | REPORTER'S TRANSCRIPT; Date of proceedings: 5/30/95 ( C/R: Jo Ann Bryce) Jury Trial Verdict (Volume 13) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/13/1995) |
| 06/09/1995 | 333 | MOTION before Judge Robert P. Aguilar by defendant Pilkington Visioncar for judgment as a matter of law or for a new trial based upon the insufficiency of the evidence to support the jury's verdict of infringement with Notice set for 6/30/95 @ 9:00 am. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/29/1995) |
| 06/14/1995 | 334 | APPLICATION before Judge Robert P. Aguilar by Plaintiff Dome Patent L.P. for continuance [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/29/1995) |
| 06/14/1995 |  | RECEIVED Order ( Plaintiff Dome Patent L.P. ) re: [334-1] [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/29/1995) |
| 06/14/1995 | 335 | ORDER by Judge Robert P. Aguilar: Rejecting proposed form of judgment ( Date Entered: 6/29/95) (cc: all counsel) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/29/1995) |
| 06/15/1995 | 336 | OPPOSITION by defendant Pilkington Visioncar to application for continuance [334-1] [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/29/1995) |
| 06/16/1995 | 337 | MEMORANDUM by Plaintiff Dome Patent L.P. re: judgment. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/29/1995) |

| 06/16/1995 | 338 | MEMORANDUM in REPLY by defendant Pilkington Visioncar re memorandum [337-1] [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/29/1995) |
| 06/16/1995 | 339 | OPPOSITION by Plaintiff Dome Patent L.P. to motion for judgment of obviousness [333-1] [5:95-cv-20225] (jc, COURT STAFF) (Entered: 06/29/1995) |
| 06/23/1995 | 340 | REPLY BRIEF in support of finding of obviousness by defendant Pilkington Visioncar [5:95-cv-20225] (jc, COURT STAFF) (Entered: 07/06/1995) |
| 06/23/1995 | 341 | OPPOSITION by Plaintiff Dome Patent L.P. to JMOL motion re infringement [5:95-cv-20225] (jc, COURT STAFF) (Entered: 07/06/1995) |
| 06/28/1995 | 342 | NOTICE OF MOTION AND MOTION before Judge Robert P. Aguilar by Plaintiff Dome Patent L.P. post trial motions with Notice set for 7/28/95 @ 9:00 am. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 07/06/1995) |
| 06/28/1995 | 343 | MEMORANDUM by Plaintiff Dome Patent L.P. in support of plaintiff's motion for attorneys' fees [5:95-cv-20225] (jc, COURT STAFF) (Entered: 07/06/1995) |
| 06/28/1995 | 344 | DECLARATION by Sutton on behalf of Plaintiff Dome Patent L.P. in support of award of attorneys fees. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 07/06/1995) |
| 06/28/1995 | 345 | DECLARATION by Yale on behalf of Plaintiff Dome Patent L.P. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 07/06/1995) |
| 06/28/1995 | 346 | MEMORANDUM by Plaintiff Dome Patent L.P. in support of motion for increased damages. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 07/06/1995) |
| 06/28/1995 | 347 | MEMORANDUM by Plaintiff Dome Patent L.P. in support of motion for prejudgment interest. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 07/06/1995) |
| 06/28/1995 | 348 | MEMORANDUM by Plaintiff Dome Patent L.P. in support of motion for injunction [5:95-cv-20225] (jc, COURT STAFF) (Entered: 07/06/1995) |
| 06/29/1995 | 349 | REPLY BRIEF by defendant Pilkington Visioncar re motion for judgment as a matter of law or for a new trial based upon the insufficiency of the evidence to support the jury's verdict of infringement [333-1] [5:95-cv-20225] (jc, COURT STAFF) (Entered: 07/06/1995) |
| 06/30/1995 | 350 | MINUTES: ( C/R Jo Ann Bryce) that the motion for judgment as a matter of law or for a new trial based upon the insufficiency of the evidence to support the jury's verdict of infringement [333-1] is submitted [5:95-cv-20225] (jc, COURT STAFF) (Entered: 07/19/1995) |
| 07/07/1995 | | RECEIVED Order re: JMOL motion for noninfringement ( defendant Pilkington Visioncar ) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 07/19/1995) |
| 07/07/1995 | | RECEIVED Judgment ( defendant Pilkington Visioncar ) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 07/19/1995) |
| 07/07/1995 | 351 | PROOF OF SERVICE by defendant Pilkington Visioncar of Proposed orders and proposed judgments [5:95-cv-20225] (jc, COURT STAFF) (Entered: 07/19/1995) |
| 07/13/1995 | 352 | MEMORANDUM by defendant Pilkington Visioncar in opposition to motion for increased damages [5:95-cv-20225] (jc, COURT STAFF) (Entered: 07/19/1995) |

| 07/13/1995 | 353 | MEMORANDUM by defendant Pilkington Visioncar in opposition to Dome's motion for prejudgment interest. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 07/19/1995) |
| 07/13/1995 | 354 | MEMORANDUM by defendant Pilkington Visioncar in opposition to motion for injunction [5:95-cv-20225] (jc, COURT STAFF) (Entered: 07/19/1995) |
| 07/13/1995 | 355 | MEMORANDUM by defendant Pilkington Visioncar in opposition to motion for attorneys' fees [5:95-cv-20225] (jc, COURT STAFF) (Entered: 07/19/1995) |
| 07/13/1995 | 356 | DECLARATION by James J. Smith on behalf of defendant Pilkington Visioncar re opposition memorandum [355-1] [5:95-cv-20225] (jc, COURT STAFF) (Entered: 07/19/1995) |
| 07/14/1995 | | RECEIVED Order re: motion for increased damages ( defendant Pilkington Visioncar ) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 07/19/1995) |
| 07/14/1995 | | RECEIVED Order re: motion for injunction ( defendant Pilkington Visioncar ) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 07/19/1995) |
| 07/14/1995 | | RECEIVED Order re: motion for attorneys' fees ( defendant Pilkington Visioncar ) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 07/19/1995) |
| 07/14/1995 | 357 | PROOF OF SERVICE by defendant Pilkington Visioncar of Documents # 352 thru 356. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 07/19/1995) |
| 07/21/1995 | 358 | REPLY by Plaintiff on attorney fees [5:95-cv-20225] (kk, COURT STAFF) (Entered: 07/27/1995) |
| 07/21/1995 | 359 | REPLY by Plaintiff Dome Patent L.P. re: increased damages [5:95-cv-20225] (kk, COURT STAFF) (Entered: 07/27/1995) |
| 07/21/1995 | 360 | INTEREST REPLY by Plaintiff Dome Patent L.P. [5:95-cv-20225] (kk, COURT STAFF) (Entered: 07/27/1995) |
| 07/21/1995 | 361 | INTEREST REPLY by Plaintiff Dome Patent L.P. [5:95-cv-20225] (kk, COURT STAFF) (Entered: 07/27/1995) |
| 07/28/1995 | 362 | MINUTES: ( C/R Jo Ann Bryce) granting motion for judgment as a matter of law or for a new trial based upon the insufficiency of the evidence to support the jury's verdict of infringement [333-1] [5:95-cv-20225] (jc, COURT STAFF) (Entered: 09/06/1995) |
| 08/18/1995 | 364 | ORDER by Judge Robert P. Aguilar granting motion for a new trial [333-1] ( Date Entered: 9/13/95) (cc: all counsel) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 09/13/1995) |
| 08/25/1995 | 365 | NOTICE OF MOTION AND MOTION before Judge Robert P. Aguilar by Plaintiff Dome Patent L.P. for reconsideration of the order of 8/18/95 with Notice set for 9/22/95 @ 9:00 am. [5:95-cv-20225] (jc, COURT STAFF) (Entered: 09/13/1995) |
| 08/25/1995 | 366 | MEMORANDUM by Plaintiff Dome Patent L.P. in support of motion for reconsideration of the order of 8/18/95 [365-1] [5:95-cv-20225] (jc, COURT STAFF) (Entered: 09/13/1995) |
| 08/29/1995 | 367 | REASSIGNMENT ORDER by Assignment Committee to reassign case to Senior Judge William H. Orrick; new case # C-95-3031-WHO ( Date Entered: 9/13/95) (cc: all counsel) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 09/13/1995) |

| 09/01/1995 | 363 | CLERK'S NOTICE Status conference set for 2:00 9/21/95; status conference statements due 7 days prior conference [5:95-cv-20225] (wk, COURT STAFF) (Entered: 09/08/1995) |
|---|---|---|
| 09/01/1995 | 368 | STIPULATION and ORDER by Judge Robert P. Aguilar : setting hearing on motion for reconsideration of the order of 8/18/95 [365-1] 9:00 10/12/95 (cc: all counsel) [5:95-cv-20225] (jc, COURT STAFF) (Entered: 09/13/1995) |
| 09/08/1995 | 374 | PROOF OF SERVICE by defendant Pilkington Visioncar of Stipulation and order to continue hearing on motion for reconsideration of 8/18/95. [3:95-cv-03031] (jc, COURT STAFF) (Entered: 09/26/1995) |
| 09/14/1995 | 369 | STATUS CONFERENCE REPORT by Pilkington Visioncar [3:95-cv-03031] (wk, COURT STAFF) (Entered: 09/19/1995) |
| 09/15/1995 | 370 | STATUS CONFERENCE STATEMENT by Plaintiff Dome Patent L.P. [3:95-cv-03031] (wk, COURT STAFF) (Entered: 09/19/1995) |
| 09/15/1995 | 371 | ORDER by Senior Judge William H. Orrick Status conference set for 2:00 9/21/95; Motion for reconsideration to be heard and decided by Judge Aguilar ( Date Entered: 9/19/95) (cc: all counsel) [3:95-cv-03031] (wk, COURT STAFF) (Entered: 09/19/1995) |
| 09/15/1995 | 372 | REPORTER'S TRANSCRIPT; Date of proceedings: 7/28/95 ( C/R: Jo Ann Bryce) minutes [362-1] [3:95-cv-03031] (wk, COURT STAFF) (Entered: 09/25/1995) |
| 09/21/1995 | 373 | MINUTES: ( C/R Carl Pline) Status Conference held 9/21/95 Case Management Conference set for 2:00 11/9/95; Judge Aguilar to hear motion for reconsideration re new trial on 10/12/95; Counsel request Court to review Judgment on the Verdict as it should be entered; Counsel to submit prepared Judgment on Verdicts for Court to review [3:95-cv-03031] (wk, COURT STAFF) (Entered: 09/25/1995) |
| 09/28/1995 | 375 | CROSS-MOTION by Counter-claimant Pilkington Visioncar for reconsideration of order granting new trial with Notice set for 10/12/95, 9:00 a.m. [3:95-cv-03031] (pb, COURT STAFF) (Entered: 10/05/1995) |
| 09/28/1995 | 376 | MEMORANDUM by defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar in support of motion for reconsideration of order granting new trial [375-1] [3:95-cv-03031] (pb, COURT STAFF) (Entered: 10/05/1995) |
| 09/28/1995 | 377 | DECLARATION by David R. Foley on behalf of defendant Pilkington Visioncar re motion for reconsideration of order granting new trial [375-1] [3:95-cv-03031] (pb, COURT STAFF) (Entered: 10/05/1995) |
| 10/05/1995 | 378 | NOTICE by Plaintiff Dome Patent L.P., Counter-defendant Dome Patent L.P. withdrawing motion for reconsideration of the order of 8/18/95 [365-1] [3:95-cv-03031] (pb, COURT STAFF) (Entered: 10/06/1995) |
| 10/11/1995 | 379 | NOTICE OF APPEAL by Plaintiff Dome Patent L.P. from Dist. Court decision order [364-1] pd [3:95-cv-03031] (wk, COURT STAFF) (Entered: 10/17/1995) |
| 10/11/1995 | | Copy of notice of appeal and docket sheet to all counsel [3:95-cv-03031] (wk, COURT STAFF) (Entered: 10/17/1995) |
| 10/11/1995 | | Docket fee notification form and case information sheet to USCA [379-1] [3:95-cv-03031] (wk, COURT STAFF) (Entered: 10/17/1995) |

| 10/12/1995 | 380 | MINUTES: ( C/R Brynn Dockstader) parties' mtn for reconsideration held before Judge Aguilar on 10/12/95; that the motion for reconsideration of order granting new trial [375-1] is submitted; that the motion for reconsideration of the order of 8/18/95 [365-1] is submitted Court to rule within 10 days [3:95-cv-03031] (wk, COURT STAFF) (Entered: 10/23/1995) |
|---|---|---|
| 10/13/1995 | 381 | REPORTER'S TRANSCRIPT; Date of proceedings: 10/12/95 ( C/R: Brynn Dockstader) minutes [380-1] [3:95-cv-03031] (wk, COURT STAFF) (Entered: 10/23/1995) |
| 10/20/1995 | 382 | TRANSMISSION OF RECORD by Dome Patent L.P. [3:95-cv-03031] (wk, COURT STAFF) (Entered: 10/23/1995) |
| 10/23/1995 | 384 | ORDER by Senior Judge William H. Orrick denying motions for reconsideration of order granting new trial [375-1] and [365-1] ( Date Entered: 11/7/95) (cc: all counsel) [3:95-cv-03031] (wk, COURT STAFF) (Entered: 11/07/1995) |
| 10/30/1995 | 383 | RECEIPT from USCA Fed. Cir. re reception of matter on appeal [3:95-cv-03031] (wk, COURT STAFF) (Entered: 10/30/1995) |
| 10/31/1995 | | NOTIFICATION by Circuit Court of Appellate Docket Number 96-1040 [3:95-cv-03031] (wk, COURT STAFF) (Entered: 11/07/1995) |
| 10/31/1995 | 385 | CERTIFIED COPY of USCA Order: ordering appellee, Pilkington Visioncare to respond within 30 days of date from date of Circuit Court order re petition for writ of mandamus [3:95-cv-03031] (wk, COURT STAFF) (Entered: 11/07/1995) |
| 11/06/1995 | 386 | NOTICE OF APPEAL by defendant Pilkington Visioncar from Dist. Court decision order [364-1], order [384-1] fee status : pd [3:95-cv-03031] (wk, COURT STAFF) (Entered: 11/07/1995) |
| 11/07/1995 | | Copy of notice of appeal and docket sheet to all counsel [3:95-cv-03031] (wk, COURT STAFF) (Entered: 11/07/1995) |
| 11/07/1995 | | Docket fee notification form and case information sheet to USCA [386-1] [3:95-cv-03031] (wk, COURT STAFF) (Entered: 11/07/1995) |
| 11/09/1995 | 387 | MINUTES: ( C/R Kay Hill) Case management conference held 11/9/95 Case Management Conference set for 2:00 3/7/96; case is before Federal Circuit [3:95-cv-03031] (wk, COURT STAFF) (Entered: 11/15/1995) |
| 11/21/1995 | 388 | LETTER dated 11/15/95 from James Mason Smith re Transcript Purchase Order [3:95-cv-03031] (wk, COURT STAFF) (Entered: 11/21/1995) |
| 11/21/1995 | 389 | REPORTER'S TRANSCRIPT; Date of proceedings: 6/30/95 ( C/R: Jo Ann Bryce) motion for judgment as a matter of law or for a new trial based upon the insufficiency of the evidence to support the jury's verdict of infringement [333-1] [3:95-cv-03031] (jc, COURT STAFF) (Entered: 11/28/1995) |
| 12/05/1995 | 390 | ORDER from USCA for the Federal Circuit; Dome's petition for a writ of mandamus is denied. ( Date Entered: 12/11/95) (cc: all counsel) [3:95-cv-03031] (cs, COURT STAFF) (Entered: 12/11/1995) |
| 12/05/1995 | 391 | NOTICE by defendant Pilkington Visioncar ntc of change of law firm name [3:95-cv-03031] (wk, COURT STAFF) (Entered: 12/15/1995) |

| 12/15/1995 | | NOTIFICATION by Circuit Court of Appellate Docket Number 96-1040 [3:95-cv-03031] (wk, COURT STAFF) (Entered: 12/15/1995) |
| --- | --- | --- |
| 01/17/1996 | 392 | CLERK'S NOTICE Status conference set for 2:00 2/15/96 ; [3:95-cv-03031] (cs, COURT STAFF) (Entered: 01/18/1996) |
| 02/08/1996 | 393 | STATUS CONFERENCE STATEMENT by defendant Pilkington Visioncar [3:95-cv-03031] (cs, COURT STAFF) (Entered: 02/09/1996) |
| 02/09/1996 | 394 | STATUS CONFERENCE STATEMENT by Plaintiff Dome Patent L.P. [3:95-cv-03031] (cs, COURT STAFF) (Entered: 02/12/1996) |
| 02/09/1996 | 395 | DECLARATION by John P. Sutton on behalf of Plaintiff [3:95-cv-03031] (cs, COURT STAFF) (Entered: 02/12/1996) |
| 02/15/1996 | 396 | MINUTES: ( C/R Joanne Bryce) Further case management conference held 2/15/96 Pretrial conference set for 2:00 10/24/96 ; Trial will be held 8:30 11/4/96 ; [3:95-cv-03031] (cs, COURT STAFF) (Entered: 02/16/1996) |
| 02/20/1996 | 397 | ORDER FOR CIVIL PRETRIAL CONFERENCE by Senior Judge William H. Orrick Trial will begin 11/4/96 at 8:30 a.m.; Pretrial conference will be held 10/24/96 at 2:00 p.m. ( Date Entered: 2/20/96) (cc: all counsel) [3:95-cv-03031] (cs, COURT STAFF) (Entered: 02/20/1996) |
| 02/20/1996 | 398 | CERTIFIED COPY of USCA Order: dismissing the appeal [386-1], dismissing the appeal [379-1]; each side shall bear its own costs. [3:95-cv-03031] (cs, COURT STAFF) (Entered: 03/01/1996) |
| 02/20/1996 | 399 | COPY of judgment from USCA dismissing the appeal [386-1], dismissing the appeal [379-1] [3:95-cv-03031] (cs, COURT STAFF) (Entered: 03/01/1996) |
| 03/01/1996 | 400 | CLERK'S NOTICE Case management conference scheduled for 3/7/96 is VACATED [3:95-cv-03031] (cs, COURT STAFF) (Entered: 03/04/1996) |
| 05/09/1996 | 401 | NOTICE OF MOTION AND MOTION before Senior Judge William H. Orrick by defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar to bifurcate trial with Notice set for 6/20/96 at 2:00 p.m. [3:95-cv-03031] (cs, COURT STAFF) (Entered: 05/10/1996) |
| 05/09/1996 | 401 | MEMORANDUM by defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar in support of motion to bifurcate trial [401-1] [3:95-cv-03031] (cs, COURT STAFF) (Entered: 05/10/1996) |
| 05/09/1996 | 402 | REQUEST FOR JUDICIAL NOTICE by defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar motion to bifurcate trial [401-1] [3:95-cv-03031] (cs, COURT STAFF) (Entered: 05/10/1996) |
| 05/09/1996 | 403 | DECLARATION by James M. Smith on behalf of defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar re motion to bifurcate trial [401-1] [3:95-cv-03031] (cs, COURT STAFF) (Entered: 05/10/1996) |
| 05/15/1996 | 404 | NOTICE by Plaintiff Dome Patent L.P., Counter-defendant Dome Patent L.P. of change of address of counsel. [3:95-cv-03031] (cs, COURT STAFF) (Entered: 05/20/1996) |

| 05/15/1996 | 405 | MEMORANDUM by Plaintiff Dome Patent L.P., Counter-defendant Dome Patent L.P. RE failure to seek leave of court. [3:95-cv-03031] (cs, COURT STAFF) (Entered: 05/20/1996) |
| 05/20/1996 | 406 | ORDER by Senior Judge William H. Orrick; The court does not view Pilkington's motion to bifurcate as a motion for reconsideration. Dome must file its opposition, if any, to the merits of Pilkington's motion to bifurcate no later than 5/30/96; Pilkington must file its reply brief, if any, no later than 6/6/96. The motion will be heard 6/20/96 at 2:00 p.m. as originally noticed. ( Date Entered: 5/22/96) (cc: all counsel) [3:95-cv-03031] (cs, COURT STAFF) (Entered: 05/22/1996) |
| 05/30/1996 | 407 | OPPOSITION by Plaintiff Dome Patent L.P., Counter-defendant Dome Patent L.P. to motion to bifurcate trial [401-1] [3:95-cv-03031] (cs, COURT STAFF) (Entered: 06/04/1996) |
| 06/06/1996 | 408 | REPLY by defendant re motion to bifurcate trial [401-1] [3:95-cv-03031] (cs, COURT STAFF) (Entered: 06/07/1996) |
| 06/06/1996 | 409 | DECLARATION by James M. Smith on behalf of defendant re motion to bifurcate trial [401-1] [3:95-cv-03031] (cs, COURT STAFF) (Entered: 06/07/1996) |
| 06/20/1996 | 410 | MINUTES: (C/R Peppina Thompson) Hearing held 6/20/96. Defendant's motion to bifurcate trial DEFERRED. Case continued to 8/12/96 at 8:30 a.m. for Markman hearing. Defendant's motion to bifurcate trial is deferred until after the Markman hearing. Counsel can file a motion to strike the hearing with attached declarations. [3:95-cv-03031] (cs, COURT STAFF) (Entered: 06/21/1996) |
| 06/21/1996 | 411 | ORDER by Senior Judge William H. Orrick rescheduling the Markman hearing for 8/26/96 at 8:30 a.m. ( Date Entered: 6/26/96) (cc: all counsel) [3:95-cv-03031] (cs, COURT STAFF) (Entered: 06/26/1996) |
| 06/28/1996 | 412 | DECLARATION by James M. Smith on behalf of Counter-claimant Pilkington Visioncar in support of motion to strike Markman hearing. [3:95-cv-03031] (cs, COURT STAFF) (Entered: 07/03/1996) |
| 07/01/1996 | 413 | STIPULATION and ORDER by Senior Judge William H. Orrick : That plaintiff Dome Patent L.P.'s opposition to the motion to strike Markman hearing shall be due on or before 7/18/96 and Defendant Pilkington Visioncare, Inc.'s reply shall be due on or before 7/25/96. (cc: all counsel) [3:95-cv-03031] (cs, COURT STAFF) (Entered: 07/05/1996) |
| 07/02/1996 | 414 | STIPULATION and ORDER by Senior Judge William H. Orrick : To shorten time; Plaintiff's opposition to the motion to strike Markman Hearing shall be due on or before 7/18/96, and defendant Pilkington Visioncare reply shall be due on or before 7/25/96. (cc: all counsel) [3:95-cv-03031] (cs, COURT STAFF) (Entered: 07/05/1996) |
| 07/17/1996 | 415 | OPPOSITION by Plaintiff Dome Patent L.P., Counter-defendant Dome Patent L.P. to motion to strike Markman Hearing. [3:95-cv-03031] (cs, COURT STAFF) (Entered: 07/18/1996) |
| 07/22/1996 | 416 | NOTICE OF MOTION AND MOTION before Senior Judge William H. Orrick by defendant Pilkington Visioncar RE meaning and scope of Claim 1 of the Neefe Patent (Markman Motion) with Notice set for 8/26/96 at 8:30 a.m. [3:95-cv-03031] (cs, COURT STAFF) (Entered: 07/23/1996) |

| 07/22/1996 | 417 | DECLARATION by James M. Smith on behalf of defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar re motion RE meaning and scope of Claim 1 of the Neefe Patent (Markman Motion) [416-1] [3:95-cv-03031] (cs, COURT STAFF) (Entered: 07/23/1996) |
| --- | --- | --- |
| 07/22/1996 | 418 | MOTION by Plaintiff Dome Patent L.P., Counter-defendant Dome Patent L.P. for construction of the patent and for summary judgment with Notice set for 8/21/96 at 2:00 p.m. [3:95-cv-03031] (cs, COURT STAFF) (Entered: 07/23/1996) |
| 07/22/1996 | 419 | DECLARATION by John P. Sutton on behalf of Plaintiff Dome Patent L.P., Counter-defendant Dome Patent L.P. re motion for construction of the patent and for summary judgment [418-1] [3:95-cv-03031] (cs, COURT STAFF) (Entered: 07/23/1996) |
| 07/24/1996 | 420 | MOTION by defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar to strike Markman Hearing and supporting memorandum of points and authorities [3:95-cv-03031] (cs, COURT STAFF) (Entered: 07/25/1996) |
| 07/25/1996 | 421 | REPLY by defendant to opposition to motion to strike Markman Hearing and supporting memorandum of points and authorities [420-1] [3:95-cv-03031] (ml, COURT STAFF) (Entered: 07/29/1996) |
| 07/25/1996 | 422 | SUPPLEMENTAL DECLARATION by James M. Smith on behalf of defendant re motion reply [421-1] [3:95-cv-03031] (ml, COURT STAFF) (Entered: 07/29/1996) |
| 07/29/1996 | 423 | NOTICE of hearing by Plaintiff setting motion for construction of the patent and for summary judgment [418-1] ; hearing set for 8:30 8/26/96 [3:95-cv-03031] (ml, COURT STAFF) (Entered: 07/29/1996) |
| 07/29/1996 | 424 | DECLARATION by Donald J. Lyman on behalf of Plaintiff re motion for construction of the patent and for summary judgment [418-1] [3:95-cv-03031] (ml, COURT STAFF) (Entered: 07/29/1996) |
| 08/01/1996 | 425 | MINUTES: ( C/R Roberta Rogers) denying motion to strike Markman Hearing and supporting memorandum of points and authorities [420-1] [3:95-cv-03031] (ml, COURT STAFF) (Entered: 08/02/1996) |
| 08/05/1996 | 426 | OPPOSITION by defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar to motion for construction of the patent and for summary judgment [418-1] [3:95-cv-03031] (cs, COURT STAFF) (Entered: 08/07/1996) |
| 08/05/1996 | 427 | REQUEST FOR JUDICIAL NOTICE by defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar opposition [426-1] [3:95-cv-03031] (cs, COURT STAFF) (Entered: 08/07/1996) |
| 08/05/1996 | 428 | DECLARATION by David R. Foley on behalf of defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar re opposition [426-1] [3:95-cv-03031] (cs, COURT STAFF) (Entered: 08/07/1996) |
| 08/05/1996 | 429 | OBJECTIONS by defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar to evidence. [3:95-cv-03031] (cs, COURT STAFF) (Entered: 08/07/1996) |
| 08/05/1996 | 430 | ORDER by Senior Judge William H. Orrick DENYING motion to strike Markman Hearing and supporting memorandum of points and authorities [420-1]; The parties must file with the court by 8/22/96 a list of the witnesses who are expected to testify at the Markman hearing, and a summary of their testimony. ( Date Entered: 8/7/96) (cc: |

| | | |
|---|---|---|
| | | all counsel) [3:95-cv-03031] (cs, COURT STAFF) (Entered: 08/07/1996) |
| 08/06/1996 | 431 | STATEMENT of facts by Plaintiff Dome Patent L.P., Counter-defendant Dome Patent L.P. [3:95-cv-03031] (cs, COURT STAFF) (Entered: 08/07/1996) |
| 08/07/1996 | 432 | OPPOSITION by Plaintiff, Counter-defendant to defendant's Markman motion. [3:95-cv-03031] (cs, COURT STAFF) (Entered: 08/08/1996) |
| 08/12/1996 | 433 | REPLY by defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar re opposition [432-1] [3:95-cv-03031] (cs, COURT STAFF) (Entered: 08/13/1996) |
| 08/12/1996 | 434 | STATEMENT of material facts not in dispute in response to plaintiff's statement of material facts not in dispute in response to plaintiff's statement of material facts not in dispute by defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar [3:95-cv-03031] (cs, COURT STAFF) (Entered: 08/13/1996) |
| 08/13/1996 | 435 | STIPULATION and ORDER by Senior Judge William H. Orrick : RE disclosure of expert testimony [see document for further information] (cc: all counsel) [3:95-cv-03031] (cs, COURT STAFF) (Entered: 08/14/1996) |
| 08/15/1996 | 436 | NOTICE by Plaintiff of supplemental citation of authority. [3:95-cv-03031] (cs, COURT STAFF) (Entered: 08/19/1996) |
| 08/16/1996 | 437 | REPORTER'S TRANSCRIPT; Date of proceedings: 8/1/96 ( C/R: Roberta L. Rogers) [3:95-cv-03031] (cs, COURT STAFF) (Entered: 08/20/1996) |
| 08/20/1996 | 438 | PROOF OF SERVICE by defendant Pilkington Visioncar of stipulation RE disclosure of expert testimony. [3:95-cv-03031] (cs, COURT STAFF) (Entered: 08/21/1996) |
| 08/21/1996 | 439 | EX-PARTE APPLICATION by defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar for informal resolution of discovery dispute [3:95-cv-03031] (cs, COURT STAFF) (Entered: 08/22/1996) |
| 08/21/1996 | 440 | DECLARATION by James M. Smith on behalf of defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar re motion for informal resolution of discovery dispute [439-1] [3:95-cv-03031] (cs, COURT STAFF) (Entered: 08/22/1996) |
| 08/22/1996 | 441 | NOTICE by Plaintiff Dome Patent L.P., Counter-defendant Dome Patent L.P. of witnesses to be called at Markman hearing. [3:95-cv-03031] (cs, COURT STAFF) (Entered: 08/26/1996) |
| 08/22/1996 | 442 | DESIGNATION OF WITNESS(ES) submitted by defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar [3:95-cv-03031] (cs, COURT STAFF) (Entered: 08/26/1996) |
| 08/22/1996 | 443 | BRIEF SUMMARY OF TESTIMONY of Dr. Donald J. Lyman at Markman Hearing by defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar [3:95-cv-03031] (cs, COURT STAFF) (Entered: 08/26/1996) |
| 08/23/1996 | 444 | AMENDMENT by defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar to statement [434-1] [3:95-cv-03031] (cs, COURT STAFF) (Entered: 08/27/1996) |
| 08/26/1996 | 445 | MINUTES: ( C/R Carl Pline) Markman hearing held 8/26/96. [3:95-cv-03031] (cs, COURT STAFF) (Entered: 08/28/1996) |

| 09/03/1996 | 446 | REPORTER'S TRANSCRIPT; Date of proceedings: 8/26/96 ( C/R: Carl R. Pline) [3:95-cv-03031] (cs, COURT STAFF) (Entered: 09/04/1996) |
| 09/26/1996 | 447 | TRIAL briefs submitted by defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar [3:95-cv-03031] (cs, COURT STAFF) (Entered: 09/27/1996) |
| 09/26/1996 | 448 | PRE-TRIAL STATEMENT by defendant Pilkington Visioncare. [3:95-cv-03031] (cs, COURT STAFF) (Entered: 09/27/1996) |
| 09/26/1996 | 449 | NARRATIVE WITNESS STATEMENT by defendant Pilkington Visioncar [3:95-cv-03031] (cs, COURT STAFF) (Entered: 09/27/1996) |
| 09/26/1996 | 450 | NOTICE of LODGING by defendant Pilkington Visioncar [3:95-cv-03031] (cs, COURT STAFF) (Entered: 09/27/1996) |
| 09/30/1996 | 451 | PRE-TRIAL STATEMENT by Plaintiff Dome Patent L.P., Counter-defendant Dome Patent L.P. [3:95-cv-03031] (cs, COURT STAFF) (Entered: 10/01/1996) |
| 10/04/1996 | 452 | MOTION by defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar to continue trial date [3:95-cv-03031] (cs, COURT STAFF) (Entered: 10/08/1996) |
| 10/04/1996 | 453 | DECLARATION by M. Scott Donahey on behalf of defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar re motion to continue trial date [452-1] [3:95-cv-03031] (cs, COURT STAFF) (Entered: 10/08/1996) |
| 10/16/1996 | 454 | MEMORANDUM DECISION AND ORDER: by Senior Judge William H. Orrick [see document for further information] ( Date Entered: 10/17/96) (cc: all counsel) [3:95-cv-03031] (cs, COURT STAFF) (Entered: 10/17/1996) |
| 10/16/1996 | 455 | ORDER by Senior Judge William H. Orrick DENYING plaintiff's motion for summary judgment. ( Date Entered: 10/17/96) (cc: all counsel) [3:95-cv-03031] (cs, COURT STAFF) (Entered: 10/17/1996) |
| 10/17/1996 | 456 | NOTICE by defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar of lodging. [3:95-cv-03031] (cs, COURT STAFF) (Entered: 10/18/1996) |
| 10/17/1996 | 457 | NOTICE by Plaintiff of lodging proposed order. [3:95-cv-03031] (cs, COURT STAFF) (Entered: 10/18/1996) |
| 10/24/1996 | 458 | MINUTES: ( C/R Kay Hill) Hearing held 10/24/96 Pretrial conference set for 2:00 1/23/97 ; Trial will be held 8:30 2/10/97 ; The defendant will re-file its motion for bifucation. [3:95-cv-03031] (cs, COURT STAFF) (Entered: 10/25/1996) |
| 10/28/1996 | 459 | ORDER by Senior Judge William H. Orrick that the trial date of 11/4/96 is VACATED and a new trial date is set for 2/10/97. Pretrial conference will be held on 1/23/97. ( Date Entered: 10/29/96) (cc: all counsel) [3:95-cv-03031] (cs, COURT STAFF) (Entered: 10/29/1996) |
| 10/31/1996 | 460 | RETURN OF SERVICE as to Attorney John P. Sutton executed on 10/4/96 [3:95-cv-03031] (cs, COURT STAFF) (Entered: 11/01/1996) |
| 10/31/1996 | 461 | MOTION with memorandum in support before Senior Judge William H. Orrick by defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar to bifurcate trial with Notice set for 12/5/96 at 2:00 p.m. [3:95-cv-03031] (cs, COURT STAFF) (Entered: 11/01/1996) |

| 10/31/1996 | 462 | REQUEST FOR JUDICIAL NOTICE by defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar motion to bifurcate trial [461-1] [3:95-cv-03031] (cs, COURT STAFF) (Entered: 11/01/1996) |
|---|---|---|
| 10/31/1996 | 463 | DECLARATION by James M. Smith on behalf of defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar re motion to bifurcate trial [461-1] [3:95-cv-03031] (cs, COURT STAFF) (Entered: 11/01/1996) |
| 11/05/1996 | 464 | RETURN OF SERVICE as to John P. sutton executed on 10/31/96 [3:95-cv-03031] (cs, COURT STAFF) (Entered: 11/06/1996) |
| 11/07/1996 | 465 | NOTICE by Plaintiff, Counter-defendant that on 12/12/96 plaintiff will move for the entry of judgment pursuant to the Pilkington motion during trial. [3:95-cv-03031] (cs, COURT STAFF) (Entered: 11/08/1996) |
| 11/14/1996 | 466 | OPPOSITION by Plaintiff Dome Patent L.P., Counter-defendant Dome Patent L.P. to motion to bifurcate trial [461-1] [3:95-cv-03031] (cs, COURT STAFF) (Entered: 11/15/1996) |
| 11/21/1996 | 467 | OPPOSITION by defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar to Dome's motion for judgment. [3:95-cv-03031] (cs, COURT STAFF) (Entered: 11/22/1996) |
| 11/21/1996 | 468 | DECLARATION by M. Scott Donahey on behalf of defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar re opposition [467-1] [3:95-cv-03031] (cs, COURT STAFF) (Entered: 11/22/1996) |
| 11/21/1996 | 469 | REPLY by defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar re motion to bifurcate trial [461-1] [3:95-cv-03031] (cs, COURT STAFF) (Entered: 11/22/1996) |
| 11/21/1996 | 470 | DECLARATION by M. Scott Donahey on behalf of defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar re motion to bifurcate trial [461-1] [3:95-cv-03031] (cs, COURT STAFF) (Entered: 11/22/1996) |
| 11/22/1996 | 471 | STIPULATION and ORDER by Senior Judge William H. Orrick : cutoff date for expert discovery is 12/1/96 ; (cc: all counsel) [3:95-cv-03031] (ml, COURT STAFF) (Entered: 11/27/1996) |
| 11/29/1996 | 472 | DECLARATION OF SERVICE by DEFT/Cntclmt Pilkington Visioncar of order [471-2] [3:95-cv-03031] (lcc, COURT STAFF) (Entered: 11/29/1996) |
| 12/03/1996 | 473 | FINAL PRETRIAL ORDER by Senior Judge William H. Orrick; DENYING plaintiff's motion for judgment under Rule 54(c); GRANTING motion to bifurcate trial [461-1]; GRANTING the parties' motion for additional limited discovery Pretrial conference set for 2:00 1/30/97 ; ( Date Entered: 12/3/96) (cc: all counsel) [3:95-cv-03031] (cs, COURT STAFF) (Entered: 12/03/1996) |
| 12/26/1996 | 474 | MOTION before Senior Judge William H. Orrick by defendant in limine to limit all references to the prior trial to the term "prior proceeding" [3:95-cv-03031] (slh, COURT STAFF) (Entered: 12/27/1996) |
| 12/26/1996 | 475 | MOTION before Senior Judge William H. Orrick by defendant in limine to preclude evidence re: prior verdict [3:95-cv-03031] (slh, COURT STAFF) (Entered: 12/27/1996) |

| | | |
|---|---|---|
| 12/26/1996 | 476 | DECLARATION by Christopher L. Wanger on behalf of defendant re motion in limine to preclude evidence re: prior verdict [475-1] [3:95-cv-03031] (slh, COURT STAFF) (Entered: 12/27/1996) |
| 12/26/1996 | 477 | MOTION before Senior Judge William H. Orrick by defendant in limine to exclude evidence of its size, wealth, and foreign status of its parent corporation [3:95-cv-03031] (slh, COURT STAFF) (Entered: 12/27/1996) |
| 12/26/1996 | 478 | MOTION before Senior Judge William H. Orrick by defendant in limine to exclude evidence of damages prior to assignment of patent to dome [3:95-cv-03031] (slh, COURT STAFF) (Entered: 12/27/1996) |
| 12/26/1996 | 479 | DECLARATION by Christopher L. Wanger on behalf of defendant re motion in limine to exclude evidence of damages prior to assignment of patent to dome [478-1] [3:95-cv-03031] (slh, COURT STAFF) (Entered: 12/27/1996) |
| 12/26/1996 | 480 | MOTION before Senior Judge William H. Orrick by Plaintiff in limine to exclude testimony and documentary evidence [3:95-cv-03031] (slh, COURT STAFF) (Entered: 12/27/1996) |
| 12/26/1996 | 481 | DECLARATION by Christopher L. Wanger on behalf of deft/cntclmt Pilkington Visioncar in support re motion in limine to exclude evidence of its size, wealth, and foreign status of its parent corporation [477-1] [3:95-cv-03031] (lcc, COURT STAFF) (Entered: 12/30/1996) |
| 01/02/1997 | 482 | PRE-TRIAL STATEMENT by Plaintiff Dome Patent L.P., Counter-defendant Dome Patent L.P. [3:95-cv-03031] (cs, COURT STAFF) (Entered: 01/03/1997) |
| 01/02/1997 | 483 | EXHIBIT list by Plaintiff Dome Patent L.P., Counter-defendant Dome Patent L.P. [3:95-cv-03031] (cs, COURT STAFF) (Entered: 01/03/1997) |
| 01/02/1997 | 484 | DESIGNATION OF TRIAL WITNESS(ES) submitted by Plaintiff Dome Patent L.P., Counter-defendant Dome Patent L.P. [3:95-cv-03031] (cs, COURT STAFF) (Entered: 01/03/1997) |
| 01/02/1997 | 485 | TRIAL briefs submitted by Plaintiff Dome Patent L.P., Counter-defendant Dome Patent L.P. [3:95-cv-03031] (cs, COURT STAFF) (Entered: 01/03/1997) |
| 01/02/1997 | 486 | WITNESS STATEMENT by defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar [3:95-cv-03031] (cs, COURT STAFF) (Entered: 01/03/1997) |
| 01/02/1997 | 487 | TRIAL briefs submitted by defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar [3:95-cv-03031] (cs, COURT STAFF) (Entered: 01/03/1997) |
| 01/02/1997 | 488 | NOTICE by defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar of lodging. [3:95-cv-03031] (cs, COURT STAFF) (Entered: 01/03/1997) |
| 01/02/1997 | 489 | PRE-TRIAL CONFERENCE STATEMENT by defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar [3:95-cv-03031] (cs, COURT STAFF) (Entered: 01/03/1997) |
| 01/02/1997 | 490 | PROOF OF SERVICE by defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar of list [483-1] [3:95-cv-03031] (cs, COURT STAFF) (Entered: 01/03/1997) |
| 01/09/1997 | 491 | OPPOSITION by defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar to motion in limine to exclude testimony and documentary evidence [480-1] |

| | | [3:95-cv-03031] (cs, COURT STAFF) (Entered: 01/09/1997) |
|---|---|---|
| 01/09/1997 | 492 | DECLARATION by Christopher L. Wanger on behalf of defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar re opposition [491-1] [3:95-cv-03031] (cs, COURT STAFF) (Entered: 01/09/1997) |
| 01/09/1997 | 493 | OPPOSITION by Plaintiff Dome Patent L.P., Counter-defendant Dome Patent L.P. to motion in limine to preclude evidence re: prior verdict [475-1], motion in limine to limit all references to the prior trial to the term "prior proceeding" [474-1] [3:95-cv-03031] (cs, COURT STAFF) (Entered: 01/09/1997) |
| 01/09/1997 | 494 | OPPOSITION by Plaintiff Dome Patent L.P., Counter-defendant Dome Patent L.P. to motion in limine to exclude evidence of damages prior to assignment of patent to dome [478-1] [3:95-cv-03031] (cs, COURT STAFF) (Entered: 01/09/1997) |
| 01/09/1997 | 495 | PROOF OF SERVICE by Plaintiff of opposition [493-1], opposition [494-1] [3:95-cv-03031] (cs, COURT STAFF) (Entered: 01/09/1997) |
| 01/10/1997 | 496 | OPPOSITION by Plaintiff Dome Patent L.P., Counter-defendant Dome Patent L.P. to motion in limine RE Pilkington PLC. [3:95-cv-03031] (cs, COURT STAFF) (Entered: 01/13/1997) |
| 01/16/1997 | 497 | REPLY by defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar re motion in limine to exclude evidence of its size, wealth, and foreign status of its parent corporation [477-1] [3:95-cv-03031] (cs, COURT STAFF) (Entered: 01/16/1997) |
| 01/16/1997 | 498 | REPLY by defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar re motion in limine to exclude evidence of damages prior to assignment of patent to dome [478-1] [3:95-cv-03031] (cs, COURT STAFF) (Entered: 01/16/1997) |
| 01/16/1997 | 499 | REPLY by defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar re motion in limine to limit all references to the prior trial to the term "prior proceeding" [474-1] [3:95-cv-03031] (cs, COURT STAFF) (Entered: 01/16/1997) |
| 01/16/1997 | 500 | REPLY by defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar re motion in limine to preclude evidence re: prior verdict [475-1] [3:95-cv-03031] (cs, COURT STAFF) (Entered: 01/16/1997) |
| 01/16/1997 | 501 | PROPOSED VOIR DIRE submitted by defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar [3:95-cv-03031] (cs, COURT STAFF) (Entered: 01/16/1997) |
| 01/16/1997 | 502 | OPPOSITION by defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar to brief [485-1] [3:95-cv-03031] (cs, COURT STAFF) (Entered: 01/16/1997) |
| 01/16/1997 | 503 | DECLARATION by Christopher L. Wanger on behalf of defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar re opposition [502-1] [3:95-cv-03031] (cs, COURT STAFF) (Entered: 01/16/1997) |
| 01/16/1997 | 504 | PROOF OF SERVICE by defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar of form of verdict as to Phase I and of form of verdict as to Phase II. [3:95-cv-03031] (cs, COURT STAFF) (Entered: 01/16/1997) |
| 01/16/1997 | 505 | OPPOSITION by Plaintiff Dome Patent L.P., Counter-defendant Dome Patent L.P. to brief [487-1] [3:95-cv-03031] (cs, COURT STAFF) (Entered: 01/16/1997) |

| | | |
|---|---|---|
| 01/16/1997 | 506 | REPLY by Plaintiff Dome Patent L.P., Counter-defendant Dome Patent L.P. re opposition [491-1] [3:95-cv-03031] (cs, COURT STAFF) (Entered: 01/16/1997) |
| 01/16/1997 | 507 | OPPOSITION by Plaintiff Dome Patent L.P., Counter-defendant Dome Patent L.P. to motion in limine RE Pilkington P.L.C. [3:95-cv-03031] (cs, COURT STAFF) (Entered: 01/16/1997) |
| 01/21/1997 | 508 | PROPOSED JURY INSTRUCTIONS submitted by Plaintiff [3:95-cv-03031] (cs, COURT STAFF) (Entered: 01/22/1997) |
| 01/21/1997 | 509 | PROOF OF SERVICE by defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar of jury [508-1] [3:95-cv-03031] (cs, COURT STAFF) (Entered: 01/22/1997) |
| 01/22/1997 | 510 | MOTION by Plaintiff Dome Patent L.P., Counter-defendant Dome Patent L.P. to extend time [3:95-cv-03031] (cs, COURT STAFF) (Entered: 01/23/1997) |
| 01/22/1997 | 511 | DECLARATION by John P. Sutton on behalf of Plaintiff Dome Patent L.P., Counter-defendant Dome Patent L.P. re motion to extend time [510-1] [3:95-cv-03031] (cs, COURT STAFF) (Entered: 01/23/1997) |
| 01/22/1997 | 512 | SECOND SUPPLEMENTTAL REPORT of James McGrath by Plaintiff Dome Patent L.P., Counter-defendant Dome Patent L.P. [3:95-cv-03031] (cs, COURT STAFF) (Entered: 01/23/1997) |
| 01/22/1997 | 513 | NOTICE by Plaintiff Dome Patent L.P., Counter-defendant Dome Patent L.P. of motion. [3:95-cv-03031] (cs, COURT STAFF) (Entered: 01/23/1997) |
| 01/22/1997 | 514 | PROOF OF SERVICE by Plaintiff Dome Patent L.P., Counter-defendant Dome Patent L.P. of motion to extend time [510-1], declaration [511-1], [512-1], notice [513-1] [3:95-cv-03031] (cs, COURT STAFF) (Entered: 01/23/1997) |
| 01/23/1997 | 515 | OBJECTIONS by defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar to Dome Patent L.P.'s proposed form of verdict. [3:95-cv-03031] (cs, COURT STAFF) (Entered: 01/27/1997) |
| 01/23/1997 | 516 | REPLY by defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar re brief [487-1] [3:95-cv-03031] (cs, COURT STAFF) (Entered: 01/27/1997) |
| 01/23/1997 | 517 | NOTICE by defendant Pilkington Visioncar, Counter-claimant Pilkington Visioncar of lodging. [3:95-cv-03031] (cs, COURT STAFF) (Entered: 01/27/1997) |
| 01/27/1997 | 518 | LETTER to Judge Orrick dated 1/24/97 from M. Scott Donahey requesting that this matter be taken off calendar. [3:95-cv-03031] (cs, COURT STAFF) (Entered: 01/28/1997) |
| 01/27/1997 | 519 | ORDER by Senior Judge William H. Orrick dismissing case with prejudice however, that if any party hereto shall certify to this court, with proof of service of a copy thereon on opposing counsel, within 90 days from the date hereof, that the agreed consideration for said settlement has not been delivered over, the foregoing order shall stand vacated and this action shall forthwith be restored to the calendar to be set for trial. ( Date Entered: 1/28/97) (cc: all counsel) [3:95-cv-03031] (cs, COURT STAFF) (Entered: 01/28/1997) |

## PACER Service Center

| Transaction Receipt | | | |
|---|---|---|---|
| 01/24/2008 09:56:39 | | | |
| **PACER Login:** | ff0658 | **Client Code:** | 31128-2 |
| **Description:** | Docket Report | **Search Criteria:** | 3:95-cv-03031-WHO |
| **Billable Pages:** | 26 | **Cost:** | 2.08 |

EXHIBIT 7

RECEIVED

AUG 0 4 1995

HAVEN___ __ __ MEOLER
C____ __

FILED

MAY 3 0 1995

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE



UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DOME PATENT L.P.,<br>a California limited partnership,<br><br>    Plaintiff and Counter-Defendant,<br><br>vs.<br><br>PILKINGTON VISIONCARE, INC.,<br>a Delaware corporation (d.b.a. Paragon Optical<br>and Sola Barnes Hind),<br><br>    Defendant and Counter-Claimant.<br><br>and Related Counter-Claim | NO. C 95-20225 RPA |

**VERDICT**

**VERDICT**
**WITH INTERROGATORIES**

We, the jury, unanimously find as follows:

Interrogatories As To Validity: Obviousness

Scope and Content of the Prior Art

1.    Do you find that the Tanaka patent teaches the use of oxygen permeable crosslinking agents selected from the class of multifunctional siloxanyl alkyl esters?

Yes _____    No _✓_

2.    Do you find that the Deichert patent teaches the use of oxygen permeable crosslinking agents selected from the class of multifunctional siloxanyl alkyl esters?

Yes _✓_    No _____

Presence of Differences Between The Relevant Prior Art and The Alleged Invention

3.    Do you find that the invention described in Claim 1 of the Neefe patent added anything to what was already known about how to manufacture TRIS?

Yes _____    No _✓_

4.    Do you find that the invention described in Claim 1 of the Neefe patent added anything to what was already known about the ability to increase the oxygen permeability of a contact lens material by using an oxygen permeable crosslinking agent selected from the class of multifunctional siloxanyl alkyl esters?

Yes _✓_    No _____

Level of Ordinary Skill

5.    Do you find that the level of ordinary skill in the art of making oxygen permeable contact lens materials at the time of the alleged invention included knowledge of organic chemistry?

Yes _✓_    No _____

6.      Do you find that the level of ordinary skill in the art of making oxygen permeable contact lens materials at the time of the alleged invention included knowledge of silicone chemistry?

Yes __✓__     No _____

7.      Do you find that the level of ordinary skill in the art of making oxygen permeable contact lens materials at the time of the alleged invention included knowledge of the use of oxygen permeable crosslinking agents selected from the class of multifunctional siloxanyl alkyl esters?

Yes __✓__     No _____

<u>Interrogatories As To Validity: Enablement</u>

8.      Do you find that Pilkington has proven by clear and convincing evidence that the description in the Neefe patent of the invention set forth in Claim 1 was not sufficiently detailed to enable any person skilled in the art to make and use the invention from the description without unreasonable experimentation or additional skill?

Yes _____     No __✓__

     If you answered "yes" to question number 8, then you must answer "yes" to question number 9.

     If you answered "no" to question number 8, then you must answer "no" to question number 9.

9.      Do you find that Pilkington has proven by clear and convincing evidence that the Neefe patent is invalid for lack of enablement?

Yes_____ No __✓__

///

///

///

2

## Verdict As To Infringement: Application Of The Doctrine Of Equivalents

10.    Do you find that Dome has proven by a preponderance of the evidence that the accused process has substantially the same overall function as the process disclosed in Claim 1 of the Neefe patent as the Court has explained it to you?

Yes ___✓___    No _____

If you answered "yes" to question number 10, please go to question number 11.

If you answered "no" to question number 10, please go to question number 14.

11.    Do you find that Dome has proven by a preponderance of the evidence that the accused process operates in substantially the same way as the process disclosed in Claim 1 of the Neefe patent as the Court has explained it to you?

Yes ___✓___    No _____

If you answered "yes" to question number 11, please go to question number 12.

If you answered "no" to question number 11, please go to question number 14.

12.    Do you find that Dome has proven by a preponderance of the evidence that the accused process achieves substantially the same result as the process disclosed in Claim 1 of the Neefe patent as the Court has explained it to you?

Yes ___✓___    No _____

If you answered "yes" to question number 12, please go to question number 13.

If you answered "no" to question number 12, please go to question number 14

13.    Do you find that Dome has proven by a preponderance of the evidence that each and every step of Claim 1 of the Neefe patent, as the Court has explained it to you, is literally present, or has some substantially equivalent corresponding step in the accused process.

Yes ___✓___    No _____

If you answered "yes" to **all** questions 10, 11, 12, **and** 13, then your answer to question number 14 must be "yes."

If you answered "no" to **any** of the questions 10, 11, 12, **or** 13, then your answer to question number 14 must be "no."

3

14.    If the court determines that the doctrine of equivalence applies, do you find that Dome has proven by a preponderance of the evidence that the accused process infringes Claim 1 of the Neefe patent, as the Court has explained it to you, by application of the doctrine of equivalents?

Yes __✓__    No _____

**If you answered "yes" to question number 9, then you do not have to answer the following interrogatories.**

**If you answered "no" to question number 14, then you do not have to answer the following interrogatories.**

Interrogatories As To Laches

15.    Do you find that Dome or the prior owners of the Neefe patent knew or in the exercise of reasonable diligence should have known of the allegedly infringing activity on or before December 8, 1986, which is six years prior to the date that Dome filed its complaint against Pilkington?

Yes _____    No __✓__

If your answer to question number 15 was "no," then please skip question number 16 and go to question number 17.

If your answer to question number 15 was "yes," then please go to question number 16.

16.    Do you find that Dome has proven by clear and convincing evidence that the delay in bringing suit was not unreasonable and not prejudicial?

Yes _____    No _____

If your answer to question number 16 was "yes," then please go to question number 19 and answer it "no."

If your answer to question number 16 was "no," then please go to question number 19, and answer it "yes."

4

17.    Do you find that Pilkington has proven by a preponderance of the evidence that Dome and the prior owners of the Neefe patent unreasonably and inexcusably delayed in bringing suit?

Yes _____    No __✓__

If your answer to question number 17 was "yes," then please go to question number 18.

If your answer to question number 17 was "no," then please go to question number 19 and answer it "no."

18.    Do you find that Pilkington has proven by a preponderance of the evidence that this delay was prejudicial to Pilkington?

Yes _____    No _____

If your answer to question number 18 is "yes," then please go to question number 19 and answer it "yes."

If your answer to question number 18 is "no," then please go to question number 19 and answer it "no."

19.    Do you find that Dome is barred from recovering damages for any infringement that allegedly occurred prior to December 8, 1992?

Yes _____    No __✓__

Interrogatories As To Damages

20.    Do you find that Dome has proven by a preponderance of the evidence the reasonable royalty that it should be awarded for the allegedly infringing use of the process described in Claim 1 of the Neefe patent as the Court has explained it to you?

Yes __✓__    No _____

If your answer to question number 20 was "no," then you should not answer any further questions.

If your answer to question number 20 was "yes," then you must answer question number 21.

5

21.    State what would have been the reasonable royalty rate <u>as of the date of initial</u> <u>infringement.</u>

*5 % of sales*

If you answered question number 21, then you must answer the following question.

22.    What is the amount of reasonable royalty at the rate you determined in your answer to question number 21.

*# 4,250,000.00*

<u>Interrogatories As To Willful Infringement</u>

23.    Do you find that Dome has proven by clear and convincing evidence that Pilkington actually knew of the Neefe patent?

Yes  ✓        No  _____

24.    If your answer to question number 23 is "yes," then when do you find that Pilkington first learned of the Neefe patent?    *11/1/89*

25.    Do you find that Dome has proven by clear and convincing evidence that Pilkington lacked any reasonable basis for believing that the Neefe patent was invalid?

Yes  _____        No  ✓

26.    Do you find that Dome has proven by clear and convincing evidence that Pilkington lacked any reasonable basis for believing that Pilkington's process did not infringe Claim 1 of the Neefe patent as the Court has explained it to you?

Yes  _____        No  ✓

DATE:  *5/30/95*

Foreperson:  _____

6

EXHIBIT 8

# United States Patent [19]

**Neefe**

[11] **4,306,042**

[45] **Dec. 15, 1981**

[54] **METHOD OF MAKING A CONTACT LENS MATERIAL WITH INCREASED OXYGEN PERMEABILITY**

[76] Inventor: **Russell A. Neefe,** P.O. Box 429, Big Spring, Tex. 79720

[21] Appl. No.: **185,000**

[22] Filed: **Sep. 8, 1980**

[51] Int. Cl.³ ......................... **C08F 2/00; C08F 30/08; C08F 230/08**

[52] U.S. Cl. ................................ **526/75;** 204/159.13; 264/1.1; 526/279; 556/433

[58] Field of Search ..................... 526/279, 75; 264/1; 556/433; 204/159.13

[56] **References Cited**

**U.S. PATENT DOCUMENTS**

| | | | |
|---|---|---|---|
| 3,808,178 | 4/1974 | Gaylord ............................... | 526/279 |
| 4,152,508 | 5/1979 | Ellis et al. ..... ...................... | 526/279 |
| 4,153,641 | 5/1979 | Deichert et al. ..................... | 526/279 |
| 4,189,546 | 2/1980 | Deichert et al. ..................... | 528/26 |

*Primary Examiner*—Herbert J. Lilling

[57] **ABSTRACT**

An oxygen permeable contact lens fabricated from a copolymer of a (a) siloxanyl alkylester, an ester derivative of acrylic or methacrylic acid, surface wetting agent and an oxygen permeable crosslinking agent. The copolymer can be made either hard, soft or elasticmeric with improved oxygen permeability.

**4 Claims, No Drawings**

4,306,042

| 1 | 2 |

## METHOD OF MAKING A CONTACT LENS MATERIAL WITH INCREASED OXYGEN PERMEABILITY

### BACKGROUND OF THE INVENTION

The human cornea is an independent organism that obtains its life sustaining oxygen from the tears of the eye. The oxygen consumption rate of the human cornea is approximated to be 2.8 ml/cm²-hr. This value has been determined by Jauregui and Fatt, "Estimation of the Vivo Oxygen Consumption of the Human Corneal Epthelium", in the American Journal of Optometry and Archives of American Academy of Optometry, June 1972, page 507.

Contact lenses have been made from various materials since the early 1950's. Table I illustrates some of the materials, the common term, its composition and its disadvantages.

### TABLE I

| COMMON TERM | COMMON COMPOSITION | DISADVANTAGE |
|---|---|---|
| Hard | 95% + Poly-methylmethacrylate | Very low gas permeability |
| Semi-Rigid | 90% + Cellulose Acetate Butyrate | Poor stability |
| Soft | 60% + Polyhydroxy-Methacrylate | Poor durability |
| PMMA/Silicone | 40%–60% Poly-methylmethacrylate & 40%–60% Siloxanyl alkyl ester | Marginal oxygen permeability & stability |
| Silicone | 10%–90% Phenyl-siloxanes and 10%–90% Methylvinylsiloxanes | Poor surface wettability & poor durability |

Attempts have been made in correcting these disadvantages. Some of these attempts have been some what successful, but not entirely. In U.S. Pat. No. 4,152,508, they deal with stability, but the increasing of oxygen permeability was never really attained, due to the use of non-oxygen permeable crosslinking agents. The use of dimethacrylates (the preferred embodiments) did improve the stability over that of U.S. Pat. No. 3,808,178, but did decrease oxygen permeability to some degree. Thus, a material with excellent oxygen and carbon dioxide permeability is preferably for metabolic action of the cornea. The surface of the material must be wettable and compatible with fluids of the eye.

### SUMMARY OF THE INVENTION

The primary object of this invention is to provide a novel contact lens material which is prepared from a combination of monomers so as to have high oxygen, carbon dioxide permeability and a hydrophilic surface. It would be preferable to have sufficient mechanical strength to permit precision machining and polishing. Although, lenses could be fabricated by casting or molding if an elastomeric material is preferable.

According to the invention a contact lens material is prepared by copolymerizing:

(a) from 5 to 90% by weight of a siloxanyl alkyl ester monomer with;

(b) from 3 to 90% by weight of an ester of acrylic or methacrylic acid;

(c) from 0.5 to 90% by weight of a surface wetting agent;

(d) from 0.01 to 90% by weight of an oxygen permeable crosslinking agent.

Representatives of (a) a siloxanyl alkyl ester monomers included but not restricted to the following:
Methacryloxypropylheptamethylcyclotetrasiloxane
Methyldi(trimethylsiloxy)-methacryloxymethylsilane
n-pentylhexamethyltrisiloxanylmethyl methacrylate
Pentamethyldisilanyldi(trimethylsiloxy)acryloxyme-thylsilane
tris(pentamethyldisiloxy)methacryloxyproplsilane
tri-i-propyltetramethyltrisiloxanylethyl acrylate
1,1,1 tris(trimethylsiloxy)methacryloxypropylsilane

Representatives of (b) an ester derivatives of acrylic or methacrylic acid monomer include but not restricted:

| Butyl | acrylate and methacrylate |
|---|---|
| Ethyl | acrylate and methacrylate |
| 2-ethyl | acrylate and methacrylate |
| Glycidyl | acrylate and methacrylate |
| Hexyl | acrylate and methacrylate |
| Lauryl | acrylate and methacrylate |
| Methyl | acrylate and methacrylate |
| Stearyl | acrylate and methacrylate |

Representatives of (c) a surface wetting agent include but not restricted:
Acrylamide
t-Butylaminoethyl methacrylate
Dimethylaminoethylacrylate and methacrylate
N-(1,1-Dimethyl-3-Oxobutyl)-acrylamide
Ethylene Gylcol Monoacrylate and Monomethacrylate
Glacial acrylic and methacrylic acid
Glycidyl acrylate and methacrylate
Propylene glycol monoacrylate and monomethacrylate
Methacrylamide
Morpholinoethyl acrylate and methacrylate
Piperidinoethyl acrylate and methacrylate
Triethylene glycol methacrylate
N-vinyl pyrrolidone

The preferred (d) oxygen permeable crosslinking agents include but not restricted to the following:
Dimers, trimers and tetramers of (a) siloxanyl alkylesters
N-(1,1-Dimethyl-3-Oxobutyl)-acrylamide
1,3 Bis(glycidoxypropyl)tetramethyldisiloxane
Divinyl Diphenyl Silane
Tetravinylsilane
Vinyl Trialloxyl Silane
Vinyl Trichloro Silane
Propylene Glycol Monoacrylate and monomethacrylate
Ethylenglycol monoacrylate and monomethacrylate

The copolymers of this invention is prepared by conventional polymerization by either free radical initiators or by photoinitiators. Representatives of free radical initiators include but not restricted:
Acetyl Peroxide
2,2,Azobis(2-methylpropinitrile)
Benzoyl peroxide
t-Butyl peroctoate
Caprylyl peroxide
Decanoyl peroxide
Diisopropyl peroxydicarbonate
2,5-dimethyl-2,5-bis(2-ethyl hexanoylperoxy)hexane
Lauroyl peroxide
Tertiarybutyl peroctoate
Tertiarybutyl peroxypivalate

4,306,042

| 3 | 4 |

Representatives of photo-initiators include but not restricted:

Benzoin

Benzophenone

2,2 Azobis(2-methylpropionitrile)

### THE PREFERRED EMBODIMENT

The following examples are presented to illustrate the invention but not restricted to the following:

### EXAMPLE I

This example demonstrates the synthesis of a siloxanyl alkyl ester monomer representative, 1,1,1 Tris(trimethylsiloxy)methacryloxypropyl silane (TRIS), as used in U.S. Pat. No. 3,808,178. The present process is far less expensive and gives higher oxygen permeability due to the absence of non oxygen permeable by products. 23.9 g (0.1 mole) of methacryloxypropyltrimethoxysilane is mixed with 429 g (4 mole) trimethylchlorosilane. The mixture is then added to 3 liters of water. The water is used as a catalyst and for cooling. After the mixture is added to the water, it is stirred for approximately 24 hours at room temperature. After allowing to set for 30 minutes, the upper layer is then separated, dried over calcium or sodium sulfate, and then filtered. Using a vacuum still, the hexamethyldisilane by product is stripped off. (With a sufficient vacuum, the distillation temperature can be kept down to 30°-40° C.

### EXAMPLE II

This example demonstrates the synthesis of 1,1,3,3 tetrakis(trimethylsiloxy)1,3 bis(methacryloxypropyl)-disiloxane(Di), a crosslinking dimer of 1,1,1 tris(trimethylsiloxy)methacryloxypropylsilane.

23.9 g of methacryloxypropyltrimethoxysilane is added to a mixture of 50 ml water and 5 ml diluted acetic acid. The mixture is stirred for 3 hours with a magnetic stirrer. Then the procedures of Example I are followed.

### EXAMPLE III

This example demonstrates the polymerization of the novel polymer by use of the siloxanyl alkyl ester prepared in Example I and the oxygen permeable crosslinking agent in Example II.

A rod is prepared by polymerizing 50 parts of TRIS, 40 parts methyl methacrylate (MMA), 3.5 parts of 1,1,3,3 tetrakis(trimethylsiloxy)1,3 bis(methacryloxypropyl)disiloxane(Di), and 6.5 parts of N-(1,1-Dimethyl-3-Oxobutyl)acrylamide (DAA) in the presence of 0.25 parts benzoyl peroxide (BPO) at 70° C. with water bath for 12 hours and a post cure at 100° C. for 24 hours. Contact lens blanks are fabricated to ½ inch round diameter and 3/16 inch thick by lathe cutting. Lens are prepared by conventional techniques and are hard, transparent, and highly oxygen permeable.

### EXAMPLE IV

This example demonstrates the synthesis of 1,5 Bis(-methacryloxypropyl) 1,1,5,5 tetra kis(trimethylsiloxy) 3,3 dimethyl trisiloxane (BIS), a dimer of TRIS. 13 g sulfuric acid is added in a dropwise manner to 15 g ethanol (medical grade) and 10 g of water in a flask equipped with a magnetic stirrer. If the sulfuric acid is added at a rate of one to two drops per second, a water bath is not necessary (any faster drop rate, and a water bath should be used for cooling).

49.62 g (0.2 mole) of methacryloxypropyl trimethoxy silane, 17.63 g (0.1 mole) of dimethyldiacetoxysilane, and 43.48 g (0.4 mole) of trimethyl acetoxy silane are placed in a flask equipped with an ice bath and a magnetic stirrer. Then 13 g of ethanol/sulfuric acid is added in a dropwise manner to the mixture while stirring. Continue ice bath for five minutes after the entire amount of ethanol/sulfuric acid has been added to the mixture. The mixture should be stirred for up to three days at room temperature to assure complete reaction. The upper layer is separated from the rest and filtered. The remaining by-product (ethyl acetate) is stripped off by means of a vacuum stripper or a vacuum still at a temperature ranging from 35° to 45° C. depending upon the degree of vacuum pulled. Refrigerated storage is recommended to prevent premature reactions.

### EXAMPLE V

This example demonstrates the polymerization of the novel polymer by use of the siloxayl alkyl ester prepared in Example I and the oxygen permeable crossing agent in Example IV.

A rod is prepared by polyermizing 45 parts by weight of TRIS, 45 parts by weight of MMA, 5 parts by weight of BIS and 5 parts by weight of DAA in the presence of 0.25 parts by weight of BPO. Heat at 70° C. with a water bath for 12 hours and post cure with a water bath at 85° C. for 24 hours. Contact lens blanks and lenses are prepared by conventional lathe cutting techniques. The lenses are hard, transparent, and highly oxygen permeable.

### EXAMPLE VI

This example demonstrates the synthesis of 1,5,9-tris(methacryloxypropyl) 1,1,5,9,9-penta kis(trimethyl silane)tetramethylpentasiloxane (PENTA), a trimer of TRIS.

Procedures in Example IV are exactly followed except 23.51 g (0.1333 mole) of dimethyldiacetoxy silane and 44.07 g (0.333 mole) trimethylacetoxysilane are used to form a more complex molecule having three methacryl end groups for crosslinking.

### EXAMPLE VII

This example demonstrates the polymerization of the novel polymer by use of the siloxanyl alkyl ester prepared in Example I and the oxygen permeable crosslinking agent prepared in Example VI.

A rod is prepared as demonstrated in Example V except PENTA as prepared in Example VI is used instead of BIS. Al procedures are followed exactly.

### EXAMPLE VIII

This example demonstrates the synthesis of 1,5,9,13-tetrakis(methacryloxpropyl)    1,1,5,9,13,13-hexakis-(trimethylsiloxyl)hexamethylhepta siloxane (HEXA) a tetramer of TRIS.

Procedures in Example IV are followed exactly except 25.45 g (0.15 mole) of dimethyldiacetoxy silane and 39.66 g (0.30 mole) of trimethylacetoxy silane for a complex molecule having molecular weight of 14241.1 and four methacryl end groups for crosslinking.

### EXAMPLE IX

This example demonstrates the polymerization of the novel polymer by use of the siloxanyl alkyl ester prepared in Example I and the oxygen permeable crosslinking agent prepared in Example VIII.

4,306,042

5

A rod is prepared as demonstrated by Example V except that HEXA is used instead of BIS, all procedures are followed exactly.

Other poly functional derivatives of a siloxanyl alkyl ester can be prepared to have numerous reactive sites by changing the molar relationships of the intermediaries. Oxygen permeable crosslinking agents of poly(organosilane) $\alpha,\omega$ terminally bonded through a divalent hydrocarbon group to a polymerized activated unsaturated group. Typically the poly(organosiloxanes) i.e. monomers, employed are of the following formula:

$$A-R-\underset{\underset{R_2}{|}}{\overset{\overset{R_1}{|}}{Si}}-O-\left[\underset{\underset{R_4}{|}}{\overset{\overset{R_3}{|}}{Si}}-O\right]_n-\underset{\underset{R_2}{|}}{\overset{\overset{R_1}{|}}{Si}}-R-A$$

whereas A is an activated unsaturated group, $R_1$, $R_2$, $R_3$ and $R_4$ can be the same or different and each is one of a monovalent hydrocarbon radical or a halogen substituted monovalent hydrocarbon radical each containing from 0 to 15 carbon atoms, R is a divalent hydrocarbon radical containing from 1 to 20 carbon atoms, and n is an integer of zero to 1,000.

Various modifications can be made without departing from the spirit of this invention or the scope of the appended claims. The constants set forth in this disclosure are given as examples and are in no way final or binding. In view of the above, it will be seen that the several objects of the invention are achieved and other advantages are obtained. As many changes could be made in the above constructions and methods without departing from the scope of the invention, it is intended that all matter contained in the above description shall be interpreted as illustrative and not in a limiting sense.

What is claimed:

1. A method of making an oxygen permeable material for the manufacture of contact lens by the synthesization of the monomer 1,1,1-tris(methylsiloxy)methacryloxypropylsilane (a siloxanyl alkyl ester) by the following procedures:

(a) a mixture is prepared having the relationship of one mole of methacryloxypropyltrimethoxysilane with three to forty moles of trimethylchlorosilane;

(b) the mixture is then added to water whose volume is from 3 to 10 times that of the mixture;

(c) agitation is maintained for 30 minutes to 48 hours;

(d) then allow the mixture to separate into layers, remove and filter the upper organic layer;

(e) the unwanted by-product (hexamethyldisilane) is then removed by vacuum distillation;

(f) forming an oxygen permeable contact lens material by copolymerizing from 5% to 90% by weight of the 1,1,1-tris(trimethylsiloxy)methacryloxypropylsilane prepared above; 3% to 90% by weight of an ester of acrylic or methacrylic acid; from 0.05% to 90% by weight of a surface wetting agent, from 0.01% to 90% by weight of an oxygen permeable crosslinking agent selected from the class of multifunctional siloxanyl alkyl esters in the presence of a free radical or a photo initiator.

2. A method of making an oxygen permeable material for the manufacture of contact lens by utilizing the synthesization of 1,5 bis(methacryloxypropyl) 1,1,5,5-tetrakis(trimethylsiloxy)dimethyltrisiloxane (an oxygen

6

permeable crosslinking agent that is a dimer of siloxanyl alkyl ester) by the following procedure:

(a) a mixture is prepared with the relationship of: (1) 2 moles methacryloxypropyltrimethoxysilane; (2) 1 mole dimethyldiacetoxysilane; and (3) 4 moles trimethylacetoxysilane; the mixture is placed in a container that is equipped with a method of cooling and agitating;

(b) start agitation and cooling and in a dropwise manner add 65g of ethanol/sulfuric acid solution (the catalyst solution consists of 34.2% by weight of concentrated sulfuric acid, 39.5% by weight of medical grade ethanol and 26.3% by weight of distilled water) to one mole of methacryloxypropyltrimethoxysilane;

(c) after entirety of ethanol/sulfuric acid solution is added, continue the agitation for 24 to 72 hours;

(d) discontinue agitation and allow the mixture to separate into two layers, remove the upper layer;

(e) the unwanted by-products are then removed by vacuum distillation;

(f) forming an oxygen permeable contact lens material by copolymerizing from 5% to 90% by weight of a siloxyl alkyl ester, from 3% to 90% by weight of an ester of acrylic or methacrylic acid; from 0.5% to 90% by weight of surface wetting agent, from 0.01% to 90% by weight of the 1,1,5,5-tetrakis(trimethylsiloxy)    1,3-bis(methacryloxypropyl)dimethyltrisiloxane prepared above, and in the presence of a free radical or photo initiator.

3. A method of making an oxygen permeable contact lens material utilizing the synthesization of 1,5,9 tris(methacryloxypropyl)-1,1,5,9,9-pentakis(trimethylsiloxy)-tetramethylpentasiloxane (an oxygen permeable crosslinking agent that is a trimer of a siloxanyl alkyl ester) by the following procedures:

(a) a mixture is prepared with the relationship of: (1) 3 moles methacryloxypropyltrimethyoxysilane; (2) 2 moles dimethyldiacetoxysilane; and (3) 5 moles trimethylacetoxysilane; the mixture is placed in a container that is equipped with a method of cooling and agitating;

(b) start agitation and cooling and in a dropwise manner add 65 g of ethanol/sulfuric acid solution (the catalyst consists of 34.2% by weight of concentrated sulfuric acid, 39.5% by weight of medical grade ethanol, and 26.3% by weight of distilled water) to one mole of methacryloxypropyltrimethoxysilane;

(c) after entirety of ethanol/sulfuric acid solution is added, continue agitation for 24 to 72 hours;

(d) discontinue agitation and allow the two layers to separate, remove the upper layer;

(e) the unwanted by-products are then removed by vacuum distillation;

(f) forming an oxygen permeable contact lens material by copolymerizing from 5% to 90% by weight of a siloxanyl alkyl ester, from 3% to 90% by weight of an ester of acrylic or methacrylic acid, from 0.5% to 90% by weight of a surface wetting agent, from 0.01% to 90% by weight of the 1,5,9-tris(methacryloxypropyl)    1,1,5,9,9-pentakis(trimethylsiloxy)tetramethylpentasiloxane    prepared above, and in the presence of a free radical or photo initiator.

4. A method of making an oxygen permeable contact lens material by utilizing the synthesization of 1,5,9,13 tetrakis(methacryloxypropyl)    1,1,5,9,13,13-hexakis(-

4,306,042

7

trimethylsiloxy)hexamethylheptasiloxane (an oxygen permeable crosslinking agent that is a tetramer of a siloxanyl alkyl ester) by the following procedures:

(a) a mixture is prepared with the relationship of: (1) 4 moles methacryloxypropyltrimethoxysilane; (2) 3 moles dimethyldiacetoxysilane, and (3) 6 moles trimethylacetoxysilane; this mixture is placed in a container that is equipped with a method of cooling and agitating;

(b) start agitation and cooling and in a dropwise manner add 65 g of ethanol/sulfuric acid solution (the catalyst solution consists of 34.2% by weight of concentrated sulfuric acid, 39.5% by weight of medical grade ethanol, and 26.3% by weight of

8

distilled water) to one mole of methacryloxy-propyltrimethoxysilane;

(c) after entirety of ethanol/sulfuric acid solution is added, continue agitation for 24 to 72 hours;

(d) discontinue agitation and allow the two layers to separate, remove the upper layer;

(f) forming an oxygen permeable contact lens material by copolymerizing from 5% to 90% by weight of a siloxanyl alkyl ester from 3% to 90% by weight of an ester of acrylic or methacrylic acid, from 0.5% to 90% by weight of a surface wetting agent, from 0.01% to 90% by weight of the 1,5,9,13-tetrakis(methacryloxypropyl) 1,1,5,9,13,13-hexakis(trimethylsiloxy)hexamethyl-heptasiloxane prepared above, and in the presence of a free radical or photo initiator.

*  *  *  *  *

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.   :  4,306,042
DATED        :  December 15, 1981
INVENTOR(S)  :  Russell A. Neefe

It is certified that error appears in the above-indentified patent and that said Letters Patent is hereby corrected as shown below:

Column 3, Line 25, "hexamethyldisilane" should be--
hexamethyldisiloxane--

Column 5, Line 53, "hexamethyldisilane" should be --
hexamethyldisiloxane--

Column 5, Line 60, "0.05%" should be --0.5%--

Column 6, Line 24, "siloxyl" should be --siloxanyl--

Signed and Sealed this

Tenth Day of January, 1995

Attest:

*Bruce Lehman*

**BRUCE LEHMAN**

*Attesting Officer*            *Commissioner of Patents and Trademarks*

# EXHIBIT 9

United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz Alerts | News | Help

**Portal Home** | **Patents** | **Trademarks** | **Other**

## Patent eBusiness

- Electronic Filing
- Patent Application Information (PAIR)
- Patent Ownership
- Fees
- Supplemental Resources & Support

## Patent Information

Patent Guidance and General Info
- Codes, Rules & Manuals
- Employee & Office Directories
- Resources & Public Notices

## Patent Searches

Patent Official Gazette
- Search Patents & Applications
- Search Biological Sequences
- Copies, Products & Services

## Other

Copyrights
Trademarks
Policy & Law
Reports

---

### Patent Application Information Retrieval

ℹ️ Order Certified Application As Filed    Order Certified File Wrapper     View Order List

| 90/005,090 | METHOD OF MAKING A CONTACT LENS MATERIAL WITH INCREASED OXYGEN PERMEABILITY | 📄 |

| Select New Case | Application Data | Transaction History | Image File Wrapper | Continuity Data | Address & Attorney/Agent |

## Transaction History

| Date | Transaction Description |
|------|------------------------|
| 09-24-2007 | Appellant's Complaint |
| 07-31-2007 | Mail BPAI Decision on Appeal - Affirmed |
| 07-31-2007 | BPAI Decision - Examiner Affirmed |
| 03-08-2007 | Docketing Notice Mailed to Appellant |
| 03-06-2007 | Assignment of Appeal Number |
| 09-04-2006 | Appeal Awaiting BPAI Docketing |
| 07-31-2006 | Reply Brief Noted by Examiner |
| 09-09-2005 | Reply Brief Filed |
| 07-12-2005 | Supplemental Examiner's Answer to Appeal Brief - Mailed |
| 06-23-2005 | Correspondence Address Change |
| 06-23-2005 | Change in Power of Attorney (May Include Associate POA) |
| 05-23-2005 | Panel Remand to the Examiner by BPAI |
| 04-20-2005 | Correspondence Address Change |
| 04-20-2005 | Correspondence Address Change |
| 04-20-2005 | Correspondence Address Change |
| 02-28-2005 | Docketing Notice Mailed to Appellant |
| 02-26-2005 | Assignment of Appeal Number |
| 09-13-2004 | Appeal Awaiting BPAI Docketing |
| 06-29-2004 | Scanned in Central Reexam Unit |
| 06-14-2004 | Miscellaneous Letter Mailed |
| 05-03-2004 | Order Returning Undocketed Appeal to the Examiner |
| 03-23-2004 | Appeal Awaiting BPAI Docketing |
| 11-14-2003 | Scanned in Central Reexam Unit |
| 10-29-2003 | Reply Brief Noted by Examiner |
| 08-06-2003 | Scanned in Central Reexam Unit |
| 07-29-2003 | Correspondence Address Change |
| 07-30-2003 | Change in Power of Attorney (May Include Associate POA) |
| 06-16-2003 | Request for Oral Hearing |
| 06-16-2003 | Reply Brief Filed |
| 05-02-2003 | Scanned in Central Reexam Unit |
| 05-02-2003 | Examiner's Answer Mailed |
| 03-06-2003 | Notification of Withdrawal of Attorney P/D |
| 04-29-2003 | Correspondence Address Change |
| 04-29-2003 | Change in Power of Attorney (May Include Associate POA) |
| 01-15-2003 | Scanned in Central Reexam Unit |
| 01-10-2003 | Advisory Action Mailed |
| 11-26-2002 | Mailing of Petition Decision - Granted |

| Date | Description |
|---|---|
| 11-18-2002 | Certificate of Service |
| 11-08-2002 | Receipt of Petition in a Reexam |
| 10-25-2002 | Appeal Brief Filed |
| 07-12-2002 | Notice of Appeal Filed |
| 07-12-2002 | Response to Final Rejection |
| 07-08-2002 | Examiner Interview Summary Record |
| 05-29-2002 | Scanned in Central Reexam Unit |
| 05-14-2002 | Examiner Interview Summary Record |
| 05-23-2002 | Final Rejection Mailed |
| 09-26-2001 | Change in Power of Attorney (May Include Associate POA) |
| 09-26-2001 | Correspondence Address Change |
| 09-26-2001 | Change in Power of Attorney (May Include Associate POA) |
| 04-10-2001 | Reexam Non-Final Action Mailed |
| 01-19-2001 | Response after Non-Final Action |
| 12-17-2000 | Scanned in Central Reexam Unit |
| 12-08-2000 | Reexam Non-Final Action Mailed |
| 10-05-2000 | Case Docketed to Examiner in GAU |
| 05-17-2000 | Letter Acknowledging That an Improper Paper Has Been Returned/Destroyed |
| 02-28-2000 | Correspondence Address Change |
| 02-10-2000 | Correspondence Address Change |
| 05-17-2000 | Correspondence Address Change |
| 08-27-1998 | Initial Exam Team nn |
| 02-25-2000 | Court Processing Terminated |
| 12-22-1999 | Court Processing Initiated |
| 12-16-1999 | Patent Term Extension (156) Dismissed |
| 08-30-1999 | Miscellaneous Incoming Letter |
| 06-24-1999 | Mail-Petition Decision - Granted |
| 06-24-1999 | Letter Acknowledging That an Improper Paper Has Been Returned/Destroyed |
| 12-04-1998 | Petition Entered |
| 09-22-1998 | Petition Entered |
| 12-16-1998 | Letter Acknowledging That an Improper Paper Has Been Returned/Destroyed |
| 11-09-1998 | Determination -- Reexam Denied |
| 09-08-1998 | Case Docketed to Examiner in GAU |
| 09-04-1998 | Completion of Preprocessing - Released to Assigned GAU |
| 09-04-1998 | Preexamination Location Change |
| 09-03-1998 | IFW Scan & PACR Auto Security Review |
| 08-27-1998 | Receipt of Original Ex Parte Reexam Request |

*If you need help:*

- *Call the Patent Electronic Business Center at (866) 217-9197 (toll free) or e-mail EBC@uspto.gov for specific questions about Patent Application Information Retrieval (PAIR).*
- *Send general questions about USPTO programs to the USPTO Contact Center (UCC) .*
- *If you experience technical difficulties or problems with this application, please report them via e-mail to Electronic Business Support or call 1 800-786-9199.*

You can suggest USPTO webpages or material you would like featured on this section by E-mail to the webmaster@uspto.gov. While we cannot promise to accommodate all requests, your suggestions will be considered and may lead to other improvements on the website.

# EXHIBIT 10

The opinion in support of the decision being entered today is *not* binding precedent of the Board.

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

*Ex parte* RUSSELL A. NEEFE

Appeal 2007-1366
Application 90/005,090
Technology Center 1700

Decided:  July 31, 2007

Before RICHARD E. SCHAFER, TEDDY S. GRON and
ADRIENE LEPIANE HANLON, *Administrative Patent Judges.*

SCHAFER, *Administrative Patent Judge.*

## DECISION ON APPEAL

## STATEMENT OF THE CASE

1    Patentee appeals from the final rejection of Claim 1 in the

2    reexamination of Patent 4,306,042.  35 U.S.C. §§ 134 and 306.  We have

3    jurisdiction.  35 U.S.C. § 6(b).

4    An examiner rejected Claim 1 under 35 U.S.C. § 103(a) as

5    unpatentable over the combined teachings of Quaal,[1] Gaylord[2] and Tanaka.[3]

---

[1] US Patent 3,377,371.
[2] US Patent 4,120,570.
[3] US Patent 4,235,985.

Appeal 2007-1366
Application 90/005,090

1    We affirm.

2                          **FINDINGS OF FACT**

3    **Claimed Subject Matter**

4    F. 1.   Patentee claims a method of making an oxygen permeable contact

5            lens material.

6    F. 2.   The method includes the step of copolymerizing certain comonomers

7            in the presence of a free radical or photo initiator.

8    F. 3.   These comonomers are

9                    (1) 5-90 weight percent of a specific siloxanyl alkyl ester;
10                   (2) 3-90% of an ester of acrylic or methacrylic acid;
11                   (3) 0.05%-90% of a surface wetting agent and
12                   (4) an oxygen permeable multifunctional siloxanyl alkyl ester
13                       cross-linking agent.
14

15   F. 4.   The specific siloxanyl alkyl ester monomer is 1,1,1

16           tris(methylsiloxy)methacryloxypropylsilane (hereinafter TRIS), a

17           known siloxanyl alkyl ester having a known use in contact lens

18           materials.

19   F. 5.   In addition to the copolymerization step, Claim 1 also specifies the

20           process for making TRIS.

21   F. 6.   The specified steps for making TRIS include:

22                   (1) mixing specified amounts of
23                   methacryloxypropyltrimethoxysilane (MAS) and
24                   trimethylchlorosilane (TMCS),
25                   (2) adding this mixture to a specified amount of water,
26                   (3) agitating this second mixture for a specified time,
27                   (4) allowing the mixture to separate,
28                   (5) removing and filtering the upper most layer and
29                   (6) subjecting the removed material to vacuum distillation.
30

31   F. 7.   Patentee's Claim 1 is reproduced below:

-2-

Appeal 2007-1366
Application 90/005,090

1.    A method of making an oxygen permeable material for
the manufacture of contact lens by the synthesization of the
monomer 1,1,1 tris(methylsiloxy)methacryloxypropylsilane (a
siloxanyl alkyl ester) by the following procedures:

    (a)    a mixture is prepared having the relationship of
one mole of methacryloxypropyltrimethoxysilane with
three to forty moles of trimethylchlorosilane;
    (b)    the mixture is then added to water whose volume
is from 3 to 10 times that of the mixture;
    (c)    agitation is maintained for 30 minutes to 48 hours;
    (d)    then allow the mixture to separate into layers,
remove and filter the upper organic layer;
    (e)    the unwanted by-product (hexamethyldisilane) is
then removed by vacuum distillation;
    (f)    forming an oxygen permeable contact lens material
by copolymerizing from
        5% to 90% by weight of the 1,1,1 -
            tris(trimethylsiloxy)methacryloxy-
            propylsilane prepared above;
        3% to 90% by weight of an ester of acrylic or
            methacrylic acid;
        from 0.05% to 90% by weight of a surface wetting
            agent,
        from 0.01% to 90% by weight of an oxygen
            permeable crosslinking agent selected from
            the class of multifunctional siloxanyl alkyl
            esters
in the presence of a free radical or a photo initiator.

**Gaylord**

F. 8.    Gaylord relates to methods of making oxygen permeable contact lens

materials.

F. 9.    Gaylord teaches forming a contact lens material by copolymerizing

specified comonomers in the presence of a free radical initiator.

Gaylord, 1:52-56, 4:32-38

F. 10. The comonomers may include

Appeal 2007-1366
Application 90/005,090

1                    (1) 10-70% by weight of siloxanyl alkyl ester (Gaylord,
2                        4:14-16);
3                    (2) 30-90% by weight acrylic or methacrylic acid ester
4                        (Gaylord, 4:14-16);
5                    (3) 0.01-10% of a surface wetting agent (Gaylord, 5:39-46); and
6                    (4) 0.01%-2% a cross-linking agent (Gaylord, 6:3-12.)

F. 11. Gaylord teaches TRIS as a preferred siloxanyl alkyl ester. Gaylord, Examples 1-7 and 22-23.

F. 12. Gaylord characterizes the described contact lens materials as having "vastly increased oxygen permeability" as compared to "conventional" contact lens materials. Gaylord, 4:57-59.

F. 13. Gaylord describes cross-linking agents including "polyol acrylic ester[s] of higher functionality." Gaylord, 6:3-12.

**Diffferences Between Gaylord and the Claimed Invention**

F. 14. Patentee characterizes his invention as "an improvement over the Gaylord method of making contact lens materials." Neefe Declaration, filed January 19, 2001, p. 1, ¶ 2.

F. 15. Patentee states: "My invention was to substitute an oxygen-permeable crosslinker for the impermeable EGDMA used in the prior art." Neefe Declaration, filed January 19, 2001, p. 2, ¶ 5.

F. 16. Gaylord does not teach the use of an oxygen permeable crosslinking agent selected from the class of multifunctional siloxanyl alkyl esters.

F. 17. Gaylord does not teach the specific method of making TRIS required by Patentee's Claim 1.

**Tanaka**

F. 18. Tanaka relates to oxygen permeable copolymers for use in contact lens materials and methods for forming those materials.

Appeal 2007-1366
Application 90/005,090

1    F. 19. Tanaka notes the importance of oxygen permeability of contact lens
2          materials.  Tanaka, 1:6-10.
3    F. 20. Tanaka notes that the utilization of comonomers having an alkylsiloxy
4          group is an available means of increasing oxygen permeability.
5          Tanaka, 2: 60-63.
6    F. 21. Tanaka describes methods of making crosslinked oxygen permeable
7          contact lens materials by copolymerization of certain specific
8          comonomers.
9    F. 22. Tanaka teaches that the copolymers may be crosslinked in a
10         conventional manner using a cross-linking agent added to the mixture
11         prior to polymerization.   Tanaka, 2:30-31, 7: 59-8:2.
12   F. 23. Tanaka says cross-linking agents of the type conventionally used in
13         cross-linking vinyl monomers may be employed.  Tanaka, 8: 2-10.
14   F. 24. Tanaka also teaches that multifunctional siloxyanyl alkyl ester cross-
15         linking agents may be substituted for the conventional cross-linking
16         agents conventionally used in polymerization of vinyl monomers.
17         Tanaka 8:2-10.
18   F. 25. Tanaka also teaches that the preferred cross-linking agents are
19         multifunctional monomers having siloxane bonds.  Tanaka, 8:10-12.
20   F. 26. The preferred multifunctional monomers disclosed are multifunctional
21         siloxyanyl alkyl esters having a siloxane bond corresponding to
22         specified formulas referred to as Formulas [V] and [VI].
23         Tanaka, 8: 11-34.
24   F. 27. Tanaka says these are preferred because the siloxane bonds provide
25         high oxygen permeability to the cross-linked copolymer:

Appeal 2007-1366
Application 90/005,090

| | |
|---|---|
| 1 | Since these cross-linking agents of the general formulas |
| 2 | [V] and [VI] have siloxane bonds in their molecules, the |
| 3 | oxygen permeability of the obtained cross-linked |
| 4 | copolymers is high and, therefore, they are preferably |
| 5 | employed in the present invention. |
| 6 | Tanaka, 8:35-39. |
| 7 | F. 28. One having ordinary skill in the art would have understood Tanaka to |
| 8 | teach that the preferred multifunctional siloxyanyl alkyl ester cross- |
| 9 | linking agents contribute to the oxygen permeability of the contact |
| 10 | lens material. Tanaka, 8:35-39. |
| 11 | **Quaal** |
| 12 | F. 29. Quaal relates to the formation of "tris-siloxy acrylic silanes," having |
| 13 | the general formula $(R_3SiO)_3Si-R'-OOCC(R'')=CH_2$. |
| 14 | F. 30. Quaal teaches a general method of forming these silanes by the |
| 15 | cohydrolysis of (1) compounds having the formula |
| 16 | $CH_2=C(R'')COO-R'-SiX_3$ with (2) an excess amount of compounds |
| 17 | represented by $R_3SiX$. Quaal, 1:25-28. |
| 18 | F. 31. R, R', R'' and X are each defined as a variety of moieties. |
| 19 | Quaal, 1:16-36. |
| 20 | F. 32. TRIS, MAS and TMCS are compounds meeting Quaal's general |
| 21 | formula and the formulas for the two reactants, respectively. |
| 22 | F. 33. TRIS has the formula $((CH_3)_3SiO)_3Si-(CH_2)_3-OOCC(CH_3)=CH_2$ and |
| 23 | meets Quaal's definitions of R, R' and R'' where R is methyl ($-CH_3$), |
| 24 | R' is the alkylene $-(CH_2)_3-$, R'' is methyl ($-CH_3$). |
| 25 | F. 34. MAS has the formula $CH_2=C(CH_3)COO-(CH_2)_3-Si(OCH_3)_3$ and meets |
| 26 | Quaal's definitions of R', R'' and X where R' is the alkylene $-(CH_2)_3-$, |
| 27 | R'' is methyl ($-CH_3$), and X is methoxy ($-(OCH_3)$). |

Appeal 2007-1366
Application 90/005,090

1   F. 35. TMCS has the formula $(CH_3)_3SiCl$ and meets Quaal's definitions of R
2           and X where R is methyl ($-CH_3$) and X is Cl.

3   F. 36. Quaal teaches that the cohydrolysis is preferably carried out in a
4           water-solvent mixture but the solvent is characterized as "not essential
5           to the process." Quaal, 1:55.

6   F. 37. Quaal also teaches that the amount of water is not critical but should
7           be sufficient to allow the reaction to proceed at a satisfactory rate.
8           Quaal, 1:51-53.

9   F. 38. Quaal's Example 1 describes a method of making TRIS. Quaal 2: 3-
10          33.

11  F. 39. Quaal's Example 1 describes the cohydrolysis of MAS, TMCS and a
12          third compound $(CH_3)_3SiOCH_3$ to form TRIS. Quaal, Example 1,
13          2:4-30.

14  F. 40. $(CH_3)_3SiOCH_3$ is also a compound having the formula $R_3SiX$ meeting
15          Quaal's definitions of R and X.

16  F. 41. A mixture of MAS, TMCS, and $(CH_3)_3SiOCH_3$ is added to a mixture
17          of water and ether and stirred overnight. Quaal, Example 1, 2:12-17.

18  F. 42. The mole weight of MAS is 248 grams.

19  F. 43. The mole weight of TMCS is 108 grams.

20  F. 44. The mole ratio of MAS (248 grams) to TMCS (325.5 grams) in the
21          mixture is 1:3.0.

22  F. 45. The water was removed using a separatory funnel. Quaal, 2: 17-19.

23  F. 46. The remaining layer was washed and subject to vacuum drying and
24          vacuum distillation to obtain TRIS. Quaal, 2: 25-28.

25  F. 47. The TRIS was apparently reasonably pure as indicated by the
26          comparison of the theoretical percentages of C, H and Si with the

1    percentages that resulted from actually carrying out the process

2    described in Example 1. Quaal, 2:31-33.

3  F. 48. Quaal's Example 4 identifies a number of different silane

4    cohydrolysis combinations and their resulting products. Quaal, Table,

5    columns 3-4.

6  F. 49. One having ordinary skill in the art would have understood that Quaal

7    describes a general technique for forming a variety of tris-type silanes,

8    including TRIS.

9    **The Level of ordinary skill in the art**

10  F. 50. The person having ordinary skill in the art was aware of the reasons

11    for and desirability of high oxygen permeability in contact lens

12    materials.

13  F. 51. The person of ordinary skill in the art would have fully understood the

14    copolymerization chemistry used to make contact lens materials

15    including the mechanism involved in cross-linking.

16  F. 52. One having ordinary skill in the art would have understood that cross-

17    linking takes place through unstaturated ethylenic bonds ($=CH_2$).

18  F. 53. The person having ordinary skill in the art would also have

19    understood and been familiar with the processes and chemistry for

20    making the comonomers that are copolymerized in making contact

21    lens materials.

22  F. 54. One having ordinary skill in the art would have been familiar with the

23    properties of TRIS and the chemistry necessary to make it.

24                              **ISSUES**

1          A preliminary issue is whether Claim 1 should be given a broad

2    construction leaving the claim open to components in addition to those

3    specifically recited.

4          The overall patentability issue is whether Patentee has demonstrated

5    that the Examiner's decision that the subject matter of Claim 1 would have

6    been obvious is erroneous.  There are three sub issues: (1) whether Gaylord,

7    Tanaka and Quaal are analogous art; (2) whether Gaylord, Tanaka and Quaal

8    are properly combinable; and (3) whether patentee has provided evidence of

9    secondary considerations sufficient to prove non-obvioiusness.

10                        **PRINCIPLES OF LAW**

11   **Claim Construction**

12         Patent claims involved in a reexamination are ordinarily given the

13   broadest reasonable construction.  *In re Yamamoto*, 740 F.2d 1569, 1571,

14   222 USPQ 934, 936 (Fed.Cir. 1984) (in banc).  However, a narrowed

15   construction is appropriate where the patent has expired.  *Ex parte Papst-*

16   *Motoren*, 1 USPQ2d 1655, 1656 (BPAI 1986).

17   **Obviousness**

18         In evaluating obviousness under 35 U.S.C. § 103(a), the scope and

19   content of the prior art is determined, the differences between the prior art

20   and the claims are to be ascertained and the level of ordinary skill resolved.

21   *Graham v. John Deere Co.*, 383 U.S 1, 15 (1966).  The combination of

22   familiar elements according to known methods is likely obvious when the

23   combination does no more than the predictable results.  *KSR Int'l Co. v.*

24   *Teleflex Inc.*, 127 S. Ct. 1727, 1739 (2007).  The obviousness inquiry asks

25   whether the improvement is more than the use of prior art elements

26   according to their established functions.  *KSR*, 127 S.Ct. at 1740.  Secondary

Appeal 2007-1366
Application 90/005,090

1    considerations may also be considered to illuminate the circumstances

2    surrounding the origin of the invention.  *Graham*, 383, U.S. at 17-18.

3        **Analogous Art**

4        Analogous art includes references which are in the field of the

5    applicant's endeavor or are reasonably pertinent to the problem with which

6    the inventor was concerned.  *In re Kahn*, 441 F.3d 977, 986-87. 78 USPQ2d

7    1329, 1336 (Fed. Cir. 2006).  The hypothetical person having ordinary skill

8    in the art is presumed to be aware of all prior art in the field of the invention.

9    *In re Rouffet*, 149 F.3d 1350, 1357, 47 USPQ2d 1453, 1457 (Fed. Cir.

10   1998).

11       **Combining Teachings**

12       Obviousness may be shown from the interrelated teachings of

13   multiple patents.  However, there must be a reason to combine the prior art

14   elements in the way claimed.  *KSR* 127 S.Ct. at 1741.  In other words, there

15   must be "some articulated reasoning with some rational underpinning to

16   support the legal conclusion of obviousness."  *KSR*, 127 S.Ct. at 1741,

17   *quoting In re Kahn*, 441 F.3d 977, 988, 78 USPQ2d 1329, 1336 (Fed.Cir.

18   2006).  However, the obviousness analysis does not require that the prior art

19   include precise teachings as to the subject matter of the claimed invention.

20   Inferences and creative steps that a person of ordinary skill in the art would

21   take may be considered.  *KSR*, 127 S.Ct. at 1741.  Under the analysis any

22   need or problem known in the field of endeavor at the time of the invention

23   and addressed by the prior art can be a basis to combine the teachings of the

24   references.  *KSR,* 127 S.Ct. at 1741.  However when the prior art teaches

25   away from combining certain known elements, discovery of a successful

26   means of combining them is more likely to be nonobvious.  *KSR*, 127 S.Ct.

1    at 1740. A prior art reference may be considered to teach away when "a

2    person of ordinary skill, upon reading the reference, would be discouraged

3    from following the path set out in the reference, or would be led in a

4    direction divergent from the path that was taken by the applicant." *In re*

5    *Gurley*, 27 F.3d 551, 553, 31 USPQ2d 1130, 1131 (Fed.Cir. 1994). But, a

6    statement that a particular feature is not preferred does not teach away

7    absent clear discouragement of that combination. *Syntex (USA) LLC v.*

8    *Apotex Inc.*, 407 F.3d 1371, 1380, 74 USPQ2d 1823, 1830 (Fed. Cir. 2005).

9    **Secondary Considerations**

10    "Such secondary considerations as commercial success, long felt but

11    unsolved needs, failure of others, etc., might be utilized to give light to the

12    circumstances surrounding the origin of the subject matter sought to be

13    patented. As indicia of obviousness or nonobviousness, these inquiries may

14    have relevancy." *Graham,* 383 U.S. at 18. Secondary considerations such

15    as commercial success, long felt need, and copying by others must be proved

16    with clear and convincing evidence. *In re Snow*, 471 F.2d 1400, 1404,

17    176 USPQ 328, 331 (CCPA 1973); *In re Miegel,* 404 F2d 378, 381159

18    USPQ 716, 717 (CCPA 1968); *In re Heyna*, 360 F2d 222, 228, 149 USPQ

19    692, 697 (CCPA. 1966); *In re Lohr*, 317 F.2d 388, 137 USPQ 548, 550-551

20    (CCPA 1963). To show unexpected results, a comparison of the invention

21    with the prior art must be under identical conditions except for the novel

22    features of the invention. *In re Brown*, 459 F.2d 531, 535, 173 USPQ 685,

23    689 (CCPA 1972).

1                                **Analysis**

2     **Claim construction**

3          In distinguishing certain portions of the prior art, Patentee argues that

4     the process of Claim 1 prepares TRIS from only two reactants, MAS and

5     TMS. Reply Brief filed June 16, 2003, pp 4-5: Reply Brief in Response to

6     Supplemental Examiner's Answer filed September 9, 2005, pp. 6-7, footnote

7     1, pp. 14-15. Patentee also distinguishes the claimed subject matter from the

8     prior art by arguing that the claimed process does not include the use of a

9     water-solvent mixture. Reply Brief in Response to Supplemental

10    Examiner's Answer filed September 9, 2005, pp. 18-19, n. 9. We

11    understand Patentee's position to be that the <u>literal scope</u> of the mixture

12    employed to form TRIS in Claim 1 is limited to the mixture of MAS and

13    TMCS and the inclusion of different or additional silanes is excluded. We

14    also understand Patentee's position to be that the literal scope of Claim 1 is

15    limited to the use of water as a solvent in making TRIS and that the use of

16    other solvents such as ether is excluded.

17         Claims involved in a reexamination are ordinarily given the broadest

18    reasonable construction. *Yamamoto*, 740 F.2d at 1571, 222 USPQ at 936.

19    However, a narrowed construction is appropriate where the patent has

20    expired, as is the case here. *Papst-Motoren*, 1 USPQ2d at 1656. The

21    language of Claim 1 is susceptible to the narrow construction urged by

22    Patentee and we adopt that construction.[4] *Pabst-Motron,* 1 USPQ2d at

23    1656.

_____

[4] We express no view on what mixtures might infringe or are "encompassed
by" the claims under the doctrine of equivalents. See Reply Brief in
Response to Supplemental Examiner's Answer filed September 9, 2005, p.
7, n. 1 and accompanying text.

Appeal 2007-1366
Application 90/005,090

1    **Obviousness**

2        **Analogous Art**

3        Patentee argues, in effect, that Quaal is non-analogous art. Quaal is

4    said to be non-analogous because Quaal does not relate to oxygen permeable

5    contact lens materials. Analogous art includes references which are in the

6    field of the inventor's endeavor or are reasonably pertinent to the problem

7    with which the inventor was concerned. *Kahn*, 441 F.3d at 986-87, 78

8    USPQ2d at 1336.

9        The field of Patentee's endeavor is making contact lens materials. As

10   part of Patentee's claimed method of making contact lens materials, Patentee

11   expressly includes the method of making the comonomer TRIS. Thus,

12   methods of making TRIS are clearly part of the relevant field of endeavor.

13   Further, Gaylord describes methods of making TRIS as well as other

14   comonomers useful for making contact lens materials. Tanaka, while not

15   describing TRIS as a comonomer, describes methods of making the

16   comonomers used in the manufacture of contact lens materials there

17   described. These teachings show that methods of making comonomers are

18   part of the field of making contact lens materials. Quaal's teaching of a

19   method of making the comonomer TRIS, a comonomer known to be used in

20   contact lens materials, is part of the field of Patentee's endeavor. Quaal is

21   analogous art. *Kahn*, 441 F.3d at 986-87, 78 USPQ2d at 1336.

22       Gaylord and Tanaka both relate to forming contact lens materials by

23   copolymerization. They are part of the same art as the claimed invention.

24       Thus, Gaylord, Tanaka and Quaal are analogous art and part of the

25   presumed knowledge of the person having ordinary skill. The hypothetical

26   person of ordinary skill in the art is presumed to have knowledge of all prior

Appeal 2007-1366
Application 90/005,090

1    art in the field of the invention. *Rouffet,* 149 F.3d at 1357, 47 USPQ2d at

2    1457).

3    **Combining Teachings**

4        Tanaka expressly teaches that multifunctional siloxyanyl ester cross-

5    linking agents may be used in place of conventional cross-linking agents,

6    such as ethylene glycol dimethacrylate, generally employed in the

7    polymerization of vinyl monomers. Tanaka, 8:2-14. Tanaka also teaches

8    that polyfunctional siloxyanyl ester cross-linking agents are preferred

9    because the siloxane bonds in those molecules provide high oxygen

10    permeability to the copolymer. Tanaka, 8:35-39. Thus, one having ordinary

11    skill in the art would have recognized that the oxygen permeability of

12    Tanaka's contact lens materials was due, <u>in part</u>, to the use of Tanaka's

13    preferred cross-linking agents. The person having ordinary skill in the art

14    would have been aware of the need for contact lens materials to have high

15    oxygen permeability. This known need in the art gives a reason for a person

16    of ordinary skill in the art to use Tanaka's preferred cross-linking agents.

17    Any need or problem known in the field of endeavor at the time of the

18    invention and addressed by the prior art can be a basis to combine teachings

19    of the references. *KSR,* 127 S.Ct. at 1741. The person having ordinary skill

20    in the contact lens art would have expected Tanaka's multifunctional

21    siloxyanyl ester cross-linking agents to act as cross-linking agents for the

22    comonomers used by Gaylord due to the presence of the terminal

23    unsaturated carbons ($=CH_2$). The conventional cross-linking agents taught

24    by Gaylord and Tanaka, as well as Tanaka's multifunctional siloxyanyl ester

25    cross-linking

Appeal 2007-1366
Application 90/005,090

1  agents, have terminal unsaturated carbons.[5]  It would have been expected,

2  and therefore obvious, to replace the conventional cross-linking agents

3  described by Gaylord with the multifunctional siloxyanyl ester cross-linking

4  agents preferred by Tanaka.

5      Patentee argues that Tanaka teaches away from using Tanaka's

6  polyfunctional siloxanyl ester cross-linking agents with comonomers of the

7  type used by Gaylord.  Patentee argues that Gaylord's ester monomers do

8  not have an internal glycerol group for increased hydrophilicity which

9  monomers are taught by Tanaka as having undesirable water-repelling

10  properties when used in contact lens material.  Patentee also relies on two of

11  Tanka's 53 examples, Examples 29 and 42, as indicating that Tanaka's

12  polyfunctional siloxanyl ester cross-linking agents actually decrease oxygen

13  permeability.

14      Tanaka does not teach away.

15      Tanaka provides ample reasons for using polyfunctional siloxanyl

16  ester cross-linking agents with comonomers other than those specifically

---

[5] Ethylene glycol dimethacralate, described as crosslinkers by both Gaylord
and Tanaka, may be represented by the following formula:

$$CH_2=\overset{\overset{\textstyle CH_3}{|}}{\underset{\underset{\textstyle O}{\|}}{C}}\text{-C-O-}(CH_2)_2\text{-O-C-}\overset{\overset{\textstyle CH_3}{|}}{\underset{\underset{\textstyle O}{\|}}{C}}=CH_2$$

Tanaka's preferred cross-linkers similarly have terminal unsaturated carbons
($=CH_2$).  For example. Tanaka's preferred siloxanyl alkyl esters include
those represented by general formula:

$$CH_2=\overset{\overset{\textstyle R_1}{|}}{\underset{\underset{\textstyle O}{\|}}{C}}\text{—C—O—}(CH_2)_n\text{—}\overset{\overset{\textstyle CH_3}{|}}{\underset{\underset{\textstyle CH_3}{|}}{Si}}\text{—}(O\text{—}\overset{\overset{\textstyle CH_3}{|}}{\underset{\underset{\textstyle CH_3}{|}}{Si}})_m\text{-}(CH_2)_n\text{—O—}\overset{\overset{\textstyle R_2}{|}}{\underset{\underset{\textstyle O}{\|}}{C}}\text{—C=}CH_2$$

Appeal 2007-1366
Application 90/005,090

1    described by Tanaka.  Tanaka teaches that the cross-linkers are a substitute

2    for "known cross-linking agents generally employed in the polymerization

3    of a vinyl monomer . . . ."  Tanaka, 7:62-8:14.  The cross-linking agents are

4    taught to be preferred because they provide contact lens materials having

5    good oxygen permability because of their siloxane bonds.  Tanaka, 8:35-39.

6    Lastly, the polyfunctional siloxanyl ester cross-linking agents are said to

7    provide hydrophilic groups which are beneficial for the hydrophilic property

8    of contact lens materials.  Tanaka, 8:39-46.

9        We fail to see why the fact that Gaylord's comonomers do not include

10   an internal glycerol group would teach away from the use of the cross-

11   linking agents taught by Tanaka.  The person having ordinary skill in the art

12   understands that the mechanism of cross-linking relies on the presence of the

13   terminal unsaturated carbon bonds.  The person having ordinary skill in the

14   art would have expected that Tanaka's preferred polyfunctional siloxanyl

15   ester cross-linking agents, which also include terminal unsaturated carbons

16   ($=CH_2$), would also be effective cross-linking agents with Gaylord's

17   comonomers.  We have not been directed to evidence in the record which

18   shows the contrary.

19       With respect to the comparison of the oxygen permeability of

20   Examples 29 and 42, we can not draw any conclusion from these examples.

21   The two examples are not comparable because of the different amounts of

22   organosiloxane comonomer.  The contact lens material of Example 29 is a

23   copolymer said to have been made from **40** grams of an organosiloxane

24   comomoner designated $S_3$, 50 grams of methylmethacrylate (MMA) and 10

25   grams of a polyfunctional siloxanyl ester cross-linking agent, TMSBPGMA

26   (tetramethyldisiloxanylbis (propylglycerol methacrylate)).  The oxygen

- 16 -

Appeal 2007-1366
Application 90/005,090

1    permeability of this composition was said to be $6.3 \times 10^{-10}$.  The contact lens

2    material of Example 42 is a copolymer made from **50** grams of $S_3$, 43 grams

3    of MMA and 7 grams of conventional cross-linking agent ethylene glycol

4    dimethacrylate (EDMA).[6]  The oxygen permeablility of the Example 42

5    copolymers is said to be $9.6 \times 10^{-10}$.  Based upon the difference in oxygen

6    permeability, Patentee asserts that the substitution of a polyfunctional

7    siloxanyl ester cross-linking agent, the conventional EDMA would be

8    expected to decrease oxygen permeability.  However, it appears that the

9    increased oxygen permability of the Example 42 copolymer may result from

10   the 10 gram increase in the amount of $S_3$ organosiloxane comonomer.  As

11   noted by Tanaka, "[t]he oxygen permeability of the copolymers of the

12   present invention is in proportion to the content of the before-mentioned

13   particular organosiloxane . . . ."  Tanaka, 11:23-25.  See also Tables 3, 4 and

14   8 which demonstrate the significant increase in oxygen permeability in

15   proportion to an increase in organosiloxane comonomer.   While we can not

16   draw any conclusion from a comparison of Examples 29 and 42, we note

17   that Tanaka credits at least a portion of the oxygen permeability of the

18   copolymer to the siloxane bonds in the multifunctional siloxanyl ester

19   crosslinking agent.  Tanaka, 8:35-39 ("Since these cross-linking agents . . .

20   have siloxane bonds in their molecules, the oxygen permeability of the

21   obtained cross-linked copolymers is high . . . .").  A person of ordinary skill,

22   upon reading Tanaka, would neither be discouraged from following the path

23   set out in the reference, nor be led in a direction divergent from the path that

24   was taken by Patentee.  *Gurley*, 27 F.3d at 553, 31 USPQ2d at 1131, *Syntex*,

---

[6] The compound ethylene glycol dimethacrylate may also be called
ethylenedimethacrylate.

Appeal 2007-1366
Application 90/005,090

1    407 F.3d at 1380, 74 USPQ2d at 1830. Tanaka does not teach away from

2    using multifunctional siloxanyl ester crosslinking agents.

3        Gaylord also does not describe the specifically claimed method of

4    making TRIS. At the time of Patentee's invention, TRIS was a known

5    comonomer useful in making contact lens materials. The hypothetical

6    person having ordinary skill in the contact lens material art would have been

7    aware of the known techniques for forming the contact lens comonomers

8    such as TRIS. Gaylord, for example, describes ways of making

9    comonomers, including two techniques for making TRIS. Gaylord,

10   Examples 1 and 22, 6:40-7:18 and 11:25-51. Quaal describes another.

11   Based on the record before us, one having ordinary skill in the art would

12   have expected that the source of the TRIS comonomer, i.e., the method of

13   making TRIS, would have little or no effect on the copolymerization process

14   and resulting contact lens copolymer. It would have been obvious,

15   therefore, to use TRIS made by any known process, including the process

16   taught by Quaal as the source for TRIS in the copolymerization process

17   taught by Gaylord. The substitution of a known method of making TRIS for

18   the known method expressly taught by Gaylord gives nothing more than the

19   predictable result and would have been obvious. *KSR*, 127 S.Ct. at 1739.

20   "The results of ordinary innovation are not the subject of exclusive rights

21   under the patent laws." *KSR*, 127 S.Ct. at 1745.

22       Patentee argues that there are differences between the claimed process

23   for making TRIS and the process specifically described by Quaal. For

Appeal 2007-1366
Application 90/005,090

1    example, Patentee notes that Quaal does not expressly describe making

2    TRIS from MAS and TMCS alone.[7]

3         One having ordinary skill in the art would have understood the

4    chemistry involved in Quaal's process and would have expected that TRIS

5    could be made by hydrolysis of MAS and TMCS alone.  Quaal teaches a

6    general reaction for making tris-siloxy acrylic silanes, such as TRIS, having

7    the general formula $(\mathbf{R_3SiO})_3Si\text{-}R'\text{-}OOCC(R'')=CH_2$.  This process involves

8    the cohydrolysis of two compounds, a compound having the formula

9    $X_3Si\text{-}R'\text{-}OOCC(R'')=CH_2$ and an excess of a compound of the type $\mathbf{R_3SiX}$.

10   Thus, Quaal's basic process only requires cohydrolysis of two compounds.

11        Patentee also makes much of the fact that Quaal's Example 1, which

12   is directed to making TRIS, does not teach making TRIS by cohydrolysis of

13   MAS and TMCS alone.

14        Quaal's Example 1 describes the cohydrolysis of MAS and TMCS

15   and a third compound, $(\mathbf{CH_3})_3\mathbf{SiOCH_3}$.  Example 1 in no way diminishes

16   Quaal's general teaching of reacting two compounds and is totally consistent

17   with that teaching.  A reference must be evaluated for all that it teaches, and

18   is not limited to its examples or preferred embodiments.  *Merck & Co. v.*

19   *Biocraft Labs., Inc.*, 874 F.2d 804, 807, 10 USPQ2d 1843, 1846 (Fed. Cir.

20   1989); *In re Fracalossi*, 681 F.2d 792, 794 n.1, 215 USPQ 569, 570 n.1

21   (CCPA 1982); *In re Lamberti*, 545 F.2d 747, 750, 192 USPQ 278, 280

22   (CCPA 1976).  Additionally, Quaal's general reaction may be represented

23   by the following equation:

24        $X_3Si\text{-}R'\text{-}OOCC(R'')=CH_2 + \mathbf{R_3SiX} \text{ (in } H_2O) => (\mathbf{R_3SiO})_3Si\text{-}R'\text{-}OOCC(R'')=CH_2$

---

[7] As we stated above at p. 9 we have adopted Patentee's construction of the
literal scope of Claim 1 as permitting only the cohydrolysis of MAS and
TMCS.

Appeal 2007-1366
Application 90/005,090

1   One having ordinary skill in the art would have fully understood the

2   chemistry of this reaction.  In particular, that person would have understood

3   that the tris siloxy component $((R_3SiO)_3)$ in the product comes from the silyl

4   moiety $(R_3Si)$ provided by the $R_3SiX$ reactant.  In Quaal's Example 1, there

5   are two $R_3SiX$ reactants: (1) $(CH_3)_3SiCl$ (TMCS) and (2) $(CH_3)_3SiOCH_3$.

6   Both provide the same silyl moiety $((CH_3)_3Si)$ and both meet the Quaal's

7   definitions for $R_3SiX$.  One having ordinary skill in the art would have

8   predicted and expected from Quaal's general teaching and an understanding

9   of the chemistry of the Quaal's cohydrolysis reaction that TMCS alone

10  would provide the necessary silyl moiety.  Making TRIS by the cohydrolysis

11  of MAS and TMCS alone would have been obvious.

12        Patentee also notes that Quaal does not expressly describe forming

13  TRIS by adding the reactants to 3-10 volumes of water.  Quaal, however,

14  provides an operative guideline for the amount of water to be used: "The

15  amount of water employed is not particularly critical except that enough

16  should be employed for the hydrolysis reaction to proceed at a satisfactory

17  rate."  Quaal, 1:50-53.  Thus, it is within the skill of those working in the art

18  to determine the appropriate amounts of water for use in making TRIS.  The

19  statement as to the amount of water does not distinguish Patentee's method

20  of making TRIS from Quaal's method in an unexpected or unobvious way.

21        Patentee also notes that Quaal uses a water-solvent mixture in the

22  hydrolysis reaction rather than water alone as required by Claim 1.  Quaal,

23  while preferring to use a solvent, characterizes the solvent as "not essential

24  to the process."  Quaal, 1:55.  Thus, the making of TRIS without the use of

25  a solvent is suggested, is within the ordinary skill in the art, and would have

26  been obvious.

- 20 -

Appeal 2007-1366
Application 90/005,090

1    Patentee's specific method of making TRIS follows Quaal's teachings

2    and recites process specifics which are within the level of skill in the art and

3    provide only the expected results. The substitution of Quaal's known

4    method for making TRIS for the method expressly described by Gaylord

5    would have been obvious.

6        **Secondary considerations**

7            **Neefe Declaration**

8    Patentee relies on the Neefe declaration asserting secondary

9    considerations of unexpected results, commercial success, long felt need and

10   copying of the invention by others. Reply Brief in Response to Supplemental

11   Examiner's Answer, p. 3.

12   The Neefe declaration has been carefully considered. However, it is

13   insufficient to prove secondary considerations of non-obviousness.

14   Patentee argues that the contact lens materials which result from the

15   claimed process have unexpectedly high oxygen permeability as compared

16   to the materials described by Gaylord. Reply Brief in Response to

17   Supplemental Examiner's Answer filed September 9, 2005, p. 3, p. 20.

18   Patentee asserts that the declaration establishes unexpected results in that the

19   "Claim 1 method provided contact lens polymer materials that were as much

20   as 30 times more oxygen permeable than were commercial products

21   manufactured according to the teachings of Gaylord." Reply Brief in

22   response to Supplemental Examiner's Answer filed September 9, 2005,

23   p. 20. Specifically, Patentee relies on ¶ 9 of the Neefe declaration.

24   Paragraph 9 relies on an Exhibit 3, said to be attached to the declaration, to

25   show a comparison between the Gaylord materials and those made with the

26   process of the invention. However, no document identifiable as Exhibit 3 is

1    attached to the Declaration in the official PTO record and an Exhibit 3 was

2    not located in a review of that record.[8] Based upon the record before us,

3    Patentee failed to prove unexpected results.

4         In any event, taking the declaration statements in ¶ 9 at face value, the

5    declaration does not establish that the materials were comparable and

6    differed only in the cross-linking agent. To show unexpected results, a

7    comparison of the invention with the prior art must be under identical

8    conditions except for the novel features of the invention. *In re Brown*,

9    459 F.2d 531, 173 USPQ 685 (CCPA 1972).

10        Patentee also relies on ¶¶ 8-10 of the Neefe declaration to show

11   commercial success, long felt need and copying by others. Reply Brief in

12   Response to Supplemental Examiner's Answer filed September 9, 2005,

13   p. 3, p. 20.

14        Secondary considerations such as commercial success, long felt need,

15   and copying by others, while relevant to the obviousness inquiry, must be

16   proved with clear and convincing evidence. *Snow*, 471 F.2d at 1404,

17   176 USPQ at 331; *Miegel*, 404 F.2d at 381, 159 USPQ at 717; *Heyna*,

18   360 F.2d at 228, 149 USPQ at 697; *Lohr*, 317 F.2d at 388, 137 USPQ at

19   550-551. Patentee has provided only conclusory statements. With respect to

20   commercial success, Patentee has not provided evidence of actual sales,

21   market share, growth in market share, replacing earlier units sold by others

22   or of dollar amounts, and no evidence of a nexus between sales and the

---

[8]    There appears to be three documents attached to the declaration. The documents marked Exhibit 1 and Exhibit 2 are single page documents showing reproductions of chemical structure models. The third document is titled "Declaration of Sutton under 37 CFR § 1.132." The relevance of this document to the appeal is not readily apparent.

1   merits of the invention. *Kansas Jack, Inc. v. Kuhn et al.*, 219 USPQ 857,

2   861 (Fed. Cir. 1983). Similarly, with respect to long-felt need, Patentee has

3   not proved that there was recognition in the art of a problem that existed for

4   a long period of time without solution. *Iron Grip Barbell Co. v. USA Sports,*

5   *Inc.*, 392 F.3d 1317, 1325, 73 USPQ2d 1225, 1230 (Fed. Cir. 2004); *In re*

6   *Mixon*, 470 F.2d 1374, 1377, 176 USPQ 296, 299 (CCPA 1973). Lastly,

7   while copying of a claimed invention can be evidence of nonobviousness

8   (*Panduit Corp.* v. *Dennison Manufacturing,* 227 USPQ at 349 (Fed.Cir.

9   1985)), Patentee has provided only the bare statement "virtually the entire

10   RGP industry uses my invention." Neefe Declaration, filed January 19,

11   2001, p. 3, ¶ 10. Assuming the truth of this statement, a mere use of the

12   invention alone is not sufficient to prove that the invention was copied. *Iron*

13   *Grip Barbell*, 392 F.3d 1317 at 1325, 73 USPQ2d at 1230 ("Not every

14   competing product that arguably falls within the scope of a patent is

15   evidence of copying.").

16       Patentee's declaration does not establish clear and convincing

17   evidence of any secondary considerations of non-obviousness.[9] Indeed,

18   Patentee's declaration does not establish secondary considerations by even a

19   preponderance of the evidence.

20                   **ORDER**

21       The decision of the examiner is affirmed.

22

23

24

---

[9] We have not separately listed each of the plethora of arguments raised by
Patentee. However, each has been carefully considered but not persuasive of
patentability and finds response in the analysis above.

Appeal 2007-1366
Application 90/005,090

1

2     KENYON & KENYON LLP
3     1500 K STREET N.W.
4     SUITE 700
5     WASHINGTON DC 20005
6

7

8

9

10    mg

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

----------------------------------------------------------------x
                                                :
DOME PATENT L.P.,                               :
                                                :
                            Plaintiff,          :    ECF CASE
                                                :
            - v -                               :    No. 07-1695 (PLF)
                                                :
JON W. DUDAS,                                   :    [PROPOSED] ORDER DENYING
Under Secretary of Commerce for Intellectual    :    MOTION TO DENY OR STAY
Property and Director of the United States Patent :  DISCOVERY
and Trademark Office,                           :
                                                :
                            Defendant.          :
                                                :
---------------------------------------------------------------- x-

       This matter having been opened to the Court on the application of defendant Jon

W. Dudas for an Order, "pursuant to Rule 26(c)(1) of the Federal Rules of Civil

Procedure, . . . to deny discovery, or in the alternative, to stay discovery pending

resolution of defendant's dispositive motion"; and it appearing that the Federal Rules of

Civil Procedure apply to this civil action commenced under 35 U.S.C. § 145; and it

further appearing that the defendant has failed to demonstrate that he or the United States

Patent and Trademark Office would be subjected to "annoyance, embarrassment,

oppression, or undue burden or expense," Fed. R. Civ. P. 26(c)(1), if plaintiff were

permitted to seek discovery from third-parties under and in accordance with Rules 26 and

45 of the Federal Rules of Civil Procedure; and it further appearing that the defendant has

failed to establish that plaintiff has "waived" its right to take the discovery that it seeks in

this action; and good cause otherwise appearing, it is hereby

ORDERED, that defendant's motion to deny or stay discovery pursuant to Fed. R. Civ. P. 26(c)(1) be, and the same hereby is, DENIED in all respects.

Dated:  February ___, 2008

_____
                    Paul L. Friedman
                    United States District Judge

562625