**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DOME PATENT L.P. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 07-1695(PLF) |
| | ) |
| JON W. DUDAS, | ) |
| Under Secretary of Commerce | ) |
| for Intellectual Property | ) |
| and Director of the United | ) |
| States Patent and | ) |
| Trademark Office | ) |
| | ) |
| Defendant. | ) |
| | ) |
| _____ | ) |

**REPLY TO PLAINTIFF'S OPPOSITION**
**TO DEFENDANT'S MOTION TO STAY DISCOVERY**

**INTRODUCTION**

In opposing the U.S. Patent and Trademark Office's (USPTO) motion, plaintiff Dome Patent, L. P. (Dome) completely fails to address its intentional decision to ignore the New York District Court's 2000 and 2005 invitations to Dome to move to lift the stay in that Court.  Instead, it wholly side-steps its failure to do so, and simply points to its opposition to the stay in 1999.

Additionally, Dome misstates or misconstrues the scope and purpose of Section 145 actions, the scope and relevance of the evidence it seeks to discover (and presumably try to introduce), the potential burden on this Court, the USPTO, and the third parties it has subpoenaed.  Contrary to Dome's assertions, section 145 cases are for reviewing the underlying decisions of

the Board, not the next "step in a comprehensive statutory scheme" governing reexaminations, nor a mechanism for "provid[ing] full-blown discovery" "after the administrative process is complete." (Opposition, p. 10).  Even though Dome had a full blown trial in one patent case in California, had access to technical journals, experts, and numerous products, had available other information in the gas-permeable contact lens industry, and had failed, on two occasions, to seek to lift the stay in the District Court of New York, Dome failed to provide one single piece of evidence relating to secondary considerations of non-obviousness to the Examiner in the proceedings below. Dome was advised in 2001 and 2002 by USPTO that the unsubstantiated statements of its inventor were insufficient, yet Dome intentionally or negligently did nothing for over 6 years. Its intentional or negligent decisions during the reexamination process and the New York litigation preclude it from pursuing the discovery it now seeks from third parties.

Moreover, Dome's attempts to turn this Section 145 review of the administrative proceeding into a full-blown patent infringement and validity trial is contrary to this Circuit's precedent and the purpose of Section 145 actions.  The USPTO has a legitimate interest in trying to ensure that (1) Dome (or any party) does not turn Section 145 cases into full-blown patent infringement and validity litigation, and (2) Dome (or parties)

is required to fully present its case before the USPTO below.

**ARGUMENT**

I.   **This Court Should Not Circumvent the New York District Court's Order Staying Discovery Against the Defendants in That Case.**

As noted previously, although the District Court in New York stayed discovery because of the reexamination before the USPTO, the New York Court twice invited Dome to revisit the stay order if circumstances warranted lifting the stay (See Ex. 4 and Ex. 5). The first invitation from the District Court was in March 2000. A year later, in April 2001, the Examiner rejected the claims of the Neefe patent, and found that Dome's inventor declaration was insufficient, and was not commensurate with the scope of Dome's claims (See Exs. 6, 10). Yet Dome did nothing. Dome failed to advise the Examiner that allegedly relevant information was in the hands of third parties who were defendants in a pending New York District Court action. Notably, Dome failed to ask the New York District Court to lift the stay and, in its opposition, provides no explanation for its failure to do so.

In May 2002, the Examiner again rejected the claims of the Neefe patent, and again pointed out the evidentiary deficiencies in the Neefe Declaration (See Ex. 7). Nonetheless, Dome again did nothing in response to the Examiner's rejection of the Neefe Declaration, and again failed to ask the New York District Court

3

to lift the stay.  Dome has no plausible explanation for its
8-year-long failure to accept the invitation of the New York
District Court to present evidence or changed circumstance which
would warrant lifting of the stay.  Rather, it simply relies on
its initial opposition to the stay in 1999.  That opposition
fails to address its failure to take action for eight years.  The
record  is clear, the New York District Court specifically
advised Dome that it would revisit the matter at any time if Dome
came forward.  It did not.

Thus, the Court should not permit Dome to circumvent the
stay order issued by the New York Court by conducting discovery
against those defendants.

**II.  <u>Dome Misstates the Scope and Purpose of a Section 145
Case</u>.**

Dome erroneously asserts that a "§ 145 [action] is but one
step in a comprehensive statutory scheme" "that provides
full-blown discovery only after the streamlined administrative
process is complete." (Dome's Opp. at 10, 7 (emphasis in
original)).  Similarly, Dome erroneously argues that it is
entitled to "finish the statutory reexamination proceeding."
Opp. at 14 (emphasis in original).  In so arguing, Dome
misconstrues and mischaracterizes the scope and purpose of a
Section 145 action.

### A.    A Section 145 Action is a Review of a Decision Below, not a Continuation of Those Proceedings.

The Federal Circuit has recognized that a Section 145 case is, in essence, a type of review of administrative action, and therefore the District Court must employ a "standard of review for error in [the] agency decision." Fregeau v. Mossinghoff, 776 F.2d 1034, 1038 (Fed. Cir. 1985). The District Court applies the deferential "substantial evidence" standard to the Board's fact-findings. Mazzari v. Rogan, 323 F.3d 1000, 1004-05 (Fed. Cir. 2003). Although 35 U.S.C. § 145 does not specifically provide for the introduction of additional evidence, courts have found that parties have a limited right to supplement the administrative record, so long as the plaintiff can establish that it did not negligently or intentionally fail to provide that information during the proceedings before the USPTO. See Hyatt v. Dudas, No. 03-0901, 2006 WL 4606037, at *2 (D.D.C. Sept. 30, 2006) (citing Holloway v. Quigg, 9 U.S.P.Q. 2d 1751, 1752 (D.D.C. 1988)). Stated another way, a party must have been diligent, or it waives its rights to search for and introduce new evidence to the District Court. DeSeversky v. Brenner, 424 F.2d 857, 858 (D.C. Cir. 1970); Conservolite v. Widmayer, 21 F.3d 1098, 1102-03 (Fed. Cir. 1994); Velsicol Chem. Corp. v. Monsanto Co., 579 F.2d 1038, 1039 (7th Cir. 1978) (plaintiff's lack of effort demonstrated a lack of due diligence, which waived his right to later introduce that testimony).

As the record amply demonstrates, Dome has not been diligent in seeking evidence or providing evidence to the USPTO. Clearly, it has made either an intentional or negligent decision to stand on the 2001 Neefe declaration, rather than to seek to reopen discovery in the New York case or supplement it in any way by studies, experts, journals, etc. Dome has, therefore, waived any right it may have had to conduct the wide-ranging discovery of third parties it seeks here, especially from those parties who are defendants in the currently-stayed New York litigation. Velsicol Chem. Corp. v. Monsanto Co., 579 F.2d 1038, 1039 (7th Cir. 1978).

Importantly, Dome presented absolutely no evidence of "secondary considerations" to the USPTO during the reexamination. Dome merely presented as here, argument of counsel, and an unsupported statement of belief by the inventor of its patent as follows:

> My invention filled a long-felt need for higher oxygen permeability. The invention is commercially successful, since virtually the entire RGP [rigid gas permeable] industry uses my invention.

Ex. 10, 10 (Neefe Declaration).

Other than these two conclusionary sentences, Dome has failed to provide any evidence or data whatsoever to support its unsubstantiated assertions that claim 1 of the Neefe patent overcame a long-felt need in the industry, that it has been used (or copied) by most of the industry, and that it has achieved

6

substantial commercial success.

In fact, not only has Dome failed to ask the New York District Court to lift the stay in that litigation, it failed to provide any other evidence not in the hands of those third parties. Dome provided no information it discovered, or had the opportunity to discover in the California litigation against Pilkington Visioncare. Additionally, Dome failed to provide any expert or fact declarations (with supporting evidence) to the USPTO regarding the failure of others to solve the problem that Neefe allegedly solved or to substantiate his assertion that there was a long-felt need, a recognition and acceptance of the methods claimed in the Neefe patent, or commercial success. Dome failed to provide any industry reports, any surveys, any treatises, any books, or any scientific or marketing articles regarding the Neefe invention or gas permeable lenses.

Where, as here, a § 145 plaintiff fails to provide any reason or explanation as to why it failed to present available evidence to the USPTO, a court is to presume that plaintiff's failure was gross negligence:

> Plaintiff has not here made any explanation of his apparent refusal to offer, during this extended period in which the administrative decisions were consistently against him, the evidence which might have proven him right. Accordingly, this court must consider him grossly negligent in that failure, and refuse to consider it now.

Killian v. Watson, 121 U.S.P.Q. 507, 508 (D.D.C. 1958). The

rationale behind this rule is to encourage patent applicants to exhaust all of their administrative remedies before the USPTO, and to encourage "full disclosure to the administrative tribunals primarily responsible for just decision-making." <u>Killian</u>, 121 USPQ at 508; <u>see also</u> <u>Newman v. Quigg</u>, 877 F.2d 1575, 1579 (Fed. Cir. 1989) (citing <u>DeSeversky</u> for the proposition that "[i]t is generally improper to raise new issues in a § 145 action, on the principle of exhaustion of administrative remedies."). If such limits are not placed on the sort of evidence that may be introduced in a § 145 action, a patent applicant may simply avoid the technical expertise of the USPTO by presenting the Examiner and the Board with only broad general arguments about the patentability of its invention, and then bring its evidence to the District Court to be examined in the first instance. This is exactly what has happened here.

Despite the readily available means and opportunity to present supporting evidence, Dome has offered no reason why it failed to seek out and provide this evidence (if it exists) to the Examiner. Although Dome contends that evidence can only be "available" to it if it had that evidence in its hands (Opp. at 15-17), that is not the standard. <u>Kirschke v. Lamar</u>, 426 F.2d 870 (8th Cir. 1970). Dome had available to it the means to lift the stay in the New York District Court, to hire experts to obtain fact testimony, to research technical journals, and to try

to gather relevant information from the Pilkington litigation. Yet it did nothing.  Dome correctly contends that waiver is "an intentional relinquishment or abandonment of a known right or privilege." (Opp. at 13 (citing <u>Johnson v. Zerbst</u>, 304 U.S. 458, 464 (1938))).  Here, Dome knew that it had the right, indeed an invitation, for almost 8 years to seek to lift the stay in the New York District Court.  Dome also knew for almost 7 years that the Neefe Declaration was insufficient, but it likewise made the decision to do nothing about it.  These intentional (or negligent) decisions during the course of the past 7 years, with absolutely no explanation, waive Dome's right to seek to obtain that evidence here.  <u>See</u> <u>United States v. Johnson</u>, 289 F.3d 1034, 1041 (7th Cir. 2002).  Accordingly, this Court should prohibit Dome from engaging in discovery in a belated attempt to obtain marketing and technical information from third parties and defendants in the New York case, as well as any expert testimony related to that discovery.

    **C.**   **<u>Dome's Reliance on Section 146 Cases Is Misplaced</u>.**

Dome's reliance on Section 146 cases for such wide-ranging discovery is misplaced.  <u>See</u>, <u>e.g.</u>, Opp at 5, 13 (citing <u>Winner Int'l Royalty Corp. v. Wang</u>, 202 F.3d 1340 (Fed. Cir. 2000)). Those cases, however, do not support Dome's request to take discovery here.  Section 146 cases are contested cases between two private parties, not an <u>ex parte</u> proceeding by a party before

the USPTO.  In <u>Winner Int'l</u>, relied  on by Dome, the only issue
present was degree of deference that the District Court was
required to give to the Board's factual findings.  Since it was a
§ 146 case discovery and the introduction of new evidence was
decided by the private parties.  <u>Winner Int'l</u>, 202 F.3d at 1345.

Moreover, the record before the USPTO in a Section 146 case
is admitted to the District Court only upon motion by a party,
and Section 146 specifically provides that the parties have the
right to take further discovery, regardless of whether the record
below is admitted:

> [T]he record in the Patent and Trademark Office shall
> be admitted on motion of either party upon the terms
> and conditions as to costs, expenses, and the further
> cross-examination of the witnesses as the court
> imposes, without prejudice to the right of the parties
> to take further testimony.

35 U.S.C. § 146.

Conversely, the evidentiary record before the Board in a
Section 145 case is the evidentiary nucleus of the case.  <u>Gould
v. Quigg</u>, 822 F.2d 1074, 1076 (Fed. Cir. 1987).[1]  Thus, while
there are some similarities between contested actions (under
Section 146) and <u>ex parte</u> actions (under Section 145), whether
private parties may take discovery in a Section 146 has no

---

[1]  Admittedly in Section 145 cases additional discovery and
evidence may be presented to the District Court in limited
circumstances set forth in defendant's motion to stay.  Dome's
discovery and proposed attempt to supplement the record does not
fall within those circumstances.

bearing on the limits of discovery permissible in a Section 145 case.

**C.   Dome May Not Turn this Section 145 Action into a Full-Blown Infringement and Validity Trial.**

Dome's efforts to obtain and to introduce evidence of these third parties' "actual sales, market share, growth in market share, replacing earlier units sold by others, or of dollar amounts of contact lens material" must fail (Opp. at 4).  Dome claims this information is relevant to its assertions below of long-felt need and commercial success.  Id.  However, this evidence alone would be insufficient without Dome proving that those products actually infringe its patent and that there is a nexus between the commercial success of those products and its invention, Dome apparently misapprehends the law on secondary considerations of non-obviousness.  Allowing the discovery proposed by Dome will unduly burden the USPTO, this Court, and the third parties, and set a dangerous precedent for all future Section 145 cases.

As noted previously, the commercial response to an invention can be significant to a determination of obviousness.  See Graham v. John Deere Co., 383 U.S. 1, 35-36 (1966).  The rationale for giving weight to these so-called "secondary considerations" is that they provide objective evidence of how the patented device or method is viewed in the marketplace by those directly interested in the product.  Id.  That means that when a patentee,

such as Dome, asserts that secondary considerations support its contention of non-obviousness, it must establish a sufficient relationship between those considerations and the patented invention. Id. In other words, Dome must be able to first show that the accused product embodies the claimed invention, or the infringer uses the claimed method. Dome must also be able to show that any long felt need for the invention, or commercial success of the third parties' products were due to the merits of his invention beyond what was available in the prior art. See J.T. Eaton & Company, Inc. v. Atlantic Paste and Glue Co., 106 F.3d 1563, 1571 (Fed. Cir. 1997) (reversing district court because patentee failed to show nexus between commercial success and the claimed invention). The burden of proof lies with the patentee.

Thus, if Dome is permitted to engage in this discovery and introduce this new evidence, this "review of a Board decision" case will turn into an infringement trial, with the USPTO being forced to act as a proxy for the various private third parties. In the event USPTO disagreed with the newly acquired evidence presented by Dome, it would be forced to defend against Dome's assertions of infringement and nexus. In re Huang, 100 F.3d 135, 139 (Fed. Cir. 1996) (any evidence relating to third companies' sales, or method of manufacture would be irrelevant as a secondary consideration of nonobviousness). In effect it would

12

be put in the awkward position of defending private third-parties.

This is precisely why the USPTO has an interest in ensuring that the integrity of Section 145 actions are maintained, that patentees and patent applicants are not encouraged to ignore their obligations in the proceedings below, that Section 145 actions do not turn into full-blown, private party litigation. Dome's self-serving contention that the USPTO has no pecuniary or other legitimate interest in whether this Court allows it to proceed with this discovery is clearly wrong. This Court should not permit Dome to engage in wide-ranging discovery when the record demonstrates that it negligently or intentionally failed to obtain this evidence to present before the USPTO.

## CONCLUSION

For the foregoing reasons and the reasons stated in the defendant's motion to stay, the Court should deny discovery in this case.

13

Respectfully submitted,

__/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


__/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


__/s/_____
DIANE M. SULLIVAN, D. C. BAR # 12765
Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W.
Room E4919
Washington, D.C. 20530
(202) 514-7205


OF COUNSEL:
STEPHEN A. WALSH
Acting Solicitor
SHANNON M. HANSEN
HEATHER F. AUYANG
Associate Solicitors
United States Patent and Trademark Office

14