UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

------------------------------------------------------------------------ x
:
DOME PATENT L.P.,                                                         :
:
                              Plaintiff,       :      ECF CASE
:
                - against -                              :      07-1695 (PLF)
:
JON W. DUDAS,                                                             :
Under Secretary of Commerce for Intellectual Property    :
and Director of the United States Patent and Trademark    :
Office,                                                                   :
:
                          Defendants.     :
:
------------------------------------------------------------------------ x

**NOTICE OF SUPPLEMENTAL AUTHORITY
RE PLAINTIFF'S MOTION FOR RECONSIDERATION**

Plaintiff Dome Patent L.P. ("Dome") respectfully draws the Court's attention to the attached decision in *Hitachi Koki Co. v. Dudas*, No. 07-01504 (D.D.C. May 29, 2008) (Huvelle, J.). In *Hitachi*, Judge Huvelle expressly "decline[d] to adopt" the "stringent standard for the consideration of new evidence" (slip op. at 9) that the defendant has once again urged, in this case, as a purported basis for blocking Dome from seeking any discovery in this action. *Hitachi* is additional legal authority that supports the arguments made on page 2 of Dome's Motion for Reconsideration dated May 7, 2008, and on page 4 of Dome's Reply Memorandum dated June 2, 2008.

Dated: June 4, 2008

                                           FRIED, FRANK, HARRIS, SHRIVER
                                             & JACOBSON LLP

                                         By: _____/ s / James W. Dabney_____
                                              James W. Dabney, D.C. Bar # NY0036
                                              Stephen S. Rabinowitz, D.C. Bar # NY0085
                                              John F. Duffy, D.C. Bar # 442138
                                              Randy C. Eisensmith, D.C. Bar # NY0084

1001 Pennsylvania Ave, N.W.
Washington, D.C. 20004
Telephone: (202) 639-7000

One New York Plaza
New York, NY 10004
Telephone: (212) 859-8000

E-mail: james.dabney@friedfrank.com

Attorneys for Plaintiff
Dome Patent L.P.

7031894

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **HITACHI KOKI CO., LTD.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-01504 (ESH) |
| ) | |
| **JON W. DUDAS, Director, United States** ) | |
| **Patent and Trademark Office,** ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Hitachi Koki USA, Ltd. ("Plaintiff" or "Hitachi") seeks review under 35 U.S.C. § 145 of a decision of the United States Patent and Trademark Office's Board of Patent Appeals and Interferences (the "Board") denying Hitachi a patent for its desktop cutting machine with a tiltable saw. Before the Court are the parties' cross-motions for summary judgment.

**BACKGROUND**

On January 20, 1995, the United States Patent and Trademark Office ("USPTO" or "PTO") issued U.S. Patent Number 5,425,294 to Hitachi. (Pl.'s Stmt of Disputed and Nondisputed Material Facts ["Pl.'s Stmt Facts'] at No. 1.) On June 20, 1997, Hitachi filed a reissue application resulting in claims 1-3, 26, 27, 37, 48-56, and 58-62. (*Id.* at No. 2.) Pursuant to 35 U.S.C. § 251, a patentee may surrender a patent if a defect is found. A reissue application is examined in the same manner as a newly submitted application and is subject to the same requirements that govern newly submitted applications. *See* 37 C.F.R. § 1.176(a).

After reviewing Hitachi's reissue application, the examiner denied Claims 1-3, 26, 27,

1

37, 48-56, and 58-62 as unpatentable under 35 U.S.C. § 103(a), which bars the issuance of a patent if "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a).  (*See* Joint Ex. 4 ["Final Office Action"].)  Plaintiff appealed to the Board, but requested only that the Board review Claim 1.  (Ex. 2 [Board Decision on Appeal (Oct. 19, 2006)] at 3 ("For the convenience of the Board, Appellant will argue the patentability of independent claim 1.  The other claims stand or fall together with claim 1.").)  Claim 1 of the reissue application provides for:

> A desk-top cutting machine, comprising:
>
> a base on which a workpiece to be cut is supported, said base including a top surface;
>
> a turntable rotatably disposed in said base and including a top surface;
>
> a holder supported by said turntable for tilting transversely in opposite directions about a zero-tilt angle position;
>
> a circular saw blade;
>
> a saw shaft located above said holder for supporting said saw so that said saw is swung up and down relative to said base, about a pivot shaft;
>
> a circular saw assembly having a motor covered by a housing;
>
> a motor shaft of said motor being disposed in parallel with and above said shaft;
>
> transmission means through which said motor shaft is connected to said saw shaft so that an axis of said motor shaft is shifted from an axis of said saw shaft by a distance which is greater than or equal to the radius of said circular saw blade, wherein when said holder

        is tilted in either of said opposite directions by an angle greater
than or equal to 45 degrees with respect to the zero-tilt angle
position, said housing does not contact said top surface of said
base.

(Pl.'s Stmt Facts at No. 3.)

        The Board affirmed the denial of Claim 1.  The Board first found that prior art U.S. Patent 5,357,834 issued to Ito *et al.* ("Ito" ) describes every aspect of desktop cutting machine defined in Hitachi's Claim 1 except that it does not have "a motor shaft of said motor being disposed in parallel with and above said saw shaft" or  "transmission means through which said motor shaft is connected to said saw shaft so that an axis of said motor shaft is shifted from an axis of said saw shaft by a distance which is greater than or equal to the radius of said circular saw blade, wherein when said holder is tilted in either said opposite directions by an angle greater than or equal to 45 degrees with respect to the zero-tilt angle position, said housing does not contact said top surface of said base." (Joint Ex. 2 at 12-13.)[1]   The Board then went on to consider whether persons having ordinary skill in the art would have had the idea and ability to make these modifications to permit 45 degree descension of the saw in both directions from the zero-tilt, and it concluded that they would.

        The Board found that plaintiff's Admitted Prior Art ("AAPA")[2] and Ito disclose the problem that Hitachi's design was created to solve.  They show that the housing for the motor driving the motor shaft on a conventional miter saw prevents the user from making cuts at a 45-

---

    [1]  Plaintiff does not genuinely dispute this finding.  (*See* Pl.'s Stmt. Facts at No. 5.)

    [2]  AAPA or Applicant's Admitted Prior Art is "parlance adopted by the U.S. PTO to refer to the disclosure in the '294 patent at col. 1:11-33 and Figures 6 and 7, wherein patentee describes a prior art, single bevel desktop miter saw."  (Pl.'s Mot. 2.)

degree angle to either side of zero-tilt because when tilted in one direction, the housing for the motor makes contact with the surface of the workpiece base.  (*Id.* at 15.)   Ito attempted to address this problem by placing the motor shaft and the saw shaft in separate, intersecting planes connected by beveled gears.  (*Id.* at 14-16.)

The Board then determined that persons having ordinary skill in the art would have learned from three prior references that displacing the saw blade parallel from its motor by a distance greater than the radius of the circular saw blade permits the tilting of the saw to achieve 45 degree cuts without obstruction.  The Board found that the Johnson patent, U.S Patent 4,574,670, discloses a cutting machine that permits multiple angle cutting of at least 45 degrees to either side of the zero-tilt and a person having ordinary skill in the art "would have understood from Johnson's teaching that the sizes and configurations of his composite driving motor . . ., drive train . . ., and cutting member . . . impart ±45° capability to the cutting member."  (*Id.* at 17.)   The Board next considered the Langworthy patent, U.S. Patent 1,417,669, which also shows "a motor shaft . . . disposed in parallel with and above said saw shaft; and the transmission means through which the motor shaft is connected to the saw shaft so that the axis of the motor shaft is shifted from an axis of said saw shaft by a distance which is greater than the radius of said circular saw blade."  (*Id.* at 18.)  The Board noted that although Langworthy is a surgical saw, it teaches that "[t]he saw may be of various sizes, complementary to the saw . . . and these elements may be changed at will, to adapt them for different uses." (*Id.* at 19 (quoting Joint Ex. 6 [Langworthy Patent] p. 2, col. 1, lines 49-53).)   Langworthy further explains that the "[t]he arm may readily be manipulated to attain cuts at various angles and depths for cranial and other cuts, and the laterally disposed saw affords an instrument which may be manipulated with

4

facility and accuracy in the operations." (*Id.* (quoting Joint Ex. 6, p. 2, 1. 69-74).)  Finally, the Board determined that Ambrosio would have taught a person of ordinary skill that 45 degree cuts could be achieved by displacing the motor shaft parallel from the saw shaft, so that the axis of the motor shaft is shifted from the axis of a saw shaft by a distance greater than the radius of the circular saw blade.  (*Id.* at 19-20).

The Board therefore concluded that "[i]n light of the combined prior art teachings, we find that persons having ordinary skill in the art would have had the instruction and the motivation to make and use a desk-top cutting machine having the design and/or construction claimed."  (*Id.* at 20.)  On December 15, 2006, plaintiff requested rehearing, arguing that Langworthy and Ambrosio were not analogous art and that the Board misunderstood the teachings of Johnson with respect to its ±45°degree cutting capabilities.  (Joint Ex. 3 [Decision on Request for Rehearing] at p. 1-4.)  On June 21, 2007, the Board affirmed its denial of Claim 1. (*Id.* at 6.)

On August 21, 2007, plaintiff brought suit pursuant to 35 U.S.C. § 145, requesting that the Court reverse the decision of the Board and adjudge that Hitachi is entitled to reissuance of its patent for the invention claimed in claims 1-3, 26, 27, 37, 48-56, and 58-62.  On December 19, 2007, defendant filed a motion for summary judgment seeking affirmance of the Board's decision as supported by substantial evidence.  On February 13, 2008, plaintiff filed a cross-motion for summary judgment, offering as evidence four new declarations.  Declarant Hatch is an expert in the field of tool design and of miter saws.  (Joint Ex. 11 [Declaration of Paul Hatch] ¶¶ 4-5.)  He explains the limitations of prior art miter saws and the benefits of the Hitachi invention.  (*Id.* ¶¶ 8, 10.)  He claims that the Board misconstrued Johnson, Langworthy, and

5

Ambrosio and that a person of skill in the art would not have had any reason to combine those references with the AAPA or Ito. (*Id.* ¶¶ 16-21.)  Declarant Katz is a master carpenter who explains that the Hitachi design met a long felt need of carpenters and was universally copied by other manufacturers.  (*See* Joint Ex. 12 [Declaration of Gary Katz] ¶¶ 2, 15.)  Declarant Hopkins is the Vice-President of Hitachi America.  (*See* Joint Ex. 14 [Declaration of Benjie Hopkins] ¶ 2.) He states that when the Hitachi dual bevel miter saws were introduced in Japan and in the United States, they were a commercial success despite being more expensive than their single bevel counterparts.  (*Id.* ¶ 12.)  He explains that this technology has since been adopted by many tool companies, many of whom are Hitachi licensees.  (*Id.* ¶ 17.)   Declarant Ushiwata, the named inventor, explains the level of ordinary skill in the art and the problems he addressed in connection with prior art saws before arriving at his invention. (*See* Joint Ex. 13 [Declaration of Shigeharu Ushiwata] at ¶¶ 9-16.)   He further testifies about the differences between his design and that of Ito and how his design became the industry standard.  (*Id.* ¶¶ 17-18.)   Plaintiff argues on the basis of these declarations that the Court should find it entitled to a patent for its invention.  The Court will now consider both motions.

## ANALYSIS

I.  **LEGAL STANDARDS**

  A.  **Summary Judgment**

Under Fed. R. Civ. P. 56, a motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  In considering a

motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences drawn in his favor." *Id.* at 255; *see also Wash. Post. Co. v. United States Dep't of Health and Human Servs.*, 865 F.2d 320, 325 (D.C. Cir. 1989).

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the non-movant fails to point to "affirmative evidence" showing a genuine issue for trial, *Anderson*, 477 U.S. at 257, "summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e).

B. **Standard of Review under 35 U.S.C. § 145**

"A dissatisfied patent applicant may challenge a Board decision by either appealing directly to the Federal Circuit . . . or by filing a civil action to obtain a patent in the United States District Court for the District of Columbia . . . ." *Takeda Pharmaceutical Co., Ltd., v. Dudas*, 511 F.Supp.2d 81, 85 (D.D.C. 2007). *Compare* 35 U.S.C. § 141 *with* 35 U.S.C. § 145. Section 145 provides, in pertinent part, that the district court "may adjudge that such applicant is entitled to receive a patent for an invention, as specified in any of his claims involved in the decision of the [Board]." 35 U.S.C. § 145. Thus, under this provision, "a district court has the power to set aside any ruling refusing a patent," *Mazzari v. Rogan*, 323 F.3d 1000, 1004 (Fed. Cir. 2003), and determine patentability *de novo*. *See Newman v. Quigg*, 877 F.2d 1575, 1579 (Fed. Cir. 1989).

An action under § 145 is "a hybrid of an appeal and a *trial de novo*." *Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1345 (Fed. Cir. 2000)(citations omitted). *See also Monsanto Co. v. Kamp*, 269 F.Supp. 818, 822 (D.D.C. 1967). "It is not a conventional appeal

7

because the Court is not confined to the administrative record." *Putman v. Dudas*, 539 F.Supp.2d 414, 419 (D.D.C. 2008). When a patent applicant seeks "direct review in federal district court" the applicant may "present to the court evidence that the applicant did not present to the PTO." *Dickenson v. Zurko*, 527 U.S. 150, 164 (1999) (citation omitted). *See also Mazzari*, 323 F.3d at 1004 ("A section 145 review is distinct from a section 141 appeal in that it affords the applicant an opportunity to present additional evidence . . . ."). However, "the action is not a genuine trial *de novo* because there are limits on the evidence and issues the applicant may present to the Court." *Putman*, 539 F.Supp.2d at 419. The Court may not consider new issues not raised before the PTO, *see DeSeversky v. Brenner*, 424 F.2d 857, 858 (D.C. Cir. 1970), and "may only evaluate 'new evidence' if it supplements issues previously raised before the PTO." *McKay v. Quigg*, 641 F.Supp. 567, 569 (D.D.C. 1986) (citation omitted). "To the extent the applicant presents new evidence challenging particular factual findings, the Court reviews the Board's factual findings *de novo* [but] the Court applies the substantial evidence standards to Board's factual findings as to which the applicant presents no new evidence." *Takeda Pharmaceutical*, 511 F.Supp.2d at 86 (citation omitted).

II.     **PLAINTIFF MAY SUBMIT ITS DECLARATIONS AS NEW EVIDENCE**

As a threshold matter, the Court must determine whether plaintiff may, under Section 145, offer the four new declarations not previously submitted to the Board. If accepted by the Court, these declarations "would entitle [plaintiff] to *de novo* review of every fact-finding of the Board [it] challenged." *Hyatt v. Dudas*, 2005 WL 5569663, at *4 (D.D.C. Sept. 30, 2005) (quoting *Mazzari*, 323 F.3d at 1005)). Defendant contends that the Court should not consider these new declarations because they were not previously submitted to the Board.

8

While Section 145 provides for the submission of new evidence before the district court, "[c]ourts in the District of Columbia have established a doctrine limiting this entitlement." *Id.* at *5. It is well-established that an applicant may not raise new arguments in a § 145 action that were not previously presented to the examiner or the Board. *See, e.g.*, *Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.*, -- F.3d -- , 2008 WL 1932768, at *3 (D.C. Cir. Apr. 29, 2008) (citing *DeSeversky*, 424 F.2d at 858). Moreover, courts have excluded new evidence if it was "available to the parties, but was withheld from the Patent Office as a result of fraud, bad faith, or gross negligence . . . ." *Monsanto Co.*, 269 F.Supp. at 822 (citations omitted). "The Federal Circuit, which provides the controlling law in this case, has neither accepted nor repudiated . . . [this line of cases] limiting the entitlement to submit new evidence in Section 145 actions. Nevertheless, the PTO has adopted these guidelines, citing explicitly to D.C. Circuit and D.C. district court cases." *Hyatt*, 2005 WL 5569663, at *5 n. 4. *See also* MANUAL ON PATENT EXAMINING PROC. § 1216.02. There is no indication here that plaintiff's failure to introduce the four declarations rises to the level of fraud, bad faith, or gross negligence.

Defendant, however, points to a handful of cases in this Court, which have adopted an even more stringent standard for the consideration of new evidence. Defendant relies primarily on *Hyatt v. Dudas*, in which Judge Kennedy declined to consider new evidence "negligently submitted after the end of administrative proceedings." *Hyatt*, 2005 WL 5569663, at *7. This articulation of the "new evidence" standard represents a significant departure from the PTO's guidelines and, as plaintiff argues, would "render an appeal under § 145 . . . nearly indistinguishable from a direct appeal to the Federal Circuit, and would render the purpose of the statute duplicative and meaningless." (Pl.'s Reply 10.) The Court therefore declines to adopt the

9

*Hyatt* standard for considering new evidence in this case.

However, even if the Court were to apply *Hyatt*, this case is factually distinguishable. Plaintiff, like Hyatt, justifies submitting its declaration on the grounds that it had no prior opportunity to respond to the Board's new grounds for upholding the examiner's rejection. (*Id.* 8.) "A patent applicant must have the opportunity to respond to new grounds for claim rejections put forth by the Board." *Hyatt*, 2005 WL 5569663, at * 6 (citing *In re Waymouth*, 486 F.2d 1058, 1061 (CCPA 1973)). But in this case, it is apparent from the Board's opinion that the record with which it was confronted was unclear and incomplete. As explained by the Board

> [t]he information disclosed, and issues relating to rejections on appeal based on information disclosed, by certain prior art refer[e]nces have not been fully analyzed, discussed and/or developed as a result of the haphazard prosecution and briefing in this case. For example, it is not clear from the record the extent to which the examiner continues to rely on the prior art teachings of Langworthy and Ambrosio. Nor has the examiner expressly denied appellant's argument that Haffner is nonanalogous art. The examiner's belated citation and application of Haffner has limited his, and hinders our, analysis of the teachings and pertinence thereof. Moreover, Bergler's teachings appear to be cumulative at best of all that the AAPA and Ito disclose. In short, the term "desk-top cutting machine" has not been interpreted, the full scope and content of the claimed subject matter has not been determined, the knowledge and skill in the art has not been discussed adequately, and the differences between all the prior art cutting machines and the cutting machines appellant clams have not been clearly identified.

(Ex. 2 at 4-5.) Given the Board's description of the state of the record prior to its decision, the Court cannot conclude that plaintiff had "fair opportunity to react to the thrust of the rejection" prior to this action. *In re Kronig*, 539 F.2d 1300, 1302 (CCPA 1976). While the Court acknowledges that Johnson, Langworthy, and Ambrosio were referenced in the examiner's decision, it is clear from a review of the pleadings presented to the Board (*see, e.g.*, Joint Ex. 5

10

[Reply Brief]; Joint Ex. 16 [Examiner's Answer]), that the examiner's reasons for rejection were revised at each stage of this lengthy litigation, leaving plaintiff without a clear indication as to which argument(s) it needed to rebut.  The Court therefore concludes that plaintiff must be permitted to introduce new evidence to counter the specific grounds of rejection laid out in the Board's decision.[3]  Because the admission of the declarations directly challenges the factual findings underlying the Board's determination of obviousness,  plaintiff has demonstrated that material issues of fact preclude granting summary judgment both to defendant and to plaintiff.[4]

---

[3] Defendant argues that even if the declarations are admitted as evidence, the declarants' representations as to commercial success and copying should be excluded because these issues were not raised before the Board.  (*See* Def.'s Opp'n 11-12.)  Plaintiff contends that this type of evidence should be admissible "because Hitachi never had cause to present such evidence during the administrative proceedings."  (*See* Pl.'s Reply 5.)  Plaintiff maintains that it "time-after-time overcame the Examiner's obviousness rejection without the need to present such rebuttal evidenced," so that this evidence "first became relevant when the Board offered a new rationale for rejecting the claims."  (*Id.* 6.)  The Court finds this argument unpersuasive.

As plaintiff recognizes, "[e]vidence of factors such as commercial success and long felt need and copying may rebut a PTO assertion of obviousness where the patentee provides a nexus between the objective factors and the claimed invention."  (Pl.'s Mot. 7 (citing *Ormco Corp. v. Align Technology*, 463 F.3d 1299, 1311-12 (Fed. Cir. 2006).)  While the Court agrees that the rationale supporting the denial of the patent shifted at each stage of the litigation, it is also entirely clear that *every* denial was based on a finding of obviousness. Plaintiff offers no explanation for its failure to present evidence of commercial success and copying to rebut this finding at any stage prior to this action.  *See In re Oetiker*, 977 F.2d 1443, 1445 (Fed. Cir. 1992) (objective evidence of non-obviousness may be used to rebut a *prima facie* case).  Commercial success and copying are sub-issues of obviousness, but they are nonetheless distinct issues that must be raised before the Board before they can be considered by this Court.  *See MacKay v. Quigg*, 641 F.Supp. 567, 570-71 (D.D.C. 1986).  Plaintiff's declarations are thus admissible only insofar as they relate to issues previously raised before the Board.

[4] Defendant requests that in the event that the Court accepts plaintiff's new evidence, that he be permitted the opportunity to retain his own experts and/or conduct any discovery necessary to respond.  (*See* Def.'s Opp'n 3.)  This request will be granted.

### III.   PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT FAILS

The Court now turns to plaintiff's final argument,[5] which is that even without the declarations, it is entitled to summary judgment.  (*See* Pl.'s Reply 10.)  Plaintiff argues that the Board's conclusion regarding the prior art capability to bevel cut ±45° is not supported by substantial evidence because the Board legally erred by relying on the diagrams in prior art patent drawings as a basis for the disclosure of the claimed elements because those drawings were not to scale.  (*See* Pl.'s Opp'n 4 (citing *Nystrom v. Trex Co.*, 424 F.3d 1136, 1149 (Fed. Cir. 2005)) ("speculative modeling premised on unstated assumptions in prior art patent drawings cannot be the basis for challenging the validity of claims reciting specific dimensions not disclosed directly in such prior art").)    However, as defendant correctly points out, the Board's findings were not simply based on the figures contained in the patents, but rather in the discussion of those prior art references.  (*See* Def.'s Opp'n 15-17.)   The case law plaintiff cites does not stand for the proposition that the Board may never consider the figures for any purpose, but only that the Board may not place full reliance upon them for exact dimensions  "if the specification is completely silent on the issue."  *Nystrom* , 424 F.3d at 1148 (quotation marks and citation omitted).  The prior art references here are not completely silent.  Johnson, in particular, expressly discloses "± 45° capability of the cutting member positioning mechanism

---

[5] Plaintiff has also argued that it should entitled for "equitable reasons" to argue the remaining nineteen claims that it declined to raise before the Board.   It is well-established that the Court must "abstain from consideration of an issue that has not been presented to the Patent Office."  *DeSeversky*, 424 F.2d at 859.  "Otherwise, the Court is left to wrestle with issues and evidence that did not receive the 'Patent Office['s] expertise in the first instance[,] [which] may either obviate the need for judicial consideration, or illuminate the issues and facilitate the court's disposition."  *Putnam*, 539 F.Supp.2d at 419 (quoting *DeSeversky*, 424 F.2d at 859).  Plaintiff has provided no persuasive justification for its failure to litigate these nineteen claims before the Board and therefore may not raise them in this action.

17" (Ex. 8 [Johnson] at col. 5, lines 13-15, col. 7, lines 9-12), while Langworthy and Ambrosio discuss the significance of the ability to make cuts at various angles.[6]  Morever, plaintiff continues, as it did before the Board, to parse each reference individually, despite the fact that "the rejection is based upon the teachings of a combination of references." (Joint Ex. 3 at 3.) This ignores the Supreme Court's explanation that "[c]ommon sense teaches . . . that familiar items may have obvious uses beyond their primary purposes, and in many cases a person or ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle." *KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727, 1739 (2007).  Without the new declarations, plaintiff has failed to demonstrate that the Board's decision was not supported by substantial evidence.  Plaintiff's motion for summary judgment will therefore be denied.

## CONCLUSION

For the reasons stated herein, defendant's motion for summary judgment is **DENIED** and plaintiff's motion for summary judgment is **DENIED**.  A status conference is set for July 14,

---

[6] Plaintiff vigorously argues here, as it did before the Board on rehearing, that this statement refers exclusively to the miter cutting capability of Johnson's claimed apparatus, not its bevel cutting capability. (*See* Pl.'s Reply 13-18.)  In its decision on rehearing, the Board relies on the Johnson figures not as the sole basis for determining that this prior art reference teaches the specific dimension recited in plaintiff's claim, but to assist it in interpreting what Johnson's discussion of the $\pm 45°$ capability of his apparatus actually teaches. (*See* Ex. 3 at 2-3.) Similarly, the Board's references to the figures help to clarify the meaning of Ambrosio's disclosure of "a tilting table saw having new and improved means for varying the angular position of the saw blade relative to the work-supportable table" (Ex. 10 [Ambrosio] at col 1, lines 8-11) and Langworthy's statement that the "utilization of [his] invention [permits] many different styles of incisions or cuts, with the instrument at various angles, . . . and the saw [may be] manipulated to penetrate to unusual depths." (Ex. 9 [Langworthy] at col. 1, lines 26-30.) Plaintiff points to no case law indicating that this use of figures is impermissible, and the Court will not assume that a person of ordinary skill may not examine the figures to help interpret the discussion in a prior art reference.

2008, at 10:15 a.m.  A week prior to this status conference, the parties shall submit a joint proposed discovery schedule.

**SO ORDERED**.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

DATE:   May 29, 2008